## 1554SU000026 Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Bisasor, Andre

| | | | |
|---|---|---|---|
| **Case Type** | Summary Process | **Case Status** | Disposed - Statistical Purposes |
| **Status Date:** | 05/27/2015 | **File Date** | 02/11/2015 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

**Property Address**
3000 President's Way #3413
Dedham MA 02026

**All Information** | **Party** | **Judgment** | **Event** | **Docket** | **Disposition**

### Party Information

**Greystar Management Services, L.P. - Plaintiff**

| Alias | | Attorney/Bar Code | Phone Number |
|---|---|---|---|
| | | Ashton, Esq., Donna M. (634984) | |

More Party Information

**Bisasor, Andre - Defendant**

| Alias | | Attorney/Bar Code | Phone Number |
|---|---|---|---|

More Party Information

**Anderson, Natalie - Defendant**

| Alias | | Attorney/Bar Code | Phone Number |
|---|---|---|---|

More Party Information

### Judgments

| Date | Type | Method | For | Against |
|---|---|---|---|---|
| 05/27/2015 | Judgment for Plaintiff for Possession and Rent | , after default | Greystar Management Services, L.P. | Anderson, Natalie |
| 05/27/2015 | Judgment for Plaintiff on Counterclaim | , after defendant(s) failed to appear | Greystar Management Services, L.P. | Anderson, Natalie |

### Events

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 02/19/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 04/09/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/04/2015 03:00 PM | Summary Process Session | | Motion Hearing (CV) | Held |
| 05/07/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/13/2015 02:15 PM | Summary Process Session | | Ex Parte Hearing | Held |
| 05/14/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/21/2015 02:00 PM | Summary Process Session | | Status Review | Event Continued |

| 05/26/2015 09:00 AM | Summary Process Session | Status Review | Event Continued |
| 05/28/2015 09:00 AM | Dedham Civil Jury Session | Jury Trial (CV) | Not Held But Event Resolved |
| 06/08/2015 09:00 AM | Summary Process Session | Status Review | Held |
| 07/02/2015 10:00 AM | Summary Process Session | Motion Hearing (CV) | Held |
| 08/07/2015 04:25 PM | Summary Process Session | Motion Hearing (CV) | Held |

## Docket Information

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| 02/11/2015 | Complaint filed | | 2 |
| 02/13/2015 | Appearance filed<br>On this date Wed Feb 11 00:00:00 EST 2015 Ashton, Esq., Donna M. added for Greystar Management Services, L.P. | | 1 |
| 02/13/2015 | Civil Filing Fee Surcharge due. Receipt: 39226 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Summary Process Filing Fee due. Receipt: 39226 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 02/19/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 04/09/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 02/19/2015 10:00 AM has resulted as follows:<br>Result: Event Continued<br>Reason: Both Parties Request<br>Appeared: | | |
| 04/07/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 04/09/2015 10:00 AM has resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 04/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/07/2015  Time: 10:00 AM<br>Result: Event Continued<br>Result: Event Continued | | |
| 04/10/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/04/2015 | Motion for continuance (Mass.R.Civ.P.40[b])  filed by Andre Bisasor, Natalie Anderson. | | 3 |
| 05/04/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015  Time: 03:00 PM | | |
| 05/04/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/04/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 05/04/2015 03:00 PM has been resulted as | | |

148

follows:
Result: Held
Reason: Plaintiff's counsel not present
Appeared:

| 05/04/2015 | Motion to continue allowed Hon. Michael J Pomarole | |

| 05/04/2015 | No further continuances. * | |

| 05/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/14/2015  Time: 10:00 AM<br>05/04/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion for Continuance (Mass.R.Civ.P.40[b]) is ALLOWED. No further continuances.<br><br>(Honorable Michael J. Pomarole)<br>Result: Held | |

| 05/07/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015  Time: 03:00 PM<br>Result: Held | |

| 05/11/2015 | Answer filed by Andre Bisasor, Natalie Anderson. | 4 |

| 05/11/2015 | Counterclaim filed by Andre Bisasor, Natalie Anderson against Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. (Uniform Summary Process Rule 5)). | 5 |

| 05/11/2015 | Jury trial claim on all issues endorsed upon pleading by Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 8). | 6 |

| 05/11/2015 | Motion to transfer or consolidate filed by Andre Bisasor, Natalie Anderson. | 7 |

| 05/11/2015 | Motion to dismiss filed by Andre Bisasor, Natalie Anderson. | 8 |

| 05/11/2015 | Interrogatories directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | 9 |

| 05/11/2015 | Request for production of document(s) directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | 10 |

| 05/13/2015 | Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | |

| 05/13/2015 | Event Resulted<br>The following event: Ex Parte Hearing scheduled for 05/13/2015 02:15 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>NO ACTION TAKEN ON Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | |

| 05/14/2015 | Motion for leave of Court to file requests for discovery filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 11 |

| 05/14/2015 | Motion to amend summary process summons and complaint filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 12 |

| 05/14/2015 | Motion to strike portions of Defendans answer and counterclaim [MASS R CIV P 8(e)] and dismiss [MASS R CIV P 12(b)(1) and 12(b)(6) filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 13 |

| 05/14/2015 | Motion for protective order filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 14 |

| 05/14/2015 | Motion for reconsideration filed by Andre Bisasor, Natalie Anderson. | 15 |

| 05/14/2015 | Motion to compel discovery and for a continuance filed by Andre Bisasor, Natalie Anderson. | 16 |

| 05/14/2015 | Motion to allow counsel to represent defendants filed by Andre Bisasor, Natalie Anderson. | 17 |

| 05/14/2015 | Motion to add parties filed by Andre Bisasor, Natalie Anderson. | 18 |

| 05/14/2015 | Motion for leave of Court to file requests for discovery allowed Hon. Thomas L Finigan | |

| 05/14/2015 | Event Resulted | |

| | The following event: Bench Trial (CV) scheduled for 05/14/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | |
| --- | --- | --- |
| 05/14/2015 | Termination notice filed (Uniform Summary Process Rule 2). | 19 |
| 05/14/2015 | Motion to consolidate summary process filed by Andre Bisasor, Natalie Anderson. | 25 |
| 05/19/2015 | Event Scheduled<br>Event: Ex Parte Hearing<br>Date: 05/13/2015 Time: 02:15 PM<br>Result: Held | |
| 05/19/2015 | Event Scheduled<br>Event: Jury Trial (CV)<br>Date: 05/28/2015 Time: 09:00 AM<br>Result: Not Held But Event Resolved | |
| 05/20/2015 | Notice concerning next court event, to wit - 05/21/2015 02:00 PM Status Review-- sent to parties.<br>05/14/2015- After motion hearing, Greystar Management Services, L.P.'s Motion for Leave of Court to File Requests for Discovery is ALLOWED.<br><br>(Honorable Thomas Finigan) | |
| 05/21/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/21/2015 02:00 PM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | |
| 05/21/2015 | Motion for leave of Court to file a motion for protective order filed by Andre Bisasor, Natalie Anderson. | 23 |
| 05/21/2015 | Motion for leave of Court to review plaintiff's response to defendants discovery requests filed by Andre Bisasor, Natalie Anderson. | 24 |
| 05/26/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/26/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | |
| 05/26/2015 | Affidavit and Request for Continuance Due to Illness faxed by Andre Bisasor and Natalie Anderson. | |
| 05/26/2015 | Request for Continuance Due to Illness denied. | |
| 05/26/2015 | Motion to amend account annex to reflect 13 months, $ 31,070.00 made in open court by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. and allowed. | |
| 05/26/2015 | Military affidavit filed as to whether Andre Bisasor, Natalie Anderson is in military service (Servicemembers Civil Relief Act, P.L. 108-189 §201, 50 U.S.C. App. §421). | 22 |
| 05/26/2015 | Default entered against Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 10(a)). | |
| 05/27/2015 | Judgment Entered:<br>Judgment for Plaintiff for Possession and Rent , after default<br>Ziemian, Hon. Robert P<br>Judgment For: Greystar Management Services, L.P.<br>Judgment Against: Bisasor, Andre / Anderson, Natalie<br>Terms of Judgment:<br>Interest Begins: 02/11/2015 Jdgmnt Date: 05/27/2015<br>Interest Rate: .12<br>Daily Interest Rate: .000329<br>Damages:<br>Damage Amt: 31070.00 Filing Fees: 195.00<br>Costs Pd to Court: 5.00<br>Other Costs: 80.00<br>Judgment Total: 32,423.31<br>Execution entered on 08/07/2015 | |
| 05/27/2015 | Judgment Entered:<br>Judgment for Plaintiff on Counterclaim , after defendant(s) failed to appear<br>Ziemian, Hon. Robert P<br>Judgment For: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Judgment Against: Bisasor, Andre / Anderson, Natalie | |

| | Terms of Judgment:<br>Jdgmnt Date: 05/27/2015 | |
|---|---|---|
| 05/27/2015 | Notice concerning next court event, to wit - 06/08/2015 09:00 AM Status Review-- sent to parties.<br>05/26/2015- After hearing, Andre Bisasor and Natalie Anderson's Request for Continuance Due to Illness is DENIED, defendant's failed to appear. Greystar Management Services, L.P.'s Motion to Amend Account Annex to Reflect 13 months, $ 31,070.00. Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. is ALLOWED. Jury Trial scheduled for 05/28/2015 is CANCELLED.<br><br>(Honorable Robert P. Ziemian) | |
| 06/08/2015 | Motion  for attorney's fees filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 26 |
| 06/08/2015 | Motion  for reconsideration of defendants' affidavit and request for continuance due to illness filed by Andre Bisasor, Natalie Anderson. | 27 |
| 06/08/2015 | Motion  to remove the default and vacate the default judgment; and or/motion for relief of judgment, pusuant to M.R.C.P. Rule 55,59, and/or 60 filed by Andre Bisasor, Natalie Anderson.<br>EMERGENCY | 28 |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. Rule 55,59 and /or 60 [Related to apartment conditions and violations] filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. rule 55,59 and/or 60 [Related to procedural case history and medical situation]  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Notice of Appeal  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Motion  to waive appeal bond and other costs- Apartment 3413 filed by Andre Bisasor, Natalie Anderson. | 29 |
| 06/08/2015 | Motion  to set the appeal bond hearing filed by Andre Bisasor, Natalie Anderson. | 30 |
| 06/08/2015 | Emergency Motion to stay issuance of execution pending the outcome of defendants motion to remove default and vacate judgment and/or motion for relief from judgment as well as pending outcome of defendants' appeal  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Emergency Motion to defer decision on appeal bond until after defendants motion to remove dafault and vacate judgment and/or motion for relief from judgment is heard  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Attachment 1: Summary of Non-Frivolous Defenses  filed by Andre Bisasor and Natalie Anderson.<br>Attachments Exhibit D- Dedham Board of health citation (Nov 2014)  filed by Andre Bisasor and Natalie Anderson.<br>Case Law and Authorities for motions to remove default judgment  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Motion  package cover letter for unit 3413 filed by Andre Bisasor, Natalie Anderson. | 31 |
| 06/08/2015 | Hospital documents  filed by Andre Bisasor. | |
| 06/08/2015 | Motion  to waive appeal bond and other costs- apartment 3413 denied. | |
| 06/08/2015 | Motion  for recusal of Judge Robert Ziemian filed by Andre Bisasor, Natalie Anderson. | 32 |
| 06/08/2015 | Motion  for recusal of Judge Robert Ziemian denied. | |
| 06/08/2015 | For the entry of a civil appeal in the appellate division of the district court department | $0.00 |
| 06/08/2015 | Indigency affidavit and request for waiver, substitution or payment by the Commonwealth of fees/costs filed by Andre Bisasor, Natalie Anderson (G.L. c.261 §27B). | 33 |
| 06/08/2015 | Indigency request for waiver, substitution or payment by the Commonwealth of fees/costs entered on 06/08/2015 allowed (G.L. c.261 §27B). | |
| 06/08/2015 | Event Resulted<br>The following event: Status Review scheduled for 06/08/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Appeared: | |
| 06/08/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | |
| 06/08/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section 4b | $0.00 |

| | |
|---|---|
| 06/09/2015 | Order; 06/08/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion to Waive Appeal Bond and Other Costs- Apartment 3413 is DENIED. Court finds that defendants have no reasonable chance of prevailing. 1) Defendants admit in open court they have NOT held "with held rent" in separate amounts. 2) failure to provide required discovery is an indication of their (failure) and have no reasonable chance of prevailing in this case. Appeal Bond is set at $32,000.00 for both cases 15-54-SU-026 and 15-54-SU-028. Andre Bisasor and Natalie Anderson's Motion for Recusal of Judge Robert Ziemian is DENIED.parties notified. |
| 06/15/2015 | Certificate of service for plaintiffs motion for attorneys fees filed. |
| 06/15/2015 | Request for review of orders relating to the appeal bond- Apartments 3413 filed by ANDRE BISASOR AND NATALIE ANDERSON |
| 06/15/2015 | Memoranda in support of request for review of orders relating to the appeal bond filed by ANDRE BISASOR AND NATALIE ANDERSON |
| 06/15/2015 | Attachment: Summary of Defenses for Possession filed by ANDRE BISASOR AND NATALIE ANDERSON |
| 06/15/2015 | Second request to markup motion hearing and affidavit /opposition to plaintiff counsel's letter (dated June 11,2015) to Judge Ziemian filed by ANDRE BISASOR AND NATALIE ANDERSON |
| 06/19/2015 | Notice of Appeal - Reconsideration filed by Andre Bisasor and Natalie Anderson |
| 06/19/2015 | Notice of Appeal - Recusal filed by Andre Bisasor and Natalie Anderson |
| 06/24/2015 | ORDER CONCERNING THE FILING OF PAPERS<br>As of today's date, no other fillings are allowed in the above refrenced cases without express permission of the court. |
| 06/24/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson |
| 06/29/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 07/02/2015 Time: 10:00 AM<br>ALL PARTIES NOTIFIED BY A CALL FROM THE DEDHAM DISTRICT COURT<br>Result: Held |
| 06/29/2015 | SUMMARY PROCESS APPEAL BOND REVIEW sent to APPELLATE DIVISION |
| 07/02/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 07/02/2015 10:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: |
| 07/02/2015 | Order; At the call of the list, Court declines to have hearing on pending motions as Defendants, Andre Bisasor and Natalie Anderson are not present and will rule on the papers. Plaintiff, Greystar Management Services, L.P. requests permission to file a Motion to Dismiss Defendants, Andre Bisasor and Natalie Anderson Appeal Notices filed on June 19, 2015 as Untimely. Request is Allowed. parties notified. |
| 07/02/2015 | Memorandum of Decision Concerning Entry of Default Judgment; parties notified |
| 07/06/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson |
| 07/08/2015 | Notice of appeal to Appellate Division on record of proceedings filed by Andre Bisasor, Natalie Anderson (G.L. c.231 §108; Dist./Mun.Cts. R.A.D.A. 8C(b)).<br>HANDED TO COURTHOUSE EMPLOYEE OUTSIDE OF THE COURTHOUSE ON 07/08/2015 | 34 |
| 07/23/2015 | Designation for Transcription filed by Andre Bisasor and Natalie Anderson. |
| 07/23/2015 | Order of Designation for Transcription to Transcriber filed by Appellants |
| 07/29/2015 | 6 Transcript received from court reporter (Dist./Mun.Cts. R.A.D.A. 8C(d) or Mass. R.A.P. 8(b)(1)); parties notified.<br><br>May 4, 2015 | 35 |

| | | |
|---|---|---|
| | May 13, 2015 | |
| | May 14, 2015 | |
| | May 21, 2015 | |
| | May 26, 2015 | |
| | June 8, 2015 | |
| 07/29/2015 | Appellate Division decision received; trial judge notified (Dist./Mun.Cts. R.A.D.A. 28). | 36 |
| | | |
| | Decision and Order | |
| | (1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during pendency of the appeal. | |
| 08/04/2015 | Notice sent to parties. | |
| | A Notce to the Parties was generated and sent to: | |
| | Plaintiff: Donna M. Ashton, Esq. | |
| | Defendant: Andre Bisasor | |
| | Defendant: Natalie Anderson | |
| | | |
| | 07/29/2015- Receipt of 6 Transcripts in Trial Court - Rule 8C(f) | |
| 08/07/2015 | Execution Issued: | |
| | Execution on Possession of a Dwelling | |
| | Judgment Debtor: Bisasor, Andre / Anderson, Natalie | |
| | Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. | |
| | Terms of Execution: | |
| | EXON Issuance Date: 08/07/2015 | |
| | Judgment Total: 32,423.31 | |
| | Post Judgment Int. Rate: .12        Post Judgment Int. Total: 768.04 | |
| | Execution Subtotal: 33,191.35 | |
| | Execution Total: 33,191.35 | |
| 08/07/2015 | Execution Issued: | |
| | Execution on Money Judgment | |
| | Judgment Debtor: Bisasor, Andre | |
| | Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. | |
| | Terms of Execution: | |
| | EXON Issuance Date: 08/07/2015 | |
| | Judgment Total: 32,423.31 | |
| | Post Judgment Int. Rate: .12        Post Judgment Int. Total: 768.04 | |
| | Execution Subtotal: 33,191.35 | |
| | Execution Total: 33,191.35 | |
| 08/07/2015 | Execution Issued: | |
| | Execution on Money Judgment | |
| | Judgment Debtor: Anderson, Natalie | |
| | Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. | |
| | Terms of Execution: | |
| | EXON Issuance Date: 08/07/2015 | |
| | Judgment Total: 32,423.31 | |
| | Post Judgment Int. Rate: .12        Post Judgment Int. Total: 768.04 | |
| | Execution Subtotal: 33,191.35 | |
| | Execution Total: 33,191.35 | |
| 08/07/2015 | Motion to stay execution (Mass.R.Civ.P. 62)  filed by Andre Bisasor, Natalie Anderson. | 37 |
| 08/07/2015 | Event Resulted | |
| | The following event: Motion Hearing (CV) scheduled for 08/07/2015 04:25 PM has been resulted as follows: | |
| | Result: Held | |
| | Reason: Plaintiff's counsel not present. Court did not contact the Plaintiff's Counsel in a timely matter prior to the Defendants Motion to Stay Execution as the Defendant arrived at 4:23 p.m for a hearing. | |
| | Appeared: ANDRE BISASOR ONLY | |
| | | |
| | Applies To: Bisasor, Andre (Defendant) | |
| 08/07/2015 | Notice of Appeal (made to the Appeals Court of the dismissal of Defendants Appeal in the District Court | |

153

| | and the Denial of the Waiver of the Appeal Bond in the Appellate Division of the District Court filed by ANDRE BISASOR and NATALIE ANDERSON (4:22) | |
|---|---|---|
| 08/10/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 08/07/2015  Time: 04:25 PM<br>Result: Held | |
| 08/10/2015 | Opposition filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. to Motion to stay execution that was filed on 08/07/2015.<br>WITH COURT'S PERMISSION, PLAINTIFF'S COUNSEL TO FAX OPPOSITION. | 38 |
| 08/10/2015 | Order; 08/10/2015(08/07/2015)- After motion hearing, Andre Bisasor and Natalie Anderson's Emergency Motion to Stay the Levy of the Execution for possession and damages (Mass.R.Civ.P. 62) is DENIED, defendant, Andre Bisasor appearing only and Greystar Management Services, L.P. and Natalie Anderson not appearing.parties notified. | |
| 08/14/2015 | Appeals Court<br>No. 2015-J-0306<br><br>Notice of Docket Entry<br>ORDER: Levy on the Execution on the judgment for possession is hereby stayed pending further order of this Court or a single justice thereof. The Matter shall be heard on Friday, August 14, 2015 at 2P.M. in courtroom 4. (Katzman, J.)<br>*Notice/Attest/Ziemian, J. | |
| 08/19/2015 | APPEALS COURT Single Justice<br>No. 2015-J-0306<br>Dated 08/17/2015<br>ORDER: The defendants filed a motion seeking to stay levy on the execution on the judgment for possession of two apartments in a building managed by the plaintiff. This Court briefly stayed levy on the execution and scheduled a hearing on the defendants' motion. After review of the parties' submissions and a hearing, the defendants' motion for a stay pending their appeal is DENIED. To obtain a stay pending resolution of their appeal, the defendants would have to demonstrate, inter alia, a likelihood of success on the merits of their appeal. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The defendants have failed to do so here. The defendants pending appeal is from the dismissal of their appeal occasioned by their failure to pay the required appeals bond. While such an appeal is properly brought before a panel of this Court, see Erickson v. Somers, 446 Mass. 1015 (2006), the defendants have not shown that their appeal, though procedurally correct, is likely to be successful. To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default. Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default. Accordingly, the motion is denied. The stay currently in place shall expire at the end of the day on August 27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.). *Notice/Attest/Ziemian, J. Footnote 1. Natalie Anderson | |
| 08/19/2015 | Return of service on NOTICE TO PARTIES 08/04/2015 Natalie Anderson; First class mail returned UNDELIVERED:unabletoforw | 39 |
| 08/20/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section 4b Receipt: 44792 Date: 08/20/2015 | $0.00 |
| 08/20/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | |
| 08/21/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff:  Donna M. Ashton, Esq.<br>Defendant:  Andre Bisasor<br>Defendant:  Natalie Anderson<br><br>Notice of the Assembly of the Record on Appeal for Summary Process Case Single Justice Appeal Re. Appeal Bond G.l.c. 239, Sec. 5. | |
| 08/21/2015 | CD copy made; requester notified (Dist Ct Special Rule 211(A)(5)). | |
| 09/08/2015 | Appeals Court Clerk's Office<br>No. 2015-P-1193<br><br>Notice of Entry<br>In accordance with Massachusetts Rule of Appellate Procedure 10(a)(3), please note that the above-references case was entered in this Court on August 31, 2015.<br><br>Dated: September 2, 2015 | |

| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>In accordance with the Rules of Appellate Procedure, Nos.9(d) and (10(a) and (b), the enclosed copy of the Notice of Appeal and the Notice of Assembly of the Record on Appeal in the above-entitled case are hereby mailed to you. |
|---|---|
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>Notice of Entry Docket<br>You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case:<br><br>JUDGMENT:...."it is ORDERED that the emergency petition pursuant to G.L.c. 211§ 3, shall be, and hereby is, DENIED." (Duffly, J.)<br><br>Judgment is filed. |
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>Notice of Entry Docket<br>You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case:<br><br>MOTION To Stay execution Pending Appeal To The Full Bench of The SJC filed by Andre Bisasor and Natalie Anderson. (8/27/2015: "Per the within, Motion is DENIED WITHOUT HEARING" (Duffly, J.)). |
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>NOTICE OF ASSEMBLY OF THE RECORD ON APPEAL<br><br>In accordance with the Rules of Appellate Procedure, Rule 9 (d), notice this day has been sent to the Clerk of the Supreme Judicial Court for the Commonwelath, along with two (2) certified copies of the docket entries. The record has been fully assembled in the office of the Clerk of the Supreme Judicial Court for Suffolk County.<br><br>COPY OF Notice of Appeal filed. |

## Case Disposition

| Disposition | Date |
|---|---|
| Pending | |

## Apartment Lease Contract

**NATIONAL APARTMENT ASSOCIATION**

Date of Lease Contract: **August 22, 2013**
(when this Lease Contract is filled out)

*This is a binding contract. Read carefully before signing.*

| Moving In -- General Information |
| --- |

**1. PARTIES.** This Lease Contract is between *you*, the resident(s) *(list all people signing the Lease Contract)*:
**Andre Bisasor, Natalie Anderson**

and *us*, the owner:
**RAR2 Jefferson at Dedham Station Ma. Inc**
**dba Jefferson at Dedham Station**

*(name of apartment community or title holder)*. You've agreed to rent Apartment No. **3413** , at **3000 Presidents Way #3413**
*(street address)* in **Dedham** *(city)*, Massachusetts, **02026** *(zip code)* for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we", "us", and "our" refer to the owner listed above (or any of the owner's successors in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants who are under 18 and not required to sign the Lease)*:

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **14** consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

**3. LEASE TERM.** The initial term of the Lease Contract begins on the **26th** day of **September** , **2013** *(year)*, and ends at midnight the **14th** day of **September** , **2014** a.b.A0 *(year)*. Unless the landlord serves a notice of non-renewal at least ~~thirty~~ **SIXTY** ~~(30)~~ days prior to the expiration of the initial term, OR the tenant serves a notice to vacate at least sixty (60) days prior to the expiration of the initial term, this Lease Contract will automatically renew on *(check one)*:

☐ a month-to-month basis ("Extended Term"), terminable upon thirty (30) days written notice as required by paragraph 34. The monthly rental rate for any Extended Term will be the market rate (at the time of the applicable extension) for a comparable apartment in the development plus a month-to-month premium of **25.00** .

☐ successive terms of _____ months ("Extended Term"), unless the landlord serves a notice of non-renewal at least thirty (30) days prior to the expiration of any successive term, OR the tenant serves a notice to vacate at least sixty (60) days prior to the expiration of any successive term. The monthly rental rate for the Extended Term will be the market rate (at the time of the applicable extension) for a comparable apartment in the development plus a month-to-month premium of _____.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ **0.00** , due on or before the date this Lease Contract is signed. If we request the last month's rent from you along with the security deposit, we will comply with the requirements of G.L. c. 186 § 15B (2). See paragraphs 58 and 39 for security deposit return information.

**5. KEYS AND FURNITURE.** You will be provided **2** apartment key(s), **2** mailbox key(s), and **2** other access devices for **FOB** . Your apartment will be *(check one)*: ☐ furnished or ☒ unfurnished.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ **2390.00** per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at **Rent Drop Box**

Prorated rent of $ **398.33** is due for the remainder of the first month, on _____ *(year)*. Otherwise, you *must* pay your rent on or before the 1st day of each month (due date) *with no grace period*. Cash is unacceptable *without our prior written permission*. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather

than multiple checks. If you don't pay all rent on or before 30 days after the first of the month, you'll pay an initial late charge of $ **75.00** plus a late charge of $ **0.00** per day after date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ **75.00** for each returned check or rejected electronic payment, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. Notwithstanding any memo or reference on payments remitted by you, we may, but are not required to, apply payments by you to the most outstanding amount(s) due on your resident ledger.

**7. UTILITIES.** We'll pay for the following items, if checked:

☒ gas ☐ electricity ☐ master antenna
☒ trash ☐ cable TV ☐ other _____
☒ heat ☐ water

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. However, we will pay for all utilities we are required to pay for under Massachusetts law, unless this Lease Contract provides otherwise. You must not allow utilities to be disconnected for any reason–including disconnection for not paying your bills–until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may only be used for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If water/sewer utilities are sub-metered for the apartment, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless due to owner's omission, fault, negligence, or misconduct.

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law. If you are required to purchase personal liability insurance you must provide evidence of coverage at lease inception, and must confirm an active policy upon request by owner at any time during the term of the Lease. SUBJECT TO APPLICABLE LAW, THE LANDLORD WILL PROVIDE INSURANCE FOR UP TO $750 IN BENEFITS TO COVER THE ACTUAL COSTS OF RELOCATION OF THE TENANT IF DISPLACED BY FIRE OR DAMAGE RESULTING FROM FIRE.

**9. SECURITY DEVICES. What We Must Provide.** Massachusetts law requires that we must provide at no cost to you when occupancy begins: (1) an operating locking device on your door; and, (2) an operating locking device on every openable exterior window. Keyed locks will be re-keyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in. You may not duplicate any keys provided to you, and shall not provide or transfer your keys to anyone without management's prior written consent.

You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar on a sliding glass door if it does not have one; and (3) change or rekey locks or latches. We will comply with those requests, but you may be required to pay for them.

**What You Are Now Requesting.** You now request the following to be installed at your expense (if one is not already installed).

☐ keyed deadbolt lock ☐ doorviewer
☐ keyless deadbolt ☐ sliding door pinlock
☐ sliding door bar

**Payment.** We will pay for missing devices that are required by statute. You will pay for: (1) re-keying that you request (except when we failed to rekey after the previous resident moved out); and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done.

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

**See special provisions on the last page**

_____
_____
_____
_____

See any additional special provisions.

11. **EARLY MOVE-OUT; RELETTING CHARGE.** You'll be liable to us for a reletting charge of $ **2320.00** (not to exceed 100% of the highest monthly rent during the Lease Contract term subject to our duty to mitigate pursuant to paragraph 30 of this Lease) if you:

(1) fail to give written move-out notice as required in paragraphs 21 or 34; or

(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or

(3) move out at our demand because of your default; or

(4) are judicially evicted.

*The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. The reletting charge cannot be withheld from your security deposit.*

**Not a Release.** The re-letting charge is not a Lease Contract cancellation fee or buyout fee. It is a liquidated amount covering only part of our damages; that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain-particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the re-letting charge is a reasonable estimate of such damages and that the charge is due whether or not our re-letting attempts succeed. If no amount is stipulated, you must pay our actual re-letting costs so far as they can be determined. The re-letting charge does not release you from continued liability for: future or past-due rent; charges for damages in excess of normal wear and tear, or unreturned keys; or other sums due.

12. **DAMAGES AND REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence, or intentional conduct by you or· your invitees, guests or occupants **unless it is caused by our omission, fault, negligence or misconduct. Unless caused by our fault, omission, misconduct or negligence, you're liable for-and you must pay for-repairs, replacement costs, and damage to the following if**

occurring during the Lease Contract term or renewal period: **(1)** damage to doors, windows, or screens caused by you, your guests and/or invitees; **(2)** damage from windows or doors left open; and **(3)** damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time. including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 16.

14. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay unless it is due to our omission, fault negligence, misconduct or any other reason outside of our reasonable control. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you before the initial term as set forth in Paragraph 3-and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date--you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree in writing.

15. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

---

## While You're Living in the Apartment

16. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

17. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited-except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes and we assent in writing to the proposed business operation. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show a photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

18. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others or violating any Federal, state, or local law, or ordinance.

19. **PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed as allowed by state statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or

(2) is on jacks, blocks or has wheel(s) missing; or

(3) has no current license or no current inspection sticker; or

(4) takes up more than one parking space; or

(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or

(6) is parked in a marked handicap space without the legally required handicap insignia; or

(7) is parked in a space marked for manager, staff, or guest at the office; or

(8) blocks another vehicle from exiting; or

(9) is parked in a fire lane or designated "no parking" area; or

(10) is parked in a space marked for other resident(s) or unit(s); or

(11) is parked on the grass, sidewalk, or patio; or

(12) blocks garbage trucks from access to a dumpster; or

(13) is not moved from any area in the development, authorized or unauthorized, following written notice by management that said vehicle must be moved for snow removal and/or other requisite purpose in our sole discretion.

Andre Bisasor, Natalie Anderson *(N.A.)a.b.*

08222013124204MA06012450

© 2013, National Apartment Association, Inc. - 5/ 2013, Massachusetts

**20. RELEASE OF RESIDENT.** Unless allowed by ... s Lease Contract or Massachusetts law, you won't be released from this Lease Contract for any reason-including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**21. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and

(2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term, and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 30. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**22. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines in this Lease Contract.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector and/or carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and/or carbon monoxide detectors. If you damage or disable the smoke detector and/or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us for actual damages and attorney's fees. If you disable or damage the smoke detector and/or carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless due to our omission, fault, negligence or misconduct. Unless we instruct otherwise, you must--for 24 hours a day during freezing weather--(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by applicable law. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or

... ne, you must make a written report to our representative and to one appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**23. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You will be given an Apartment Condition Statement on or before move-in. Within 15 days after move-in, you must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing

machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**24. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST--FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS--IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; the presence of bugs, insects, vermin, or other pests; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part, except as allowed by state law.

If fire or catastrophic damage totally destroys the apartment, or repair is beyond reason we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**25. ANIMALS.** *No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing.* If we allow an animal, you must sign a separate animal addendum, which may require additional rents, fees or other charges. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by following the procedures of paragraph 30.

**26. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times and not with less than 24 hours notice for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times and not with less than 24 hours notice by duplicate or master key (or by breaking a window or other means when necessary) if:

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; *and*

(2) entry is for: inspecting the apartment, making repairs or showing apartment to prospective residents (after move-out or vacate notice has been given), purchasers or mortgage lenders (or their agents), or verifying compliance with this Lease Contract.

**27. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident of your apartment constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident hereby appoints all other residents of your apartment as an agent authorized to receive notices and service of process. Security deposit refunds may be by one check jointly payable to all residents; the check and any deduction itemizations may be mailed to one resident only.

SUBLETTING. Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we consent in writing to the replacement, subletting, or assignment, then:

(1) a reletting charge *will not* be due;

(2) an administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and

(3) you *will* remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. The departing resident will no longer have a right to occupancy, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing-even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**29. RESPONSIBILITIES OF OWNER.** Subject to Chapter 410.000 of the Sanitary Code, we'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 23;

(2) maintain building fixtures, furniture, hot water, heating and · A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all legally required repairs, subject to your obligation to pay for damages for which you are liable.

**30. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined by Massachusetts law; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 18; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Eviction.** *If you default, we may end your right of occupancy by giving you a 14 day written notice to vacate in the event that the default is due to your non-payment of rent, or a 7 day written notice to vacate in the event that the default is due to any other provision of this Lease.* Notice may be by: (1) regular mail; (2) personal delivery to any resident; (3) personal delivery at the apartment to any occupant over 16 years old; (4) sliding the notice under the main entry door and into the apartment; or (5) by any other service available under Massachusetts law. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations. After giving notice to vacate or filing an eviction suit, we may still accept use and

occupancy fees or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. If your one (1) year lease has expired, we reserve the right to evict you even if we continue to accept sums for use and occupancy only.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (1) the use and occupancy monthly rate during the holdover period will be increased by 25% over the then-existing market rent, without notice; (2) you will be liable to us for all use and occupancy fees for the full term of the previously signed Lease Contract of a new resident who cannot occupy because of the holdover–subject to the landlord's duty to re-let or mitigate; and (3) at our option we may extend the Lease Contract term for up to one month by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, concessions provided in any concession addendum attached to this lease, in addition to any other sums due. Upon your default, we have all legal remedies, including, but not limited to, Lease Contract termination, pursuit of an eviction, and reimbursement for any and all attorney's fees and/or litigation costs/expenses. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). Any and all amounts which remain unpaid for thirty (30) days from the date due shall bear interest at 18% per year, unless it exceeds the maximum rate permitted by law, in which event interest shall accrue at the highest amount permitted by law. You shall be responsible for any and all attorney's fees, expenses, or other costs incurred by the Landlord to enforce any provision of this Lease whether related to your conduct, or the conduct of your household member(s), guest(s) and/or invitee(s).

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for any sums due including all reletting costs.

## General Clauses

**31. MISCELLANEOUS.** *Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.* No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the

apartment is located. In the event that you commence any litigation against us, and you fail to obtain judgment in your favor, you agree to reimburse us for any and all attorney fees and costs that we incur in relation to the defense of such action.

Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**Obligation to Remove Personal Property Upon Vacating.** Resident shall remove any and all personal property from the apartment upon vacating and/or relinquishing possession of same. In the event that the Resident vacates the premises leaving any personal property therein, same may be deemed abandoned/trash, and may be discarded by the landlord at the Resident's expense. Cost for removal shall be in addition to any and all other sums due to the landlord pursuant to the Lease.

**32. PAYMENTS.** At our option and without notice, we may apply money received (other than utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent-regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

08222013124206MA06012450

Andre Bisassor, Natalie Anderson

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Page 4 of 6

33. **SECURITY GUIDELINES.** We'd like to give you some important safety guidelines. We recommend that you follow these guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY--WHILE INSIDE YOUR APARTMENT**

1. Lock your doors and windows--even while you're inside.

2. Engage the keyless deadbolts on all doors while you're inside.

3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. *Don't open the door if you have any doubts.*

4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone--regardless of whether the person is a stranger or an apartment maintenance or management employee.

5. Don't put your name, address, or phone number on your key ring.

6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks.

7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.

8. Check your smoke detector monthly to make sure it is working properly and the batteries are still okay.

9. Check your doorlocks, window latches, and other devices regularly to be sure they are working properly.

10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.

11. Immediately report to management--in writing, dated and signed--any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.

12. Immediately report to management--in writing, dated and signed--any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.

13. Close curtains, blinds, and window shades at night.

14. Mark or engrave your driver's license number or other identification on valuable personal property.

**PERSONAL SECURITY--WHILE OUTSIDE YOUR APARTMENT**

15. Lock your doors while you're gone. Lock any doorhandle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.

16. Leave a radio or TV playing softly while you're gone.

17. Close and latch your windows while you're gone, particularly when you're on vacation.

18. Tell your roommate or spouse where you're going and when you'll be back.

19. Don't walk alone at night. Don't allow your family to do so.

20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.

21. Don't give entry keys, codes or electronic gate cards to anyone.

22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.

23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.

24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.

25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

**PERSONAL SECURITY--WHILE USING YOUR CAR**

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.

27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.

28. Don't leave your keys in the car.

29. Carry your key ring in your hand whenever you are walking to your car--whether it is daylight or dark and whether you are at home, school, work, or on vacation.

30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.

31. Check the backseat before getting into your car.

32. Be careful when stopping at gas stations or automatic-teller machines at night--or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**

*No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.*

---

## When Moving Out

34. **MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 20) except under the military clause (paragraph 21). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice.

35. **MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract terms or renewal period ends unless you continue to pay rent until the conclusion of the lease term or the apartment is relet, which ever occurs first. Early move-out may result in reletting charges under paragraphs 11 and 30. You may not apply any security deposit to rent without the landlord's written consent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must abandon the apartment before the 30-day period for deposit refund begins. You must give us, in writing, each resident's forwarding address.

36. **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

37. **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

38. **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing missing smoke-detector batteries; unreturned keys; missing or burned-out light bulbs; removing unauthorized security devices or alarm systems and agreed reletting charges, or as otherwise authorized by law. Your security deposit will be handled pursuant to MGL ch. 186 sec 15B, however we reserve the right to pursue any damages that exceed the amount of the security deposit due to your acts or those of your occupants or guests under applicable law (whether a security deposit is held or not).

39. **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions to the extent required by statute no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

08222013124207MA06012450

Andre Bisasor, Natalie Anderson *n.a.b.*

© 2013, National Apartment Association, Inc.- 5/2013, Massachusetts

**40. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures-one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an IApartment Condition Statement is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

☒ Animal Addendum
☒ Apartment Condition Statement
☒ Mold Addendum
☒ Enclosed Garage, Carport, or Storage Unit Addendum,
☒ Community Policies Addendum
☐ Lease Contract Guaranty ( _____ guaranties, if more than one)
☐ Notice of Intent to Move Out Form
☒ Parking Permit or Sticker (quantity:_____ )
☒ Satellite Dish or Antenna Addendum
☒ Asbestos Addendum (if asbestos is present)
☒ Lead Hazard Information and Disclosure Addendum (federal)
☒ Utility Addendum
☒ Remote Control, Card, or Code Access Gate Addendum,
☒ Lease Contract Buy-Out Agreement
☐ Intrusion Alarm Addendum
☒ Other _____ **Water/Sewer Addendum** _____
☐ Other _____

**Name and address of locator service (if applicable)**

_____
_____
_____

You are legally bound by this document. Please read it carefully.

Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.

Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.

In no event shall any of the provisions of this Lease indemnify, release, or otherwise excuse us from liability arising out of any mistake, fault, negligence or other misconduct of the landlord.

**Resident or Residents** (all sign below)

_Natalie Anders_
_Andre Bisasor_

_____

~~RAR = Jefferson at Dedham Station=MA, Inc~~
dba Jefferson at Dedham Station
By Greystar Management Services, L.P.,
Owner or Owner's Representative. (dba Delaware limited partnership, as agent for owner)

_signature_

Authorized Signer
Manager: Greystar Management Services, L.P.,
Address and phone number of owner's representative for notice purposes a Delaware limited Partnership.

1000 President's Way

Dedham, MA 02026

(781) 320-1370

Date form is filled out (same as on top of page 1) __08/22/2013__

**SPECIAL PROVISIONS (CONTINUED FROM PAGE 2).** If you become a month to month resident you agree to pay the prevailing market rent, as specified by Jefferson at Dedham Station, for your unit plus the then prevailing month to month premium for each month that you remain as a month to month resident. NOTICE OF ACTIVITY AND USE LIMITATIONS: This lease incorporates by reference the Notice of Activity and Use ("AUL") registered at the Norfolk County Land Court, as Document No. 1,116,347, as it may be amended from time to time. The AUL, and a summary of the AUL, are on file and available for review in the Property manager's office. The AUL allows all normal multifamily residential ses, and provides that any remaining impacted soil will remain undisturbed under buildings, asphalt and landscaping.

_____
_____
_____
_____
_____
_____

**Jefferson at Dedham Station**
Andre Bisasor, Natalie Anderson

08222013124208MA06012450

© 2013, National Apartment Association, Inc.    Massachusetts/National Apartment Association Official Form A-13, May 2013    Page 6 of 6



## LEASE CONTRACT BUY-OUT AGREEMENT

**NATIONAL APARTMENT ASSOCIATION**

1. **Dwelling Unit Description.** Unit No. __3413__,
__3000 Presidents Way #3413__ (street address)
in __Dedham__ (city),
Massachusetts, __02026__ (zip code).

2. **Lease Contract Description.**
Lease Contract date: __August 22, 2013__
Owner's name: __RAR2 Jefferson at Dedham__
__Station Ma. Inc dba Jefferson at Dedham__
__Station__

Residents (list all residents): __Andre Bisasor,__
__Natalie Anderson__

3. The purpose of this Buy-Out Agreement is to provide you the opportunity to buy out the Lease Contract prior to the end of the lease term, subject to the terms and conditions contained herein. In order to buy out early, your notice must be signed by all residents listed in paragraph 1 of the Lease Contract and you must comply with all provisions of this Buy-Out Agreement.

4. **Buy-Out Procedures.** You may buy out of the Lease Contract prior to the end of the lease term and cut off all liability for paying rent for the remainder of the lease term *if all of the following occur:*

   (a) you give us written notice of buy-out at least __30__ days prior to the new termination date (i.e., your new move-out date), which (check one) ❑ must be the last day of a month or ☒ may be during a month;

   (b) you specify the new termination date in the notice, i.e., the date by which you'll move out;

   (c) you are not in default under the Lease Contract on the date you give us the notice of buy-out;

   (d) you are not in default under the Lease Contract on the new termination date (move-out date);

   (e) you move out on or before the new termination date and do not hold over;

   (f) you pay us a buy-out fee (consideration) of $ __2320.00__ ;

   (g) you pay us the amount of any concessions you received when signing the Lease Contract; and

   (h) you comply with any special provisions in paragraph 9 below.

5. **When payable.** The buy-out fee in paragraph 4(f) is due and payable no later than __3__ days after you give us your buy-out notice. The total dollar amount of any concessions regarding rent or other monetary lease obligations for the entire lease term is $ __0.00__ and is due payable on the same day as the buy-out fee, subject to any special provisions in paragraph 9 regarding the amount, calculation method, or payment date.

6. **Showing unit to prospective residents.** After you give us notice of buy-out, the Lease Contract gives us the right to begin showing your unit to prospective residents and telling them it will be available immediately after your new termination date.

7. **Compliance essential.** Our deposit of all amounts due under paragraphs 4(f) and 4(g) constitutes our approval of the new termination date stated in your notice of buy-out. If you fail to comply with any of the procedures or requirements in this agreement after we deposit such monies, your buy-out right and this agreement will be voided automatically and the lease will continue without buy-out and any deposits as provided herein will be applied to any and all outstanding charges on your resident ledger. Then, if you move out early, you are subject to all lease remedies, including reletting fees and liability for all rents for the remainder of the original lease term.

8. **Miscellaneous.** If moving out by the new termination date becomes a problem for you, contact us. An extension may be possible if we have not already relet the dwelling unit to a successor resident. We and any successor residents who may be leasing your unit will be relying on your moving out on or before the new termination date. Therefore, you may not hold over beyond such date without our written consent—even if it means you have to make plans for temporary lodging elsewhere. "Default" as used in paragraphs 4(c) and 4(d) of this agreement means default as defined in the Lease Contract. You will continue to be liable for any damages and any sums accruing and unpaid prior to the new termination date.

9. **Special provisions.** Your right of buy-out (check one) ❑ is or ☒ is not limited to a particular fact situation. If limited, buy-out may be exercised only if you comply with Paragraph 4 herein **AND** you comply with all of the below additional provisions. Any special provisions below will supercede any conflicting provision of this printed agreement. Any false statements or documents presented to us regarding buy-out will automatically void your right to buy-out of the Lease Contract. The special provisions are:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Resident or Residents** | **Owner or Owner's Representative** |
|---|---|
| *(All residents must sign)* | *(signs below)* |
| *Natalie Anderson* | *C. [signature]* |
| *andre bisasor* | |
| _____ | **Date of Lease Contract** |
| _____ | __August 22, 2013__ |

Copyright 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Andre Bisasor, Natalie Anderson

# LEASE ADDENDUM FOR
## ENCLOSED GARAGE, CARPORT, OR STORAGE UNIT

**NATIONAL APARTMENT ASSOCIATION.**

1. **Dwelling Unit Description.** Unit No. __3413__ , __3000 Presidents Way #3413__ (street address) in __Dedham__ (city), Massachusetts, __02026__ (zip code).

2. **Lease Contract Description.**
Lease Contract date: __August 22, 2013__
Owner's name: __RAR2 Jefferson at Dedham Station Ma. Inc dba Jefferson at Dedham Station__

Residents (list all residents): __Andre Bisasor, Natalie Anderson__

3. **Garage, carport, or storage unit.** You are entitled to exclusive possession of: (check as applicable)
   ☐ garage or carport attached to the dwelling;
   ☐ garage space number(s) _____ ;
   ☐ carport space number(s) _____ ; and/or
   ☒ storage unit number(s) __64 & 66__ .
   The monthly rent in paragraph 6 of the Lease Contract covers both the dwelling and the checked area(s) above. All terms and conditions of the Lease Contract apply to the above areas unless modified by this addendum.

4. **Use restrictions.** Garage or carport may be used only for storage of operable motor vehicles unless otherwise stated in our rules or community policies. Storage units may be used only for storage of personal property. No one may sleep, cook, barbeque, or live in a garage, carport, or storage unit. Persons not listed as a resident or occupant in the lease may not use the areas covered by this addendum. No plants may be grown in such areas.

5. **No dangerous items.** Items that pose an environmental hazard or a risk to the safety or health of other residents, occupants, or neighbors or that violate any government regulation may not be stored may not be stored in any of the units defined in paragraph three above. Prohibited items include but are not limited to fuel (other than in a properly capped fuel tank of a vehicle or a closed briquette lighter fluid container), fireworks, rags, piles of paper, or other material that may create a fire or environmental hazard or any other items prohibited by Federal, State or Local laws or ordinances. We may remove from such areas, without prior notice, items that we believe might constitute a fire or environmental hazard or other violation of this paragraph. Because of carbon monoxide risks, you may not run the motor of a vehicle inside a garage unless the garage door is open to allow fumes to escape.

6. **No smoke, fire, or carbon monoxide detectors.** No smoke, fire, or carbon monoxide detectors will be furnished by us unless required by law.

7. **Garage door opener.** If an enclosed garage is furnished, you ☐ will ☐ will not be provided with a ☐ garage door opener and/or ☐ garage key. You will be responsible for maintenance of any garage door opener, including battery replacement. Transmitter frequency settings may not be changed on the garage door or opener without our prior written consent.

8. **Security.** Always remember to lock any door of a garage or storage unit and any door between a garage and the dwelling. When leaving, be sure to lock all keyed deadbolt locks.

9. **Insurance and loss/damage to your property.** Any area covered by this addendum is accepted by you "as is." You will maintain liability and comprehensive insurance coverage for any vehicle parked or stored. We will have no responsibility for loss or damage to vehicles or other property parked or stored in a garage, carport, or storage unit, whether caused by accident, fire, theft, water, vandalism, pests, mysterious disappearance, or otherwise except to the extent caused by our omission, fault, negligence, or misconduct. We are not responsible for pest control in such areas.

10. **Compliance.** We may periodically open and enter garages and storerooms to ensure compliance with this addendum. In that event, written notice of such opening and entry will be left inside the main entry door of your dwelling or inside the door between the garage and your dwelling.

11. **No lock changes, alterations, or improvements.** Without our prior written consent, locks on doors of garages and storage units may not be rekeyed, added, or changed, and improvements, alterations, or electrical extensions or changes to the interior or exterior of such areas are not allowed. You may not place nails, screws, bolts, or hooks into walls, ceilings, floors, or doors. Any damage not caused by us or our representatives to areas covered by this addendum will be paid for by you.

12. **Move-out and remedies.** Any items remaining in a garage, carport or storage unit after you have vacated the dwelling unit, and we have recovered possession of said dwelling unit, will be considered abandoned property and we may remove, sell or otherwise dispose of the property left in the abandoned or surrendered garage, carport or storage unit as we see fit.

13. **Special Provisions.** The following special provisions control over conflicting provisions of this printed form:
__Carports rent for an additional $50 per month and can only be cancelled at the end of the lease term. Storage Unit Rent is an additional $35 per month. Storage can be cancelled at any time with thirty days' written notice.__

**Resident or Residents**
[All residents must sign here]

_Natalie Anderson_

_Andre Bisasor_

**Owner or Owner's Representative**
(signs here)

_C. Emmy_

**Date of Lease Contract**
__August 22, 2013__

Copyright 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Andre Bisasor, Natalie Anderson

**LEASE ADDENDUM**
**LIABILITY INSURANCE REQUIRED OF RESIDENT**

**NAA**
**NATIONAL APARTMENT ASSOCIATION**

1. **Dwelling Unit Description.** Unit. No. __3413__ ,
__3000 Presidents Way #3413__ (street address)
in __Dedham__ (city),
Massachusetts, __02026__ (zip code).

2. **Lease Contract Description.**
Lease Contract date: __August 22, 2013__
Owner's name: __RAR2 Jefferson at Dedham__
__Station Ma. Inc dba Jefferson at Dedham__
__Station__

Residents (list all residents): __Andre Bisasor,__
__Natalie Anderson__

3. **Acknowledgment Concerning Insurance or Damage Waiver.** You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own liability for injury, loss or damage you (or your occupants or guests) may cause others. You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) for the full cost of any injury, loss or damage caused by your actions or the actions of your occupants or guests. You understand that paragraph 8 of the Lease Contract requires you to maintain a liability insurance policy, which provides limits of liability to third parties in an amount not less than $ __100000.00__ per occurrence. You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods a policy of personal liability insurance and personal property insurance satisfying the requirements listed below, at your sole expense.

4. **Required Policy.** You are required to purchase and maintain personal liability insurance covering you, your occupants and guests, for personal injury and property damage any of you cause to third parties (including damage to our property), in a minimum policy coverage amount of $ __100000.00__ , from a carrier with an AM Best rating of A-VII or better, licensed to do business in Massachusetts. The carrier is required to provide notice to us within 30 days of any cancellation, non-renewal or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

5. **We may provide you with information of an insurance program that we make available to residents, which provides you with an opportunity to buy renter's insurance from a preferred company. However, you are free to contract for the required insurance with a provider of your choosing.**

6. **Subrogation Allowed.** You and we agree that subrogation is allowed by all parties and that this agreement supersedes any language to the contrary in the Lease Contract.

7. **Your Insurance Coverage.** You have purchased the required personal liability insurance from the insurance company of your choosing listed below that is licensed to do business in this state, and have provided us with written proof of this insurance prior to the execution and commencement of the Lease Contract. You will provide additional proof of insurance in the future at our request.

Insurance Company: __eRenterPlan__

8. **Default.** Any default under the terms of this Addendum shall be deemed an immediate, material and incurable default under the terms of the Lease Contract, and we shall be entitled to exercise all rights and remedies under the law.

9. **Miscellaneous.** Except as specifically stated in this Addendum, all other terms and conditions of the Lease Contract shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease Contract, the terms of this Addendum shall control.

10. **Special Provisions:** __SUBJECT TO APPLICABLE LAW,__
__THE LANDLORD WILL PROVIDE INSURANCE FOR UP__
__TO $750 IN BENEFITS TO COVER THE ACTUAL__
__COSTS OF RELOCATION OF THE TENANT IF__
__DISPLACED BY FIRE OR DAMAGE RESULTING FROM__
__FIRE.__

I have read, understand and agree to comply with the preceding provisions.

**Resident or Residents**
[All residents must sign here]

*dddie Andlerse*

*Andre Bisasor*

**Owner or Owner's Representative**
[signs here]

*C. Emmony*

**Date of Lease Contract**

__August 22, 2013__

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Andre Bisasor, Natalie Anderson

## Bed Bug Addendum



Date: __August 22, 2013__
(when this Addendum is filled out)

> *Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize the potential for any bed bugs in your dwelling or surrounding dwellings. This addendum contains important information that outlines your responsibility and potential liability with regard to bed bugs.*

1. **DWELLING UNIT DESCRIPTION.**
   Unit. No. __3413__, __3000 Presidents Way__
   __#3413__ (street address)
   in __Dedham__
   (city), Massachusetts, __02026__ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract date: __August 22, 2013__
   Owner's name: RAR2 Jefferson at Dedham Station Ma. Inc dba Jefferson at Dedham Station

   Residents (list all residents): Andre Bisasor, Natalie Anderson

3. **PURPOSE.** This Addendum modifies the Lease Contract and addresses situations related to bed bugs (cimex lectularius) which may be discovered infesting the dwelling or personal property in the dwelling. You understand that we relied on your representations to us in this Addendum. Nothing in this Addendum shall limit the requirements enumerated under the Lease Contract regarding reporting of insects, vermin or other pests, and/or your duty to prevent same in your unit.

4. **INSPECTION.** You agree that you: (Check one)
   ☒ have inspected the dwelling prior to move-in and that you did not observe any evidence of bed bugs or bed bug infestation; OR
   ☐ will inspect the dwelling within 48 hours after move-in/renewal and notify us of any bed bugs or bed bug infestation.

5. **INFESTATIONS.**
   You agree that you have read all of the information on this addendum about bed bugs and:
   (Check one)
   ☒ you are not aware of any infestation or presence of bed bugs in your current or previous apartments, home or dwelling. You agree that you are not aware of any bed bug infestation or presence in any of your furniture, clothing, personal property or possessions. You agree that you have not been subjected to conditions in which there was any bed bug infestation or presence. OR
   ☐ you agree that if you previously lived anywhere that had a bed bug infestation that all of your personal property (including furniture, clothing and other belongings) has been treated by a licensed pest control professional. You agree that such items are free of further infestation. If you disclose a previous experience of bed bug infestation, we can review documentation of the treatment and inspect your personal property and possessions to confirm the absence of bed bugs. You agree that any previous bed bug infestation which you may have experienced is disclosed here:

   _____
   _____
   _____
   _____

6. **ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the dwelling at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate and will not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the dwelling and building. We can select the method of treating the dwelling, building and common areas for bed bugs. We can also inspect and treat adjacent or neighboring dwellings to the infestation even if those dwellings are not the source or cause of the known infestation. You are responsible for and must prepare your unit for treatment and follow all instructions provided by our licensed pest control firm regarding your own personal property, furniture, clothing and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so at the time we treated the dwelling. If you fail to do so, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract. You agree not to treat the dwelling for a bed bug infestation on your own.

7. **NOTIFICATION.** You must promptly notify us:
   • of any known or suspected bed bug infestation or presence in the dwelling, or in any of your clothing, furniture or personal property.
   • of any recurring or unexplained bites, stings, irritations, or sores of the skin or body which you believe is caused by bed bugs, or by any condition or pest you believe is in the dwelling.
   • if you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or of any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

8. **COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the dwelling and building that are infested. You must remove or destroy personal property that cannot be treated or cleaned as close as possible to the time we treated the dwelling. Any items you remove from the dwelling must be disposed of off-site and not in the property's trash receptacles. If we confirm the presence or infestation of bed bugs in your dwelling, we have the right to require you to temporarily vacate the dwelling and remove all furniture, clothing and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract.

9. **RESPONSIBILITIES.** You may be required to pay all reasonable costs of cleaning and pest control treatments incurred by us to treat your dwelling unit for bed bugs. If we confirm the presence or infestation of bed bugs after you vacate your dwelling, you may be responsible for the cost of cleaning and pest control treatments. If we must move other residents in order to treat adjoining or neighboring dwellings to your dwelling unit, you may be liable for payment of any lost rental income and other expenses incurred by us to relocate the neighboring residents and to clean and perform pest control treatments to eradicate infestations in other dwellings.

10. **TRANSFERS.** If we allow you to transfer to another dwelling in the community because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction prior to any transfers.

08222013124201MA06012450

Andre Bisasor, Natalie Anderson

Copyright 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Page 1 of 2

## BED BUGS - A Guide for Rental Housing Residents

Bed bugs, with a typical lifespan of 6 to 12 months are wingless, flat, broadly oval-shaped insects. Capable of reaching the size of an apple seed at full growth, bed bugs are distinguishable by their reddish-brown color, although after feeding on the blood of humans and warm-blooded animals--their sole food source--the bugs assume a distinctly blood-red hue until digestion is complete.

### Bed bugs don't discriminate
Bed bugs increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness.

Bottom line: bed bugs know no social and economic bounds; claims to the contrary are false.

### Bed bugs don't transmit disease
There exists no scientific evidence that bed bugs carry disease. In fact, federal agencies tasked with addressing pest of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease carrying pests. Again, claims associating bed bugs with disease are false.

### Identifying bed bugs
*Bed bugs can often be found in, around and between:*
- Bedding
- Bed frames
- Mattress seams
- Upholstered furniture, especially under cushions and along seams
- Around, behind and under wood furniture, especially along areas where drawers slide
- Curtains and draperies
- Along window and door frames
- Ceiling and wall junctions
- Crown moldings
- Behind and around wall hangings and loose wallpaper
- Between carpeting and walls (carpet can be pulled away from the wall and tack strip)
- Cracks and crevices in walls and floors
- Inside electronic devices, such as smoke and carbon monoxide detectors
- Because bed bugs leave some persons with itchy welts strikingly similar to those caused by fleas and mosquitoes, the origination of such markings often go misdiagnosed. However, welts caused by bed bugs often times appear in succession and on exposed areas of skin, such as the face, neck and arms. In some cases, an individual may not experience any visible reaction resulting from direct contact with bed bugs.
- While bed bugs typically prefer to act at night, they often do not succeed in returning to their hiding spots without leaving traces of their presence through fecal markings of a red to dark brown color, visible on or near beds. Blood stains tend also to appear when the bugs have been squashed, usually by an unsuspecting host in their sleep. And, because they shed, it's not uncommon for skin casts to be left behind in areas typically frequented by bed bugs.

### Preventing bed bug encounters when traveling
Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, so as to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

### Bed bug do's and don'ts
- **Do not bring used furniture from unknown sources into your dwelling.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture. Unless the determination can be made with absolute certainty that a piece of second-hand furniture is bed bug-free, residents should assume that the reason a seemingly nice looking leather couch, for example, is sitting curbside, waiting to be hauled off to the landfill, may very well be due to the fact that it's teeming with bed bugs.
- **Do address bed bug sightings immediately.** Rental housing residents who suspect the presence of bed bugs in their unit must immediately notify the owner.
- **Do not attempt to treat bed bug infestations.** Under no circumstance should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides pose too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your unit is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both your owner and their designated pest management company.

---

You are legally bound by this document. Please read it carefully.

**Resident or Residents**
*(All residents must sign)*

Natalie Anderson

Andre Bisasor

**Owner or Owner's Representative**
*(Signs below)*

C. Emmy

**Date of Signing Addendum**

08222013124202MA06012450

Andre Bisasor, Natalie Anderson

Massachusetts/National Apartment Association Official Form 13-H, May, 2013
Copyright 2013, National Apartment Association, Inc.



166

# Apartment Lease Contract

Date of Lease Contract: _____ May 16, 2014 _____
(when this Lease Contract is filled out)

*This is a binding contract. Read carefully before signing.*

1. **PARTIES.** This Lease Contract is between *you*, the resident(s) *(list all people signing the Lease Contract)*:

   **Andre Bisasor, Natalie Anderson**
   _____

   and *us*, the owner:
   **RAR2 Jefferson at Dedham Station Ma. Inc**
   **dba Jefferson at Dedham Station**

   *(name of apartment community or title holder)*. You've agreed to rent
   Apartment No. __2216__, at **2000 Presidents Way**
   _____ *(street address)* in
   **Dedham** *(city)*, Massachusetts,
   **02026** *(zip code)* for use as a private residence only. The
   terms "you" and "your" refer to all residents listed above. The terms
   "we", "us", and "our" refer to the owner listed above (or any of owner's
   successors' in interest or assigns). Written notice to or from our managers
   constitutes notice to or from us. If anyone else has guaranteed
   performance of this Lease Contract, a separate Lease Contract Guaranty
   for each guarantor is attached.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants who are under 18 and not required to sign the Lease)*:
   _____
   _____
   _____

   No one else may occupy the apartment. Persons not listed above must
   not stay in the apartment for more than __14__ consecutive days
   without our prior written consent, and no more than twice that many days
   in any one month. *If the previous space isn't filled in, two days per month is the
   limit.*

3. **LEASE TERM.** The initial term of the Lease Contract begins on the
   __16th__ day of __May__, __2014__ *(year)*, and ends at
   midnight the __31st__ day of __May__, __2014__
   *(year).* Unless the landlord serves a notice of non-renewal at least thirty
   (30) days prior to the expiration of the initial term, OR the tenant serves
   a notice to vacate at least sixty (60) days prior to the expiration of the
   initial term, this Lease Contract will automatically renew on *(check one):*

   ☐ a month-to-month basis ("Extended Term"), terminable upon thirty
   (30) days written notice as required by paragraph 34. The monthly
   rental rate for any Extended Term will be the market rate (at the
   time of the applicable extension) for a comparable apartment in the
   development plus a month-to-month premium of ___25.00___ .

   ☐ successive terms of _____ months ("Extended Term"), unless
   the landlord serves a notice of non-renewal at least thirty (30) days
   prior to the expiration of any successive term, OR the tenant serves
   a notice to vacate at least sixty (60) days prior to the expiration of
   any successive term. The monthly rental rate for the Extended Term
   will be the market rate (at the time of the applicable extension) for a
   comparable apartment in the development plus a month-to-month
   premium of _____ .

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security
   deposit at the time of execution of this Lease Contract for all residents in
   the apartment is $ __0.00__ , due on or before the date this Lease
   Contract is signed. If we request the last month's rent from you along
   with the security deposit, we will comply with the requirements of G.L.
   c. 186 § 15B (2). See paragraphs 38 and 39 for security deposit return
   information.

5. **KEYS AND FURNITURE.** You will be provided __2__ apartment
   key(s), __0__ mailbox key(s), and __0__ other access
   devices for __FOB__ . Your apartment will be *[check
   one]:* ☒ furnished or ☐ unfurnished.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay
   $ __0.00__ per month for rent, payable in advance and without
   demand:

   ☒ at the on-site manager's office, or
   ☒ at our online payment site, or
   ☒ at __Rent Drop Box__
   _____

   Prorated rent of $ __0.00__ is due for the remainder of the first
   month, on _____ *(year)*. Otherwise, *you
   must pay your rent on or before the 1st day of each month (due date) with no
   grace period.* Cash is unacceptable without our prior written permission. You
   *must not withhold or offset rent unless authorized by statute.* We may, at our
   option, require at any time that you pay all rent and other sums in cash,
   certified or cashier's check, money order, or one monthly check rather

   than multiple checks. If you don't pay all rent on or before 30 days
   after the first of the month, you'll pay an initial late charge of
   $ __75.00__ plus a late charge of $ __0.00__ per day after
   date until paid in full. Daily late charges will not exceed 15 days for any
   single month's rent. You'll also pay a charge of $ __75.00__ for
   each returned check or rejected electronic payment, plus initial and daily
   late charges from due date until we receive acceptable payment. If you
   don't pay rent on time, you'll be delinquent and all remedies under this
   Lease Contract will be authorized. We'll also have all other remedies for
   such violation. Notwithstanding any memo or reference on payments
   remitted by you, we may, but are not required to, apply payments by
   you to the most outstanding amount(s) due on your resident ledger.

7. **UTILITIES.** We'll pay for the following items, if checked:

   ☒ gas ☒ electricity ☐ master antenna
   ☒ trash ☒ cable TV ☐ other _____
   ☒ heat ☒ water

   You'll pay for all other utilities, related deposits, and any charges, fees, or
   services on such utilities. However, we will pay for all utilities we are
   required to pay for under Massachusetts law, unless this Lease Contract
   provides otherwise. You must not allow utilities to be disconnected for
   any reason--including disconnection for not paying your bills--until the
   lease term or renewal period ends. Cable channels that are provided may
   be changed during the Lease Contract term if the change applies to all
   residents. Utilities may only be used for normal household purposes and
   must not be wasted. If your electricity is ever interrupted, you must use
   only battery-powered lighting. If water/sewer utilities are sub-metered
   for the apartment, we will attach an addendum to this Lease Contract in
   compliance with state agency rules or city ordinance.

8. **INSURANCE.** We do not maintain insurance to cover your *personal
   property or personal injury.* We are not responsible to any resident, guest,
   or occupant for damage or loss of personal property from (including but
   not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice,
   snow, lightning, wind, explosions, earthquake, interruption of utilities,
   theft, hurricane, negligence of other residents, occupants, or
   invited/uninvited guests or vandalism unless due to owner's omission,
   fault, negligence, or misconduct.

   We urge you to get your own insurance for losses to your *personal
   property or injuries* due to theft, fire, water damage, pipe leaks and the
   like.

   Additionally, you are *[check one]* ☒ required to purchase personal liability
   insurance ☐ not required to purchase personal liability insurance. If
   no box is checked, personal liability insurance is not required. If
   required, failure to maintain personal liability insurance is an incurable
   breach of this Lease Contract and may result in the termination of
   tenancy and eviction and/or any other remedies as provided by this
   Lease Contract or state law. If you are required to purchase personal
   liability insurance you must provide evidence of coverage at lease
   inception, and must confirm an active policy upon request by owner at
   any time during the term of the Lease. SUBJECT TO APPLICABLE
   LAW, THE LANDLORD WILL PROVIDE INSURANCE FOR UP TO
   $750 IN BENEFITS TO COVER THE ACTUAL COSTS OF
   RELOCATION OF THE TENANT IF DISPLACED BY FIRE OR
   DAMAGE RESULTING FROM FIRE.

9. **SECURITY DEVICES. What We Must Provide.** Massachusetts law
   requires that we must provide at no cost to you when occupancy begins:
   (1) an operating locking device on your door; and, (2) an operating
   locking device on every openable exterior window. Keyed locks will be
   re-keyed after the prior resident moves out. The rekeying will be done
   either before you move in or within 7 days after you move in. You may
   not duplicate any keys provided to you, and shall not provide or transfer
   your keys to anyone without management's prior written consent.

   You may at any time ask us to: (1) install one keyed deadbolt lock on an
   exterior door if it does not have one; (2) install a bar on a sliding glass
   door if it does not have one; and (3) change or rekey locks or latches. We
   will comply with those requests, but you may be required to pay for them.

   **What You Are Now Requesting.** You now request the following to be
   installed at your expense (if one is not already installed).

   ☐ keyed deadbolt lock ☐ doorviewer
   ☐ keyless deadbolt ☐ sliding door pinlock
   ☐ sliding door bar

   **Payment.** We will pay for missing devices that are required by statute.
   You will pay for: (1) re-keying that you request (except when we failed
   to rekey after the previous resident moved out); and (2) repairs or
   replacements due to misuse or damage by you or your family, occupants,
   or guests. You must pay immediately after the work is done.

05162014053501MA06012450
Andre Bisasor, Natalie Anderson
*N.A a.b.*

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

See special provisions on the last page

_____
_____
_____
_____

See any additional special provisions.

**11. EARLY MOVE-OUT; RELETTING CHARGE.** You'll be liable to us for a reletting charge of $ 0.00 (not to exceed 100% of the highest monthly rent during the Lease Contract term subject to our duty to mitigate pursuant to paragraph 30 of this Lease) if you:

(1) fail to give written move-out notice as required in paragraphs 21 or 34; or
(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

*The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. The reletting charge cannot be withheld from your security deposit.*

**Not a Release.** The re-letting charge is not a Lease Contract cancellation fee or buyout fee. It is a liquidated amount covering only part of our damages; that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the re-letting charge is a reasonable estimate of such damages and that the charge is due whether or not our re-letting attempts succeed. If no amount is stipulated, you must pay our actual re-letting costs so far as they can be determined. The re-letting charge does not release you from continued liability for: future or past-due rent; charges for damages in excess of normal wear and tear, or unreturned keys; or other sums due.

**12. DAMAGES AND REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence, or intentional conduct by you or your invitees, guests or occupants **unless it is caused by our omission, fault, negligence or misconduct. Unless caused by our fault, omission, misconduct or negligence, we're not liable for-and you must pay for-repairs, replacement costs, and damage to the following if** occurring during the Lease Contract term or renewal period: **(1) damage to doors, windows, or screens caused by you, your guests and/or invitees; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.** We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding causes you owe is not a waiver.

**13. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 16.

**14. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay unless it is due to our omission, fault negligence, misconduct or any other reason outside of our reasonable control. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you before the initial term as set forth in Paragraph 3--and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date--you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree in writing.

**15. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**16. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**17. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited-except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes and we assent in writing to the proposed business operation. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**18. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others or violating any Federal, state, or local law, or ordinance.

**19. PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed as allowed by state statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) is not moved from any area in the development, authorized or unauthorized, following written notice by management that said vehicle must be moved for snow removal and/or other requisite purpose in our sole discretion.

Andre Bisasor, Natalie Anderson *NA, b.*

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

05162014053502MA06012450

Case 1:15-cv-13014-LTS Document 8 Filed 09/25/15 Page 23 of 291
Case 1:15-cv-13014-LTS Document 8 Filed 09/25/15 Page 23 of 291
Document 21 Page 169 of 291

**20. RELEASE OF RESIDENT.** Unless allowed by this Lease Contract, or Massachusetts law, you won't be released from this Lease Contract for any reason-including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**21. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*

(2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, *or* (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 30. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**22. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines in this Lease Contract.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector and/or carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and/or carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and/or carbon monoxide detectors. You may engage or disable the smoke detector and/or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us for actual damages and attorney's fees. If you disable or damage the smoke detector and/or carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless due to our omission, fault, negligence or misconduct. Unless we instruct otherwise, you must--for 24 hours a day during freezing weather--(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by applicable law. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**23. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You will be given an Apartment Condition Statement on or before move-in. Within 15 days after move-in, you must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing

machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**24. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST--FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS--IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; the presence of bugs, insects, vermin, or other pests; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part, except as allowed by state law.

If fire or catastrophic damage totally destroys the apartment, or repair is beyond reason we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**25. ANIMALS.** *No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing.* If we allow an animal, you must sign a separate animal addendum, which may require additional rents, fees or other charges. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by following the procedures of paragraph 30.

**26. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times and not with less than 24 hours notice for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times and not with less than 24 hours notice by duplicate or master key (or by breaking a window or other means when necessary) if:

0516201405350 3MA06012450

Case 1:15-cv-13688-LTS Document 147 Filed 09/23/15 Page 24 of 170
Case 1:15-cv-13688-LTS Document 84-1 Filed 09/25/15 Page 24 of 291
Document 21 Page 4 of 6

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; *and*

(2) entry is for: inspecting the apartment, making repairs or showing apartment to prospective residents (after move-out or vacate notice has been given), purchasers or mortgage lenders (or their agents), or verifying compliance with this Lease Contract.

**27. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident of your apartment constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident hereby appoints all other residents of your apartment as an agent authorized to receive notices and service of process. Security deposit refunds may be by one check jointly payable to all residents; the check and any deduction itemizations may be mailed to one resident only.

**28. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we consent in writing to the replacement, subletting, or assignment, then:

(1) a reletting charge *will not* be due;

(2) an administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and

(3) you *will* remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; *or* (2) the remaining and replacement residents must sign an entirely new Lease Contract. The departing resident will no longer have a right to occupancy, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing-even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**29. RESPONSIBILITIES OF OWNER.** Subject to Chapter 410.000 of the Sanitary Code, we'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 23;

(2) maintain building fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all legally required repairs, subject to your obligation to pay for damages for which you are liable.

**30. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined by Massachusetts law; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 18; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Eviction.** *If you default, we may end your right of occupancy by giving you a 14 day written notice to vacate in the event that the default is due to your non-payment of rent, or a 7 day written notice to vacate in the event that the default is due to any other provision of this Lease.* Notice may be by: (1) regular mail; (2) personal delivery to any resident; (3) personal delivery at the apartment to any occupant over 16 years old; (4) sliding the notice under the main entry door and into the apartment; or (5) by any other service available under Massachusetts law. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations. After giving notice to vacate or filing an eviction suit, we may still accept use and

occupancy fees or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. If your one (1) year lease has expired, we reserve the right to evict you even if we continue to accept sums for use and occupancy only.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (1) the use and occupancy monthly rate during the holdover period will be increased by 25% over the then-existing market rent, without notice; (2) you will be liable to us for all use and occupancy fees for the full term of the previously signed Lease Contract of a new resident who cannot occupy because of the holdover--subject to the landlord's duty to re-let or mitigate; and (3) at our option we may extend the Lease Contract term for up to one month by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, concessions provided in any concession addendum attached to this lease, in addition to any other sums due. Upon your default, we have all legal remedies, including, but not limited to, Lease Contract termination, pursuit of an eviction, and reimbursement for any and all attorney's fees and/or litigation costs/expenses. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and/or litigation costs). Any and all amounts which remain unpaid for thirty (30) days from the date due shall bear interest at 18% per year, unless it exceeds the maximum rate permitted by law, in which event interest shall accrue at the highest amount permitted by law. You shall be responsible for any and all attorney's fees, expenses, or other costs incurred by the Landlord to enforce any provision of this Lease whether related to your conduct, or the conduct of your household member(s), guest(s) and/or invitee(s).

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for any sums due including all reletting costs.

## General Clauses

**31. MISCELLANEOUS.** *Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.* No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the

apartment is located. In the event that you commence any litigation against us, and you fail to obtain judgment in your favor, you agree to reimburse us for any and all attorney fees and costs that we incur in relation to the defense of such action.

Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**Obligation to Remove Personal Property Upon Vacating.** Resident shall remove any and all personal property from the apartment upon vacating and/or relinquishing possession of same. In the event that the Resident vacates the premises leaving any personal property therein, same may be deemed abandoned/trash, and may be discarded by the landlord at the Resident's expense. Cost for removal shall be in addition to any and all other sums due to the landlord pursuant to the Lease.

**32. PAYMENTS.** At our option and without notice, we may apply money received (other than utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent-regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

0516201405350L4MA06012450

Andre Bisasor, Natalie Anderson *b.*

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Page 4 of 6

**33. SECURITY GUIDELINES.** We'd like to give you some important safety guidelines. We recommend that you follow these guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY--WHILE INSIDE YOUR APARTMENT**

1. Lock your doors and windows--even while you're inside.

2. Engage the keyless deadbolts on all doors while you're inside.

3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. *Don't open the door if you have any doubts.*

4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone--regardless of whether the person is a stranger or an apartment maintenance or management employee.

5. Don't put your name, address, or phone number on your key ring.

6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks.

7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.

8. Check your smoke detector monthly to make sure it is working properly and the batteries are still okay.

9. Check your doorlocks, window latches, and other devices regularly to be sure they are working properly.

10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.

11. Immediately report to management--in writing, dated and signed--any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.

12. Immediately report to management--in writing, dated and signed--any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.

13. Close curtains, blinds, and window shades at night.

14. Mark or engrave your driver's license number or other identification on valuable personal property.

**PERSONAL SECURITY--WHILE OUTSIDE YOUR APARTMENT**

15. Lock your doors while you're gone. Lock any doorhandle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.

16. Leave a radio or TV playing softly while you're gone.

17. Close and latch your windows while you're gone, particularly when you're on vacation.

18. Tell your roommate or spouse where you're going and when you'll be back.

19. Don't walk alone at night. Don't allow your family to do so.

20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.

21. Don't give entry keys, codes or electronic gate cards to anyone.

22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.

23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.

24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.

25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

**PERSONAL SECURITY--WHILE USING YOUR CAR**

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.

27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.

28. Don't leave your keys in the car.

29. Carry your key ring in your hand whenever you are walking to your car--whether it is daylight or dark and whether you are at home, school, work, or on vacation.

30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.

31. Check the backseat before getting into your car.

32. Be careful when stopping at gas stations or automatic-teller machines at night--or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**

*No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.*

**34. MOVE-OUT NOTICE.** Before moving out, you must give your representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 20) except under the military clause (paragraph 21). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice.

**35. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract terms or renewal period ends unless you continue to pay rent until the conclusion of the lease term or the apartment is relet, which ever occurs first. Early move-out may result in reletting charges under paragraphs 11 and 30. You may not apply any security deposit to rent without the landlord's written consent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must abandon the apartment before the 30-day period for deposit refund begins. You must give us, in writing, each resident's forwarding address.

**36. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**37. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**38. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing missing smoke-detector batteries; unreturned keys; missing or burned-out light bulbs; removing unauthorized security devices or alarm systems and agreed reletting charges, or as otherwise authorized by law. Your security deposit will be handled pursuant to MGL ch. 186 sec 15B, however we reserve the right to pursue any damages that exceed the amount of the security deposit due to your acts or those of your occupants or guests under applicable law (whether a security deposit is held or not).

**39. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions to the extent required by statute no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

Andre Bisasor, Natalie Anderson

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

0516201405350SMA06012450

**Signatures, Originals and Attachments**

**40. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures-one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an IApartment Condition Statement is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

☐ Animal Addendum
☒ Apartment Condition Statement
☐ Mold Addendum
☐ Enclosed Garage, Carport, or Storage Unit Addendum,
☐ Community Policies Addendum
☐ Lease Contract Guaranty (_____ guaranties, if more than one)
☐ Notice of Intent to Move Out Form
☐ Parking Permit or Sticker (quantity:_____ )
☐ Satellite Dish or Antenna Addendum
☐ Asbestos Addendum (if asbestos is present)
☐ Lead Hazard Information and Disclosure Addendum (federal)
☒ Utility Addendum
☐ Remote Control, Card, or Code Access Gate Addendum,
☐ Lease Contract Buy-Out Agreement
☐ Intrusion Alarm Addendum
☐ Other     Water/Sewer Addendum
☐ Other

**Name and address of locator service (if applicable)**

You are legally bound by this document. Please read it carefully.

Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.

Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.

In no event shall any of the provisions of this Lease indemnify, release, or otherwise excuse us from liability arising out of any mistake, fault, negligence or other misconduct of the landlord.

**Resident or Residents** *(all sign below)*

RAR - Jefferson at Dedham Station-MA, Inc
dba Jefferson at Dedham Station
By Greystar Management Services, LP
A Delaware limited partnership
Owner or Owner's Representative *(signing on behalf of owner)*
Authorized Signer
Manager Greystar Management Services, L.P.,
a Delaware Limited Partnership
**Address and phone number of owner's representative for notice purposes**

1000 President's Way

Dedham, MA 02026

(781) 320-1370

Date form is filled out *(same as on top of page 1)*     05/16/2014

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2).  If you become a month to month resident you agree to pay the prevailing market rent, as specified by Jefferson at Dedham Station, for your unit plus the then prevailing month to month premium for each month that you remain as a month to month resident. NOTICE OF ACTIVITY AND USE LIMITATIONS: This lease incorporates by reference the Notice of Activity and Use ("AUL") registered at the Norfolk County Land Court, as Document No. 1,116,347, as it may be amended from time to time. The AUL, and a summary of the AUL, are on file and available for review in the Property manager's office. The AUL allows all normal multifamily residential ses, and provides that any remaining impacted soil will remain undisturbed under buildings, asphalt and landscaping.

By signing this temporary lease for 2216 we do not waive any rights nor do we in any way agree that our lease for 3413 is suspended or superceded.

**Jefferson at Dedham Station**

Andre Bissasor, Natalie Anderson

© 2013, National Apartment Association, Inc.        Massachusetts/National Apartment Association Official Form A-13, May 2013        Page 6 of 6

05162014051606MA06012450




## UTILITY ADDENDUM FOR WATER, SEWER, GAS, TRASH AND ELECTRIC SERVICE



This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated **May 16, 2014** between **RAR2 Jefferson at Dedham Station Ma. Inc dba Jefferson at Dedham** ("We") and **Station**

**Andre Bisasor, Natalie Anderson** ("You") of Apt. No. **2216** (street address) in

located at **2000 Presidents Way**

**Dedham, MA 02026** and is in addition to all terms and conditions in the Lease.

To the extent that the terms of this Utility Addendum conflict with those of the Lease, this Utility Addendum shall control.

1. Responsibility for payment of utilities will be as indicated below.
    a) **Water** service to your dwelling will be either:
       ☐ paid by you; or
       ☒ paid by us.
    b) **Sewer** service to your dwelling will be either:
       ☐ paid by you; or
       ☒ paid by us.
    c) **Gas** service to your dwelling will be paid by either:
       ☐ paid by you; or
       ☒ paid by us.
    d) **Trash** service to your dwelling will be either: (Landlord is responsible for units of 3 or more)
       ☐ paid by you; or
       ☒ paid by us.
    e) **Electric** service to your dwelling will be paid by either:
       ☐ paid by you; or
       ☒ paid by us.

2. When billed by us directly or through our billing company, you must pay utility bills within 30 days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee in the amount of $_____ . The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment.

3. You will be charged for the full period of time that you were living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for utility charges for the time period you were obligated to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your dwelling based on the sub-meter reading.

4. When you move out, you will receive a final bill.

5. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence, fault, misconduct or omissions by us or our employees. You release us from any and all such claims by a utility company or third party supplier and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations not caused by us.

6. You agree not to tamper with, adjust, or disconnect any utility metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease and this Utility Addendum.

7. All charges for water and sewer service shall be considered part of your rent for purposes under MGL Chapter 186 and 239.

8. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Contract.

    **Gas service is paid by owner. It is the responsibility of the lease holder to transfer electric service out of the property's name prior to the commencement of this lease agreement. The lease holder is responible to ensure that electric service is not transferred back into the property's name during their occupancy. Failure to comply with this regulation will result in a $25 fee per occurence. Trash must be disposed of properly. No trash is to be set on curbs or outside of doors. For elimination of trash, the trash is to be taken directly to the trash receptacles located on the exterior of the property. If one trash compactor is out of order, the second compactor must be utilized. All boxes are to be broken down prior to disposal. Anyone improperly disposing of trash will be subject to a $25 fine per occurance.**

Resident Signature ___Andre Bisasor___ Date _5/16/14_

Resident Signature ___Natalie A.___ Date _5/16/14_

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Management _____ Date _5/16/14_

05162014051801MA06012450

Andre Bisasor, Natalie Anderson

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Commonwealth of Massachusetts
## SUMMARY PROCESS (EVICTION) SUMMONS AND COMPLAINT

District Court ____ Department

Dedham ____ Division

Norfolk ____ ss

☒ Residential

☐ Commercial

Docket No. _____
(To be added by clerk's office )

Entry Date: February 9, 2015

### NOTICE OF A COURT CASE TO EVICT YOU - PLEASE READ IT CAREFULLY

### ESTA ES UNA NOTIFICACION DE UN CASO EN CORTE PARA DESALOJARLE - FAVOR DE LEER EL MISMO CON CUIDADO

TO DEFENDANT(S)/TENANT(S)/OCCUPANT(S): Andre Bisasor and Natalie Anderson

ADDRESS: 3000 President's Way #2216 _____ CITY/TOWN: Dedham _____ ZIP: 02026

You are hereby summonsed to appear at a hearing before a Judge of the Court at the time and place listed below:

DAY: **Thursday** DATE: February 19, 2015 TIME: **10:00 AM** COURT NAME: Dedham District Court

COURT ADDRESS: 631 High St. Dedham, MA 02026 ROOM: Courtroom 1

to defend against the complaint of PLAINTIFF/LANDLORD/OWNER: _____

Greystar Management Services, L.P. as agent for owner RAR2 Jefferson at Dedham Station MA, Inc. ___ of

STREET ___ 1000 Presidents Way _____ CITY/TOWN: Dedham _____ ZIP: 02026

that you occupy the premises at ___ 3000 President's Way #2216, MA 02026 ___,

being within the judicial district of this court, unlawfully and against the right of said Plaintiff/Landlord/Owner

because: Failure to vacate pursuant to a lawful notice terminating tenancy.

and further, that $ ___ N/A ___ rent is owed according to the following account:

WITNESS:

**Mary Hogan Sullivan**
First or Chief Justice

Donna M Ashton
Printed Name of Plaintiff or Attorney

Signature of Plaintiff or Attorney

February 2, 2015
Date of Signature of Plaintiff or Attorney
BBO # 634984

**ACCOUNT ANNEXED** (itemize)

Ashton Law PC, 28 Church St. #10
Address of Plaintiff or Attorney
Winchester, MA 01890 (781) 756-6600
Telephone Number of Plaintiff or Attorney

---

**NOTICE TO EACH DEFENDANT/TENANT/OCCUPANT**: At the hearing on ___ February 19, 2015 ___ you (or your attorney) must appear in person to present your defense. You (or your attorney) must also file a written answer to this complaint. An answer is your response stating the reason(s) why you should not be evicted and may, in residential cases, include any claims you have against the Landlord. (An Answer Form is available in the **clerk's office whose telephone number is 781 329-4777 ext. 320**.) You must file (deliver or mail) the answer with the court clerk and serve (deliver or mail) a copy on the landlord (or landlord's attorney) at the address shown above. **The Answer must be received by the court clerk and received by the landlord (or the landlord's attorney) no later than Monday, ___ February 16, 2015 ___,** which is the first Monday after the "entry date" listed above. The entry date is the day by which your landlord must file this complaint with the court clerk.

Page 1 of 2 Pages

CC: Andre Bisasor and Natalie Anderson
2000 President's Way #3413, Dedham, MA 02026
*Via Constable*

Commonwealth of Massachusetts
## SUMMARY PROCESS (EVICTION) SUMMONS AND COMPLAINT

| District Court | Department |
| Dedham | Division |
| Norfolk | ss |

☒ Residential
☐ Commercial

Docket No. 15-5H-SU-026
(To be added by clerk's office )

Entry Date: February 9, 2015

### NOTICE OF A COURT CASE TO EVICT YOU - PLEASE READ IT CAREFULLY

### ESTA ES UNA NOTIFICACION DE UN CASO EN CORTE  PARA DESALOJARLE - FAVOR DE LEER EL MISMO CON CUIDADO

TO DEFENDANT(S)/TENANT(S)/OCCUPANT(S):  Andre Bisasor and Natalie Anderson

ADDRESS:  3000 President's Way #3413          CITY/TOWN:  Dedham      ZIP:  02026

You are hereby summoned to appear at a hearing before a Judge of the Court at the time and place listed below:

DAY: Thursday  DATE: February 19, 2015   TIME: 10:00 AM COURT NAME:  Dedham District Court

COURT ADDRESS: 631 High St. Dedham, MA 02026  ROOM:  Courtroom 1

to defend against the complaint of PLAINTIFF/LANDLORD/OWNER:

Greystar Management Services, L.P. as agent for owner RAR2 Jefferson at Dedham Station MA, Inc.        of

STREET   1000 Presidents Way          CITY/TOWN: Dedham     ZIP:  02026

that you occupy the premises at      3000 President's Way #3413, MA 02026

being within the judicial district of this court, unlawfully and against the right of said Plaintiff/Landlord/Owner

because:   Non-payment of rent

and further, that $ 24,650.78 rent is owed according to the following account:

WITNESS:
Mary Hogan Sullivan

First or Chief Justice

Donna M Ashton
Printed Name of Plaintiff or Attorney

Signature of  Plaintiff or Attorney

February 2, 2015
Date of Signature of Plaintiff or Attorney

BBO # 634984

**ACCOUNT ANNEXED** (itemized)

See Exhibit A attached hereto

Ashton Law PC, 28 Church St. #10
Address of Plaintiff or Attorney

Winchester, MA  01890  (781) 756-6600
Telephone Number of Plaintiff or Attorney

---

**NOTICE TO EACH DEFENDANT/TENANT/OCCUPANT:** At the hearing on   February 19, 2015
you (or your attorney) must appear in person to present your defense.  You (or your attorney) must also file a
written answer to this complaint.  An answer is your response stating the reason(s) why you should not be evicted
and may, in residential cases,  include any claims you have against the Landlord. (An Answer Form  is available
in the clerk's office whose telephone number is 781-329-4777 ext.314/315 .)  You must file (deliver or mail)
the answer with the court clerk and serve (deliver or mail) a copy on the landlord (or landlord's attorney) at the
address shown above.  **The Answer must be received by the court clerk and received by the landlord (or the
landlord's attorney) no later than Monday,**   February 16, 2015   , which is the first Monday after the "entry
date" listed above.  The entry date is the day by which your landlord must file this complaint with the court clerk.

**Page 1 of 2 Pages**

CC:  Andre Bisasor and Natalie Anderson
2000 President's Way #2216, Dedham, MA 02026
*Via Constable*

175

## Inspection Form

**Dedham Board of Health 781-751-9220**

**SSC 105 CMR 410.000: Chapter II, Minimum Standards of Fitness for Human Habitation**

603

| Date | 11-20-14 | Time | # Occupants | | # Children < 6 Years |
|---|---|---|---|---|---|
| Addres | 3000 Presidents Way Unit # 3413 | | City/Town | | Dedham |
| Occupant Name | Natile Anderson | | Phone # | | 617-710-7093 |
| Owner Name | KARa Jefferson at Nedham | | Phone# | | |
| Owner Address | 1000 Presidents Way | | City/Town | Dedham | Zip Code 02026 |
| # Dwelling/ Rooming Units in Dwelling | | | # Stories 4 | | Floor Level of Unit 4 |
| # Sleeping Rooms 2 | | | # Habitable Rooms (.400) 4 | | |
| Inspector | Catherine Cardinate | | Title | Health Director | |

**If violations are observed and checked, describe them fully on Page 3.**

| Area or Element | Type of Violation<br>Use blank boxes for ones not listed | Possible Code Section(s) | ✓if Violation Observed | Responsible Party | |
|---|---|---|---|---|---|
| | | | | Owner | Occupant |
| | | | | | |
| Exterior, Yard & Porch | Locks — Lock· Dead Bolt / Gold· | 480 | X | X | |
| | Posting, ID, Exit signs/emergency lights | 481, 483, 484 | | | |
| | Handrails, steps, doors windows, roof | 500, 501, 503 | | | |
| | Rubbish—storage and collection | 600, 601 | | | |
| | Maintenance of Area | 602 | | | |
| | | | | | |
| Common Areas & Entry | Light, windows | 253, 254, 501 | | | |
| | Egress | 450, 451, 452 | | | |
| | Handrails | 503 | | | |
| | | | | | |
| Interior Halls & Stairs | Floors, walls ceilings | 500 | | | |
| | Hallways, railings, stairs | 503 | | | |
| | Light, windows | 253, 254, 501 | | | |
| | | | | | |
| Bedroom 1 | Location (circle): Front Rear Middle    Left Middle Right | | | Floor Level of Unit | |
| | Ventilation | 280 | | | |
| | Ceiling height — cracks- nugripple | 401, 402 | X | X | |
| | Windows, screen — torn— | 501, 551 | | | |
| | Door= aajust closes | | | | |
| Bedroom 2 | Location (circle): Front Rear Middle    Left Middle Right | | | Floor Level of Unit | |
| | Ventilation | 280 | | | |
| | Ceiling height —cracks | 401, 402 | X | X | |
| | Windows, screen | 501, 551 | | | |
| | Door- Light - Heat-Aircunit | | | X | X |
| Bathroom | Toilet, sink, shower, tub, door whistle noise | 150 | | | |
| | Smooth, impervious surfaces | 150 | | | |
| | Lights, outlets, ventilations - Bulbs out (2) | 251, 280 | | | |
| | Floors/walls - cracks | 504 | X | X | |
| | | | | | |
| Kitchen | Sink, stove, oven; good repair, impervious and smooth, space refrig Dishwasher- Drain- installation- counter | 100 | | X | |
| | Lights, outlets, ventilation, windows, screens | 251, 280, 501, 551 | | | |

Rev. 5-6-10

Page 1 of ___

176

| Area or Element | Type of Complaint (Use blank boxes for ones not listed) | Code Section(s) | ✓ if Violation Observed | Responsible Party | |
|---|---|---|---|---|---|
| | | | | Owner | Occupant |
| | | | | | |
| Kitchen, cont. | Ceiling height | 401, 402 | | | |
| | Floor | 504 | | | |
| | (cracks - | | X | X | |
| Living room and Dining Room | Lights, outlets, ventilation | 250, 280 | | | |
| | Ceiling height | 401, 402 | | | |
| | Windows/screens  2 windows tight  need adjustment | 501, 551 | | | |
| | | | | X | |
| Basement | Maintenance | 500 | | | |
| | Watertight | 500 | | | |
| | Lighting | 253 | | | |
| | | | | | |
| Water | Source (circle): Public   Private | | | | |
| | Must be potable | 180 | | | |
| | Quantity, pressure | 180 | | | |
| | Responsible for paying MGL ch 186 s 22, metering | 354 | | | |
| | | | | | |
| Hot Water | Fuel Type (circle): Natural Gas   Oil   Electric   Other | Temp.: | °f Location taken: | | |
| | Quantity, pressure, 110 F min, 130 max | 190 | | | |
| | Venting  could not access | 202 | | | |
| Heating | Type (circle): Forced Hot Water   Forced Hot Air   Steam   Electric | | | | |
| | No portable units | 200 | | | |
| | "Habitable room and every room with toilet, shower, tub" | 201 | | | |
| | • 68 F 7 am to 11 pm, 64 F 11:01 pm to 6:59 am, except 6/15-9/15 | | | | |
| | • 78 F max in heating season/measure 5 feet wall, 5 feet floor | | | | |
| | Venting, metering | 202, 354, 355 | | | |
| | | | | | |
| Electrical | Type (circle): 110   220   Amp: | | | | |
| | Amperage, temporary wiring, metering | 250, 255, 256, 354 | | | |
| | | | | | |
| Drainage, Plumbing | Type (circle): Public   Private | | | | |
| | Sanitary drainage required and maintained | 300, 351 | | | |
| | | | | | |
| Smoke & CO Detectors | Required & operational | 482 | | | |
| Pests | Free of pests (rodents, skunks, cockroaches, insects) | 550 | | | |
| | Structural maintenance and elimination of harborage | 550 | | | |
| | complaint of bugs - none at time | | | | |
| Asbestos or Lead Paint | | 353, 502 | | | |
| Curtailment | | 620 | | | |
| Access | | 810 | | | |
| Other | | | | | |

Rev. 5-6-10

Page 2 of ___

177

| Referral: | ☐ Electric | ☐ Fire | ☐ Plumbing | ☒ Building | ☐ Other |
|---|---|---|---|---|---|
| *This inspection report is signed and certified under the pains and penalties of perjury.* |
| **Inspector Signature** |
| **Occupant or Occupant's Representative Signature** |
| **Reinspection Date** | | | | **Time** |

### Written description of any violation(s) checked above

Include Area or Element, code citation and a description of the condition(s) that constitute the violation. You may include remedies that would be an acceptable means of achieving compliance with 105 CMR 410.000.

NOTE: *indicates that this housing inspection **has** revealed conditions which may endanger or materially impair the health, safety, and well-being of any person(s) occupying the premises

| Area/Element, Code Citation and Description of Violation | Acceptable Remedies |
|---|---|
| Bugs- through cracks - Kitchen | |
| numerous- cracks & throughout / Settling? | |
| Ice maker - Cleaned? filter change - odor? | |
| Vent screen - Above door - Clean - Hallway exterior possible water leak | |
| Tighten bottom door seal - ? | |
| - to see how water is metered. | |
| | |
| | |
| | |
| | |
| | |
| C/O Thompson Reuters Dept 207 P.O. Box 4900 Scottsdale, AZ 85261-4900 | |

Rev. 5-6-10

Page 3 of ___

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In Re:                                    )
                                          )
Andre Bisasor,                            )          Chapter   13
                                          )          Case No.  15-13369
                              Debtor      )

SUPPLEMENTAL FILING TO THE OBJECTION TO DEBTOR'S CERIFICATION
PURSUANT TO 11 U.S.C. 362(*l*)(l)(A)
*OR IN THE ALTERNATIVE*
GREYSTAR MANAGEMENT SERVICES LP AS AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA INC. REQUEST FOR RELIEF FROM THE AUTOMATIC
STAY REGARDING APARTMENT #3413 & #2216

TO THE HONORABLE JOAN N. FEENEY, BANKRUPTCY JUDGE FOR THE
REFERENCED MATTER:

As a result of the hearing and subsequent order of September 17, 2015, Greystar

Management Services LP as agent for Owner RAR2 Jefferson at Dedham Station MA Inc.

("Greystar"), submits the following additional support in response to the Court's inquiry as to the

existence and status of the prepetition Judgments for possession in the State Courts.

Procedural History

1. Both Judgments entered on May 27, 2015.

2. The Debtor requested an appeal of the District Court's entry of default judgments and
   denial of a motion to continue on June 8, 2015.

3. The Debtor requested a waiver of the Appeal Bond in the District Court which was
   denied, and the Appeal Bond was set at $32,000 on June 8, 2015.

4. The Debtor requested a review by the Appellate Division of the denial of the waiver
   of the Appeal Bond and amount of the Appeal Bond.

5. The Appellate Division reviewed the appeal bond, as permitted by MGL ch 239 sec 5
   and increased the amount of the bond to reflect the additional two months of use of
   the apartment, as well as ordering use and occupancy to be paid during the pendency

1

179

of the appeal on July 2, 2015. The *Decision and Order* of the Appellate Division issued on July 27, 2015. **(Attached hereto as Exhibit A).**

6. Pursuant to MGL ch. 239 sec 5, the Debtor had 5 days from receipt of the notice of the order to pay the bond. The Defendants failed to post the Bond within 5 business days after they acknowledged receipt of the Notice from the Appellate Division.

7. Pursuant to MGL ch 239 sec 5(h), the Defendants' Appeal in the District Court was dismissed and Executions issued on Friday, August 7, 2015. **(See Docket Attached hereto as Exhibit B).**

8. The Defendants were served with 48 Hours Business-Days Notice on Friday August 7, 2015 that the Levy on the Execution would take place on Wednesday August 12, 2015 at 9:00 a.m..

9. The Defendants appeared on August 7, 2015 at 4:25 p.m. in the District Court requesting an Emergency Motion to Stay the Levy of the Execution for Possession and Damages pursuant to MGL 239. The Defendant did not specify under what section of chapter 239 he was requesting. The Motion was denied on August 10, 2015.

10. The Debtor filed an Emergency Motion to Stay the Levy of Execution for Possession in the Appeals Court on August 11, 2015 in the late afternoon. Judge Katzmann granted a brief stay to conduct a hearing on August 15, 2015.

11. A hearing was held before Judge Katzmann on August 15, 2015. The Debtor requested and was granted the opportunity to supplement his filings on that day. The Debtor supplemented his initial submission with over 450 additional pages, which included transcripts of the District Court proceedings.

12. Judge Katzmann's order denied the Debtor's appeal on the Motion to Levy but allowed additional time for the Debtor to move himself out of the unit until August 27, 2015.

13. The Debtor filed an emergency request for review to the Single Justice of the Supreme Judicial Court of Massachusetts regarding the Appeals Court denial of the stay on August 27, 2015 at approximately 12:30 p.m..

14. The Single Justice denied the Debtor's request at approximately 4:00 p.m. on August 27, 2015.

15. The Debtor filed the Petition at 4:51 p.m. on August 27, 2015.

Argument

As demonstrated by the procedural history, Debtor's filing of this Bankruptcy petition is nothing more than a final attempt to delay the levy on Greystar's Execution for Possession. The Debtor has failed to pay rent and or use and occupancy for 14 months, failed to post an appeal bond when ordered by the Court on May 27, 2015 and July 27, 2015 and now, at the eleventh hour, less than twenty four (24) hours before the scheduled levy, files a Bankruptcy petition.

Debtor's appeals in the District Court on the underlying Summary Process cases were dismissed on August 7, 2015, by operation of law for failing to pay the required appeal bond. MGL ch 239 sec 5(h) (District Court Dockets, Attached as **Exhibit B**). The Judgments for Possession are valid final judgments in both summary process cases.

> *Unif. Summ. Process R. Rule 13: Executions <u>are not to issue</u> prior to the time limits imposed by applicable laws and the relevant provisions of Rules 60 and 62 of the Massachusetts Rules of Civil Procedure. (emphasis added).*

Had the Debtor retained any avenue of appeal of the District Court rulings, the Executions would not have been issued by the District Court, but rather would have been stayed by operation of the detailed provisions of MGL ch 239 sec 5. That statute intertwines the setting of an appeal bond (or waiver thereof) with the stay of the Execution pending a determination of that appeal. The Debtor has exhausted his claims under MGL ch. 239 sec. 5 because he failed to pay the appeal bond, and, therefore, his appeal was dismissed and the Executions properly issued. In the Matter of an Appeal Bond, 428 Mass 1013 (1998). The dismissal of an appeal based on the failure to pay an appeal bond which was set, and then further reviewed, is dictated by the statute. MGL ch 239 sec. 5, PGR Management Company v. Credele 427 Mass 636 (1998).

3

181

There is only one level of review of an appeal bond and/or waiver of appeal bond under

MGL ch. 239 sec. 5, which if tendered or waived affords a stay of the Execution. Ford v.

Braman, 30 Mass App Ct 968, 969 (1991). After the Appellate Division's review, if the Debtor

was still aggrieved of the Bond, he can bring forward an appeal on the limited bond issue, but at

no time either in the statute or in the cases is it contemplated that a further Stay of Execution for

Possession would be granted pending that full review; in fact the Supreme Judicial Court

contemplated the dismissal and refers to the procedure as "suffering the dismissal". In the Matter

of an Appeal Bond, 428 Mass 1013 (1998). The appeal of the denial of the waiver or amount of

the appeal bond is not an appeal of the merits of the underlying Judgment. After the dismissal

of the Appeal and issuance of the Execution, there is yet an additional avenue for requested relief

from the Execution of Possession, to which the Debtor availed himself. Pursuant to MGL ch 239

secs 9 & 10 a stay could have been granted by the District and then the appellate courts, but all

three motions for stay of the Execution were denied by the state court. The Massachusetts

Appeals Court explained its rationale for the denial of the stay because of the futility of the

Debtor's claim of an abuse of discretion by the District Court judge. **(Exhibit C).** The SJC

Single Justice likewise denied a stay of Execution. That left no impediment under state law to

executing on the Judgments. The Debtor's ability to keep filing papers in the appellate courts

does not detract from the finality of the Judgment for Possession.

> *Unif. Summ. Process R. Rule 12: Any judgment in a summary process action,*
> *except a default judgment, may be appealed by an aggrieved party in accordance*
> *with the provisions of the law. (emphasis added)*

4

The Debtor's claim regarding an appeal based on the denial of a motion to continue a hearing is moot. The default Judgment would not be disturbed upon appeal, as there is no right to appeal a default in a summary process action. Unif. Summ. Process R. Rule 12.[1]

The Debtor's final argument attempting to cast doubt on the "finality" of the Execution is that there is an outstanding Motion to Remove the Default unacted upon in the District Court. As evidenced by the Court's decision, this argument is also misplaced. The Motion was implicitly acted upon by Judge Ziemiann's ruling on July 2, 2015, which was after the filing of the Debtor's Motion and after the Debtor was afforded an additional hearing, which notably he failed to attend. That ruling, titled as "Memorandum of Decision Concerning Entry of Default Judgment" details the history and rationale for the entry of the Default and upholds the Default Judgments entered on both cases. Additionally, any relief from Judgment that the Debtor would seek is subject to Unif. Summ. Process R. 11, which directly refers to Mass Rules of Civil Pro. Rule 60. Rule 60(b) specifically states that "[a] motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation".

The statue does not require that the prepetition judgment for possession be "final." The Debtor himself believes the Judgment to fall under the 11 USC 362(b)(22), as he filed a certification pursuant to 11 USC 362(l) under the pains and penalties of perjury, in order to avail himself of the specific carve out of the Code. Debtor's citations to cases involving automatic de novo review of Judgments (In re Alberts) and appeals periods that have not lapsed (In re Nitzsky) are not determinative of this matter. It is important to note, that Greystar holds an

---

[1] Debtor relies on Tamber v. Desrochers 45 Mass App Ct 234 (1998) which is distinguishable. In Tamber the proposed appeal was after trial and the Appeals Court found that the basis for the denial of the appeal bond waiver lacked specificity as to its rationale, as there was no rationale provided. The case at bar is based on the Debtor's appeal of a default entered in the District Court, which is not an appealable issue in Summary Process pursuant to Unif. Summ. Process R. 12. Further the detailed Memorandum of Decision Concerning Entry of Default Judgment in the instant case, provides the required rationale for the entry of the default as noted by the Single Justice of the Appeals Court, which was lacking in Tamber.

Execution for Possession, which is issued 10 days post Judgment after appellate avenues are exhausted. In the instant case there was a span of three (3) months for the Debtor to pursue his state court remedies before the Execution issued, and at the eleventh hour, he filed the bankruptcy petition. 11 USC 362(l) was added to the Code pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) to protect against the very type of abuse that the Debtor has proposed here. In re Griggsby, 404 B.R. 83 (Bankr.S.D.N.Y. 2009) **(Attached Exhibit D).**

"A state court judgment issued prior to the filing of a debtor's bankruptcy case is res judicata in the bankruptcy case, and the debtor may not relitigate issues already decided in state court." In re Griggsby at 91, citing In re Éclair Ltd., 255 BR 121, 133 n. 23 (Bankr.S.D.N.Y.2000). The normal rule is that even judgments subject to appeal are considered final for purposes of res judicata, at least unless the review provides for a de novo trial. Restatement of Judgments, 2d § 13. The issue of possession is well settled in this case and may not be collaterally attacked in this Court. The state courts had the power, ability and opportunity to stay the levy of the Execution of Possession, but the Debtor did not meet the requirements for a stay, either in posting the bond, or requesting a stay post issuance of the Execution. Clearly the BAPCPA was enacted to thwart individuals like this Debtor who is using the Code to prevent lawful exercise of a State issued Execution for possession by petitioning the Bankruptcy Court.

**WHEREFORE**, Greystar respectfully requests that this Court sustain the objections to

the Debtor's Certification pursuant to 11 USC 362(l).

<div style="margin-left:40%">

Respectfully submitted
Greystar Management Services LP
as agent for owner RAR2-Jefferson at
Dedham Station MA, Inc.
By its attorneys,
ASHTON LAW, P.C

Donna M. Ashton
BBO# 634984
28 Church Street, Suite 10
Winchester, Massachusetts 01890
(781) 756-6600
dma@ashton-law.com

</div>

Dated: September 18, 2015

## **CERTIFICATE OF SERVICE**

I, Donna M. Ashton, hereby certify that on this 18th day of September, 2015, copies of the foregoing:

SUPPLEMENTAL FILING TO THE OBJECTION TO DEBTOR'S CERIFICATION
PURSUANT TO 11 U.S.C. 362($l$)($l$)(A)
*OR IN THE ALTERNATIVE*
GREYSTAR MANAGEMENT SERVICES LP AS AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA INC. REQUEST FOR RELIEF FROM THE AUTOMATIC
STAY REGARDING APARTMENT #3413 & #2216

were served upon the following parties of interest by through the Court's CM/ECF system:

Trustee:

Carolyn Bankowski-13
Chapter 13 Trustee Boston
P.O Box 8250
Boston, MA 02114
cbankowski@ch13boston.com

Debtor through
Debtor's Counsel:

David G. Baker
236 Huntington Avenue #306
Boston, MA 02115
david@bostonbankruptcy.org

Assistant US Trustee:

John P. Fitzgerald
John. W. McCormack Post Office and Court House
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3945

Donna M. Ashton, Esq.

8

186

# EXHIBIT A

COPY

COMMONWEALTH OF MASSACHUSETTS
APPELLATE DIVISION OF THE DISTRICT COURT DEPARTMENT
SOUTHERN DISTRICT

NORFOLK, SS.                                          APPELLATE DIVISION

GREYSTAR MANAGEMENT SERVICES, L.P.,
AS OFFICER OF OR AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA, INC.
V. NATALIE ANDERSON AND ANDRE BISASOR
Appellate Division No. 15-ADMS-60010
Dedham Division No. 1554SU0026

GREYSTAR MANAGEMENT SERVICES, L.P.,
AS OFFICER OF OR AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA, INC.
V. NATALIE ANDERSON AND ANDRE BISASOR
Appellate Division No. 15-ADMS-60011
Dedham Division No. 1554SU0028

## DECISION AND ORDER

This summary process action came on to Appellate Division, Southern District, sitting in Fall River, on the defendants' G.L. c. 239, § 5 appeal of the trial court's June 8, 2015 order denying the defendants' motion for waiver of the appeal bond in each case and setting such bond in the amount of $32,000.00 for both cases.

Written and telephone notice was provided to the parties on July 1, 2015 of a hearing before this Division on July 8, 2015. On July 6, 2015, the defendants moved to continue the hearing, which the plaintiff opposed on July 7, 2015. The hearing went forward on July 8, 2015, and only the plaintiff's counsel appeared. Following the hearing, the defendants filed a motion for rehearing on July 9, 2015, and an affidavit in support of the motion on July 10, 2015.

The statutory requirements for waiver of a G.L. c. 239, § 5 bond are indigency of the appellant and a nonfrivolous defense to be presented on appeal. After hearing and upon review of the defendants' written submissions, we are persuaded that while the defendants are indigent, they have failed to raise a defense that is not frivolous. Accordingly,

**It is hereby ORDERED that the Clerk of the Trial Court shall make the following entry on the dockets of the above captioned cases:**

(1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for both cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during the pendency of the appeal.

*Greystar Mgt. Servs., LLP et al. v. Anderson & Bisasor*
Nos. 15-ADMS-60010; 15-ADMS-60011
July 27, 2015
Page 2 of 2

**HON. CHRISTOPHER D. WELCH, Justice**
**HON. KEVIN J. FINNERTY, Justice**

**DATE: JULY 27, 2015**

This certifies that this is the Decision
& Order of the Appellate Division in
this matter. A True Copy, Attest:

*Brien M. Cooper*
Brien M. Cooper, Clerk

# EXHIBIT B

## 1554SU000026 Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Bisasor, Andre

| | | | |
|---|---|---|---|
| **Case Type** | Summary Process | **Case Status** | Disposed - Statistical Purposes |
| **Status Date:** | 05/27/2015 | **File Date** | 02/11/2015 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

**Property Address**
3000 President's Way #3413
Dedham MA 02026

| All Information | Party | Judgment | Event | Docket | Disposition |
|---|---|---|---|---|---|

## Party Information

**Greystar Management Services, L.P. - Plaintiff**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|
| Ashton, Esq., Donna M. (634984) | |

More Party Information

**Bisasor, Andre - Defendant**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|

More Party Information

**Anderson, Natalie - Defendant**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|

More Party Information

## Judgments

| Date | Type | Method | For | Against |
|---|---|---|---|---|
| 05/27/2015 | Judgment for Plaintiff for Possession and Rent | , after default | Greystar Management Services, L.P. | Anderson, Natalie |
| 05/27/2015 | Judgment for Plaintiff on Counterclaim | , after defendant(s) failed to appear | Greystar Management Services, L.P. | Anderson, Natalie |

## Events

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 02/19/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 04/09/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/04/2015 03:00 PM | Summary Process Session | | Motion Hearing (CV) | Held |
| 05/07/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/13/2015 02:15 PM | Summary Process Session | | Ex Parte Hearing | Held |
| 05/14/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |

| Date | Session | Location | Type | Result |
|------|---------|----------|------|--------|
| 05/21/2015 02:00 PM | Summary Process Session | | Status Review | Event Continued |
| 05/26/2015 09:00 AM | Summary Process Session | | Status Review | Event Continued |
| 05/28/2015 09:00 AM | Dedham Civil Jury Session | | Jury Trial (CV) | Not Held But Event Resolved |
| 06/08/2015 09:00 AM | Summary Process Session | | Status Review | Held |
| 07/02/2015 10:00 AM | Summary Process Session | | Motion Hearing (CV) | Held |
| 08/07/2015 04:25 PM | Summary Process Session | | Motion Hearing (CV) | Held |

## Docket Information

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|-------------|-------------|--------|---------------|
| 02/11/2015 | Complaint filed | | 2 |
| 02/13/2015 | Appearance filed<br>On this date Wed Feb 11 00:00:00 EST 2015 Ashton, Esq., Donna M. added for Greystar Management Services, L.P. | | 1 |
| 02/13/2015 | Civil Filing Fee Surcharge due. Receipt: 39226 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Summary Process Filing Fee due. Receipt: 39226 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 02/19/2015 Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 04/09/2015 Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 02/19/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Reason: Both Parties Request<br>Appeared: | | |
| 04/07/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 04/09/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 04/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/07/2015 Time: 10:00 AM<br>Result: Event Continued<br>Result: Event Continued | | |
| 04/10/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/04/2015 | Motion for continuance (Mass.R.Civ.P.40[b]) filed by Andre Bisasor, Natalie Anderson. | | 3 |
| 05/04/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015 Time: 03:00 PM | | |
| 05/04/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has been resulted as | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/04/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 05/04/2015 03:00 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>Appeared: | | |
| 05/04/2015 | Motion to continue allowed Hon. Michael J Pomarole | | |
| 05/04/2015 | No further continuances. * | | |
| 05/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/14/2015 Time: 10:00 AM<br>05/04/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion for Continuance (Mass.R.Civ.P.40[b]) is ALLOWED. No further continuances.<br><br>(Honorable Michael J. Pomarole)<br>Result: Held | | |
| 05/07/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015 Time: 3:00 PM<br>Result: Held | | |
| 05/11/2015 | Answer filed by Andre Bisasor, Natalie Anderson. | | 4 |
| 05/11/2015 | Counterclaim filed by Andre Bisasor, Natalie Anderson against Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. (Uniform Summary Process Rule 5)). | | 5 |
| 05/11/2015 | Jury trial claim on all issues endorsed upon pleading by Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 8). | | 6 |
| 05/11/2015 | Motion to transfer or consolidate filed by Andre Bisasor, Natalie Anderson. | | 7 |
| 05/11/2015 | Motion to dismiss filed by Andre Bisasor, Natalie Anderson. | | 8 |
| 05/11/2015 | Interrogatories directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | | 9 |
| 05/11/2015 | Request for production of document(s) directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | | 10 |
| 05/13/2015 | Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | | |
| 05/13/2015 | Event Resulted<br>The following event: Ex Parte Hearing scheduled for 05/13/2015 02:15 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>NO ACTION TAKEN ON Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | | |
| 05/14/2015 | Motion for leave of Court to file requests for discovery filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 11 |
| 05/14/2015 | Motion to amend summary process summons and complaint filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 12 |
| 05/14/2015 | Motion to strike portions of Defendans answer and counterclaim [MASS R CIV P 8(e)] and dismiss [MASS R CIV P 12(b)(1) and 12(b)(6) filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 13 |
| 05/14/2015 | | | 14 |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Motion for protective order filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | |
| 05/14/2015 | Motion for reconsideration filed by Andre Bisasor, Natalie Anderson. | | 15 |
| 05/14/2015 | Motion to compel discovery and for a continuance filed by Andre Bisasor, Natalie Anderson. | | 16 |
| 05/14/2015 | Motion to allow counsel to represent defendants filed by Andre Bisasor, Natalie Anderson. | | 17 |
| 05/14/2015 | Motion to add parties filed by Andre Bisasor, Natalie Anderson. | | 18 |
| 05/14/2015 | Motion for leave of Court to file requests for discovery allowed Hon. Thomas L Finigan | | |
| 05/14/2015 | Event Resulted The following event: Bench Trial (CV) scheduled for 05/14/2015 10:00 AM has been resulted as follows: Result: Event Continued Appeared: | | |
| 05/14/2015 | Termination notice filed (Uniform Summary Process Rule 2). | | 19 |
| 05/14/2015 | Motion to consolidate summary process filed by Andre Bisasor, Natalie Anderson. | | 25 |
| 05/19/2015 | Event Scheduled Event: Ex Parte Hearing Date: 05/13/2015 Time: 02:15 PM Result: Held | | |
| 05/19/2015 | Event Scheduled Event: Jury Trial (CV) Date: 05/28/2015 Time: 09:00 AM Result: Not Held But Event Resolved | | |
| 05/20/2015 | Notice concerning next court event, to wit - 05/21/2015 02:00 PM Status Review-- sent to parties. 05/14/2015- After motion hearing, Greystar Management Services, L.P.'s Motion for Leave of Court to File Requests for Discovery is ALLOWED. (Honorable Thomas Finigan) | | |
| 05/21/2015 | Event Resulted The following event: Status Review scheduled for 05/21/2015 02:00 PM has been resulted as follows: Result: Event Continued Appeared: | | |
| 05/21/2015 | Motion for leave of Court to file a motion for protective order filed by Andre Bisasor, Natalie Anderson. | | 23 |
| 05/21/2015 | Motion for leave of Court to review plaintiff's response to defendants discovery requests filed by Andre Bisasor, Natalie Anderson. | | 24 |
| 05/26/2015 | Event Resulted The following event: Status Review scheduled for 05/26/2015 09:00 AM has been resulted as follows: Result: Held Reason: Defendant Not Present Appeared: | | |
| 05/26/2015 | Affidavit and Request for Continuance Due to Illness faxed by Andre Bisasor and Natalie Anderson. | | |
| 05/26/2015 | Request for Continuance Due to Illness denied. | | |
| 05/26/2015 | Motion to amend account annex to reflect 13 months, $ 31,070.00 made in open court by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. and allowed. | | |
| 05/26/2015 | Military affidavit filed as to whether Andre Bisasor, Natalie Anderson is in military service (Servicemembers Civil Relief Act, P.L. 108-189 §201, 50 U.S.C. App. §421). | | 22 |
| 05/26/2015 | Default entered against Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 10 (a)). | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| 05/27/2015 | **Judgment Entered:**<br>Judgment for Plaintiff for Possession and Rent , after default<br>Ziemian, Hon. Robert P<br>Judgment For: Greystar Management Services, L.P.<br>Judgment Against: Bisasor, Andre / Anderson, Natalie<br>Terms of Judgment:<br>Interest Begins: 02/11/2015      Jdgmnt Date: 05/27/2015<br>Interest Rate: .12<br>Daily Interest Amt: .000329<br>Damages:<br>Damage Amt: 31070.00      Filing Fees: 195.00<br>Costs Pd to Court: 5.00<br>Other Costs: 80.00<br>Judgment Total: 32,423.31<br>Execution entered on 08/07/2015 | | |
| 05/27/2015 | **Judgment Entered:**<br>Judgment for Plaintiff on Counterclaim , after defendant(s) failed to appear<br>Ziemian, Hon. Robert P<br>Judgment For: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Judgment Against: Bisasor, Andre / Anderson, Natalie<br>Terms of Judgment:<br>Jdgmnt Date: 05/27/2015 | | |
| 05/27/2015 | Notice concerning next court event, to wit - 06/08/2015 09:00 AM Status Review-- sent to parties.<br>05/26/2015- After hearing, Andre Bisasor and Natalie Anderson's Request for Continuance Due to Illness is DENIED, defendant's failed to appear. Greystar Management Services, L.P.'s Motion to Amend Account Annex to Reflect 13 months, $ 31,070.00. Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. is ALLOWED. Jury Trial<br>scheduled for 05/28/2015 is CANCELLED.<br><br>(Honorable Robert P. Ziemian) | | |
| 06/08/2015 | Motion for attorney's fees filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. | | 26 |
| 06/08/2015 | Motion for reconsideration of defendants' affidavit and request for continuance due to illness filed by Andre Bisasor, Natalie Anderson. | | 27 |
| 06/08/2015 | Motion to remove the default and vacate the default judgment; and or/motion for relief of judgment, pusuant to M.R.C.P. Rule 55,59, and/or 60 filed by Andre Bisasor, Natalie Anderson. **EMERGENCY** | | 28 |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. Rule 55,59 and /or 60 [Related to apartment conditions and violations] filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. rule 55,59 and/or 60 [Related to procedural case history and medical situation] filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Notice of Appeal filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Motion to waive appeal bond and other costs- Apartment 3413 filed by Andre Bisasor, Natalie Anderson. | | 29 |
| 06/08/2015 | Motion to set the appeal bond hearing filed by Andre Bisasor, Natalie Anderson. | | 30 |
| 06/08/2015 | Emergency Motion to stay issuance of execution pending the outcome of defendants motion to remove default and vacate judgment and/or motion for relief from judgment as well as pending outcome of defendants' appeal filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Emergency Motion to defer decision on appeal bond until after defendants motion to remove dafault and vacate judgment and/or motion for relief from judgment is heard filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Attachment 1: Summary of Non-Frivolous Defenses  filed by Andre Bisasor and Natalie Anderson.<br>Attachments Exhibit D- Dedham Board of health citation (Nov 2014)  filed by Andre Bisasor and Natalie Anderson.<br>Case Law and Authorities for motions to remove default judgment  filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Motion  package cover letter for unit 3413 filed by Andre Bisasor, Natalie Anderson. | | 31 |
| 06/08/2015 | Hospital documents  filed by Andre Bisasor. | | |
| 06/08/2015 | Motion  to waive appeal bond and other costs- apartment 3413 denied. | | |
| 06/08/2015 | Motion  for recusal of Judge Robert Ziemian filed by Andre Bisasor, Natalie Anderson. | | 32 |
| 06/08/2015 | Motion for recusal of Judge Robert Ziemian denied. | | |
| 06/08/2015 | For the entry of a civil appeal in the appellate division of the district court department | $0.00 | |
| 06/08/2015 | Indigency affidavit and request for waiver, substitution or payment by the Commonwealth of fees/costs filed by Andre Bisasor, Natalie Anderson (G.L. c.261 §27B). | | 33 |
| 06/08/2015 | Indigency request for waiver, substitution or payment by the Commonwealth of fees/costs entered on 06/08/2015 allowed (G.L. c.261 §27B). | | |
| 06/08/2015 | Event Resulted<br>The following event: Status Review scheduled for 06/08/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Appeared: | | |
| 06/08/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | | |
| 06/08/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section 4b | $0.00 | |
| 06/09/2015 | Order; 06/08/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion  to Waive Appeal Bond and Other Costs- Apartment 3413 is DENIED. Court finds that defendants have no reasonable chance of prevailing. 1) Defendants admit in open court they have NOT held "with held rent"  in separate amounts. 2) failure to provide required discovery is an indication of their (failure) and have no reasonable chance of prevailing in this case. Appeal Bond is set at $32,000.00 for both cases 15-54-SU-026 and 15-54-SU-028. Andre Bisasor and Natalie Anderson's Motion for Recusal of Judge Robert Ziemian is DENIED.parties notified. | | |
| 06/15/2015 | Certificate of service for plaintiffs motion for attorneys fees filed. | | |
| 06/15/2015 | Request for review of orders relating to the appeal bond- Apartments 3413 filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/15/2015 | Memoranda in support of request for review of orders relating to the appeal bond filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/15/2015 | Attachment: Summary of Defenses for Possession filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/15/2015 | Second request to markup motion hearing and affidavit /opposition to plaintiff counsel's letter (dated June 11,2015) to Judge Ziemian filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/19/2015 | Notice of Appeal - Reconsideration filed by Andre Bisasor and Natalie Anderson | | |
| 06/19/2015 | Notice of Appeal - Recusal filed by Andre Bisasor and Natalie Anderson | | |
| 06/24/2015 | ORDER CONCERNING THE FILING OF PAPERS<br>As of today's date, no other filings are allowed in the above refrenced cases without express permission of the court. | | |
| 06/24/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson | | |
| 06/29/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 07/02/2015 Time: 10:00 AM | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | ALL PARTIES NOTIFIED BY A CALL FROM THE DEDHAM DISTRICT COURT<br>Result: Held | | |
| 06/29/2015 | SUMMARY PROCESS APPEAL BOND REVIEW sent to APPELLATE DIVISION | | |
| 07/02/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 07/02/2015 10:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | | |
| 07/02/2015 | Order; At the call of the list, Court declines to have hearing on pending motions as Defendants, Andre Bisasor and Natalie Anderson are not present and will rule on the papers. Plaintiff, Greystar Management Services, L.P. requests permission to file a Motion to Dismiss Defendants, Andre Bisasor and Natalie Anderson Appeal Notices filed on June 19, 2015 as Untimely. Request is Allowed.  parties notified. | | |
| 07/02/2015 | Memorandum of Decision Concerning Entry of Default Judgment; parties notified | | |
| 07/06/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson | | |
| 07/08/2015 | Notice of appeal to Appellate Division on record of proceedings filed by Andre Bisasor, Natalie Anderson (G.L. c.231 §108; Dist./Mun.Cts. R.A.D.A. 8C(b)).<br>HANDED TO COURTHOUSE EMPLOYEE OUTSIDE OF THE COURTHOUSE ON 07/08/2015 | | 34 |
| 07/23/2015 | Designation for Transcription filed by Andre Bisasor and Natalie Anderson. | | |
| 07/23/2015 | Order of Designation for Transcription to Transcriber filed by Appellants | | |
| 07/29/2015 | 6 Transcript received from court reporter (Dist./Mun.Cts. R.A.D.A. 8C(d) or Mass. R.A.P. 8(b)(1)); parties notified.<br><br>May 4, 2015<br>May 13, 2015<br>May 14, 2015<br>May 21, 2015<br>May 26, 2015<br>June 8, 2015 | | 35 |
| 07/29/2015 | Appellate Division decision received; trial judge notified (Dist./Mun.Cts. R.A.D.A. 28).<br><br>Decision and Order<br>(1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during pendency of the appeal. | | 36 |
| 08/04/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson<br><br>07/29/2015- Receipt of 6 Transcripts in Trial Court - Rule 8C(f) | | |
| 08/07/2015 | Execution Issued:<br>Execution on Possession of a Dwelling<br>Judgment Debtor: Bisasor, Andre / Anderson, Natalie<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date: 08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate: .12          Post Judgment Int. Total: 768.04 | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Execution Subtotal: 33,191.35<br>Execution Total: 33,191.35 | | |
| 08/07/2015 | Execution Issued:<br>Execution on Money Judgment<br>Judgment Debtor: Bisasor, Andre<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2<br>Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date: 08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate: .12    Post Judgment Int. Total: 768.04<br>Execution Subtotal: 33,191.35<br>Execution Total: 33,191.35 | | |
| 08/07/2015 | Execution Issued:<br>Execution on Money Judgment<br>Judgment Debtor: Anderson, Natalie<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2<br>Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date: 08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate: .12    Post Judgment Int. Total: 768.04<br>Execution Subtotal: 33,191.35<br>Execution Total: 33,191.35 | | |
| 08/07/2015 | Motion to stay execution (Mass.R.Civ.P. 62) filed by Andre Bisasor, Natalie Anderson. | | 37 |
| 08/07/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 08/07/2015 04:25 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present. Court did not contact the Plaintiff's Counsel in a timely matter prior to the Defendants Motion to Stay Execution as the Defendant arrived at 4:23 p.m for a hearing.<br>Appeared: ANDRE BISASOR ONLY<br><br>Applies To: Bisasor, Andre (Defendant) | | |
| 08/07/2015 | Notice of Appeal (made to the Appeals Court of the dismissal of Defendants Appeal in the District Court and the Denial of the Waiver of the Appeal Bond in the Appellate Division of the District Court filed by ANDRE BISASOR and NATALIE ANDERSON (4:22) | | |
| 08/10/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 08/07/2015 Time: 04:25 PM<br>Result: Held | | |
| 08/10/2015 | Opposition filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. to Motion to stay execution that was filed on 08/07/2015. WITH COURT'S PERMISSION, PLAINTIFF'S COUNSEL TO FAX OPPOSITION. | | 38 |
| 08/10/2015 | Order; 08/10/2015(08/07/2015)- After motion hearing, Andre Bisasor and Natalie Anderson's Emergency Motion to Stay the Levy of the Execution for possession and damages (Mass.R.Civ.P. 62) is DENIED, defendant, Andre Bisasor appearing only and Greystar Management Services, L.P. and Natalie Anderson not appearing.parties notified. | | |
| 08/14/2015 | Appeals Court<br>No. 2015-J-0306<br><br>Notice of Docket Entry<br>ORDER: Levy on the Execution on the judgment for possession is hereby stayed pending further order of this Court or a single justice thereof. The Matter shall be heard on Friday, August 14, 2015 at 2P.M. in courtroom 4. (Katzman, J.)<br>*Notice/Attest/Ziemian, J. | | |
| 08/19/2015 | APPEALS COURT Single Justice<br>No. 2015-J-0306<br>Dated 08/17/2015 | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | ORDER: The defendants filed a motion seeking to stay levy on the execution on the judgment for possession of two apartments in a building managed by the plaintiff. This Court briefly stayed levy on the execution and scheduled a hearing on the defendants' motion. After review of the parties' submissions and a hearing, the defendants' motion for a stay pending their appeal is DENIED. To obtain a stay pending resolution of their appeal, the defendants would have to demonstrate, inter alia, a likelihood of success on the merits of their appeal. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The defendants have failed to do so here. The defendants pending appeal is from the dismissal of their appeal occasioned by their failure to pay the required appeals bond. While such an appeal is properly brought before a panel of this Court, see Erickson v. Somers, 446 Mass. 1015 (2006), the defendants have not shown that their appeal, though procedurally correct, is likely to be successful. To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default. Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default. Accordingly, the motion is denied. The stay currently in place shall expire at the end of the day on August 27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.). *Notice/Attest/Ziemian, J. Footnote 1. Natalie Anderson | | |
| 08/19/2015 | Return of service on NOTICE TO PARTIES 08/04/2015 Natalie Anderson; First class mail returned UNDELIVERED:unabletoforw | | 39 |
| 08/20/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section.4b Receipt: 44792 Date: 08/20/2015 | $0.00 | |
| 08/20/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | | |
| 08/21/2015 | Notice sent to parties. A Notce to the Parties was generated and sent to: Plaintiff: Donna M. Ashton, Esq. Defendant: Andre Bisasor Defendant: Natalie Anderson<br><br>Notice of the Assembly of the Record on Appeal for Summary Process Case Single Justice Appeal Re. Appeal Bond G.l.c. 239, Sec. 5. | | |
| 08/21/2015 | CD copy made; requester notified (Dist Ct Special Rule 211(A)(5)). | | |
| 09/08/2015 | Appeals Court Clerk's Office No. 2015-P-1193<br><br>Notice of Entry In accordance with Massachusetts Rule of Appellate Procedure 10(a)(3), please note that the above-references case was entered in this Court on August 31, 2015.<br><br>Dated: September 2, 2015 | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347<br><br>In accordance with the Rules of Appellate Procedure, Nos.9(d) and (10(a) and (b), the enclosed copy of the Notice of Appeal and the Notice of Assembly of the Record on Appeal in the above-entitled case are hereby mailed to you. | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347<br><br>Notice of Entry Docket You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case:<br><br>JUDGMENT:...."it is ORDERED that the emergency petition pursuant to G.L.c. 211§ 3, shall be, and hereby is, DENIED." (Duffly, J.)<br><br>Judgment is filed. | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347<br><br>Notice of Entry Docket | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case: | | |
| | MOTION To Stay execution Pending Appeal To The Full Bench of The SJC filed by Andre Bisasor and Natalie Anderson. (8/27/2015: "Per the within, Motion is DENIED WITHOUT HEARING" (Duffly, J.)). | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347 | | |
| | NOTICE OF ASSEMBLY OF THE RECORD ON APPEAL | | |
| | In accordance with the Rules of Appellate Procedure, Rule 9 (d), notice this day has been sent to the Clerk of the Supreme Judicial Court for the Commonwealth, along with two (2) certified copies of the docket entries. The record has been fully assembled in the office of the Clerk of the Supreme Judicial Court for Suffolk County. | | |
| | COPY OF Notice of Appeal filed. | | |

## Case Disposition

| Disposition | Date |
|---|---|
| Pending | |

# 1554SU000028 Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Bisasor, Andre

| | | | | |
|---|---|---|---|---|
| **Case Type** | Summary Process | | **Case Status** | Disposed - Statistical Purposes |
| **Status Date:** | 05/27/2015 | | **File Date** | 02/11/2015 |
| **Case Judge:** | | | **DCM Track:** | |
| **Next Event:** | | | | |

**Property Address**
2000 President's Way #2216
Dedham MA 02026

| All Information | Party | Judgment | Event | Docket | Disposition |
|---|---|---|---|---|---|

## Party Information

**Greystar Management Services, L.P. - Plaintiff**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|
| Ashton, Esq., Donna M. (634984) | |

More Party Information

**Bisasor, Andre - Defendant**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|

More Party Information

**Anderson, Natalie - Defendant**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|

More Party Information

## Judgments

| Date | Type | Method | For | Against |
|---|---|---|---|---|
| 05/27/2015 | Judgment for Plaintiff for Possession and Rent | , after default | Greystar Management Services, L.P. | Anderson, Natalie |
| 05/27/2015 | Judgment for Plaintiff on Counterclaim | , after defendant(s) failed to appear | Greystar Management Services, L.P. | Anderson, Natalie |

## Events

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 02/19/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 04/09/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | All Parties Failed to Appear, Event Not Held |
| 04/16/2015 10:00 AM | Summary Process Session | | Status Review | Event Continued |
| | Civil Session | | | Held |

CourtView Justice Solutions
Case 1:15-cv-13443-LTS Document 145-8 Entered 09/23/15 18 Page 256 on Exhibit
Page 2 of 9
Document Page age 2020 of 291

| Date | Session | Location | Type | Result |
|------|---------|----------|------|--------|
| 05/04/2015 03:00 PM | | | Motion Hearing (CV) | |
| 05/07/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/13/2015 02:15 PM | Summary Process Session | | Ex Parte Hearing | Held |
| 05/14/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/21/2015 02:00 PM | Summary Process Session | | Status Review | Event Continued |
| 05/26/2015 09:00 AM | Summary Process Session | | Status Review | Held |
| 05/28/2015 09:00 AM | Dedham Civil Jury Session | | Jury Trial (CV) | Not Held But Event Resolved |
| 06/08/2015 09:00 AM | Summary Process Session | | Status Review | Held |
| 07/02/2015 10:00 AM | Summary Process Session | | Motion Hearing (CV) | Held |
| 08/07/2015 04:25 PM | Summary Process Session | | Motion Hearing (CV) | Held |

## Docket Information

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|-------------|-------------|--------|---------------|
| 02/11/2015 | Complaint filed | | 2 |
| 02/13/2015 | Summary Process Filing Fee due. Receipt: 39241 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Appearance filed<br>On this date Wed Feb 11 00:00:00 EST 2015 Ashton, Esq., Donna M. added for Greystar Management Services, L.P. | | 1 |
| 02/13/2015 | Civil Filing Fee Surcharge due. Receipt: 39241 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 02/19/2015 Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 02/19/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Reason: Both Parties Request<br>Appeared: | | |
| 02/19/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 04/09/2015 Time: 10:00 AM<br>Result: All Parties Failed to Appear, Event Not Held | | |
| 04/10/2015 | Joint Agreement to Continue filed | | |
| 04/13/2015 | Event Resulted<br>The following event: Status Review scheduled for 04/16/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Reason: Request of all parties<br>Appeared: | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| 04/13/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/07/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 05/04/2015 | Motion for continuance (Mass.R.Civ.P.40[b]) filed by Andre Bisasor, Natalie Anderson. | | 3 |
| 05/04/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015  Time: 03:00 PM<br>Result: Held | | |
| 05/04/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 05/04/2015 03:00 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>Appeared: | | |
| 05/04/2015 | Motion  to continue allowed Hon. Michael J Pomarole | | |
| 05/04/2015 | No further continuances. * | | |
| 05/07/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/14/2015  Time: 10:00 AM<br>05/04/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion for Continuance (Mass.R.Civ.P.40[b]) is ALLOWED. No further continuances.<br><br>(Honorable Michael J. Pomarole)<br>Result: Event Continued | | |
| 05/11/2015 | Answer filed by Andre Bisasor, Natalie Anderson. | | 4 |
| 05/11/2015 | Counterclaim filed by Andre Bisasor, Natalie Anderson against Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. (Uniform Summary Process Rule 5)). | | 5 |
| 05/11/2015 | Jury trial claim on all issues endorsed upon pleading by Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 8). | | 6 |
| 05/11/2015 | Interrogatories directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | | 7 |
| 05/11/2015 | Request for production of document(s) directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | | 8 |
| 05/11/2015 | Motion  to transfer or consolidate filed by Andre Bisasor, Natalie Anderson. | | 9 |
| 05/11/2015 | Motion  to dismiss filed by Andre Bisasor, Natalie Anderson. | | 10 |
| 05/13/2015 | Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | | |
| 05/13/2015 | Event Resulted<br>The following event: Ex Parte Hearing scheduled for 05/13/2015 02:15 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>NO ACTION TAKEN ON Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | | |
| 05/14/2015 | | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/14/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/14/2015 | Motion for leave of Court to file requests for discovery filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 11 |
| 05/14/2015 | Motion to amend account annex filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 12 |
| 05/14/2015 | Motion of Plaintiff to strike portions of defendants answer and counterclaim [MASS R CIV P 8 (e)] and dismiss [MASS R CIV P 12(b)(1) and 12(b)(6)] filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 13 |
| 05/14/2015 | Motion for Order requiring defnednats to escrow use and occpancy payments filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 14 |
| 05/14/2015 | Motion to enter and inspect filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 15 |
| 05/14/2015 | Motion for protective order filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 16 |
| 05/14/2015 | Termination notice filed (Uniform Summary Process Rule 2). | | 17 |
| 05/14/2015 | Motion for leave of Court to file requests for discovery allowed Hon. Thomas L Finigan | | |
| 05/20/2015 | Event Scheduled<br>Event: Ex Parte Hearing<br>Date: 05/13/2015 Time: 02:15 PM<br>Result: Held | | |
| 05/20/2015 | Notice concerning next court event, to wit - 05/21/2015 02:00 PM Status Review-- sent to parties.<br>05/14/2015- After motion hearing, Greystar Management Services, L.P.'s Motion for Leave of Court to File Requests for Discovery is ALLOWED.<br><br>(Honorable Thomas Finigan) | | |
| 05/20/2015 | Event Scheduled<br>Event: Jury Trial (CV)<br>Date: 05/28/2015 Time: 09:00 AM<br>Result: Not Held But Event Resolved | | |
| 05/21/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/21/2015 02:00 PM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/26/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/26/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | | |
| 05/26/2015 | Event Resulted<br>The following event: Jury Trial (CV) scheduled for 05/28/2015 09:00 AM has been resulted as follows:<br>Result: Not Held But Event Resolved<br>Appeared: | | |
| 05/26/2015 | Affidavit and Request for Continuance Due To Illness filed by Andre Bisasor, Natalie Anderson. | | |
| 05/26/2015 | Motion to amend summary process summons and complaint filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 18 |
| 05/26/2015 | Request for Continuance Due To Illness denied. | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| 05/26/2015 | Motion to amend summary process summons and complaint allowed Hon. Robert P Ziemian | | |
| 05/26/2015 | Default entered against Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 10 (a)). | | |
| 05/26/2015 | Military affidavit filed as to whether Andre Bisasor, Natalie Anderson is in military service (Servicemembers Civil Relief Act, P.L. 108-189 §201, 50 U.S.C. App. §421). | | 19 |
| 05/27/2015 | Notice concerning next court event, to wit - 06/08/2015 09:00 AM Status Review-- sent to parties. 05/26/2015- After hearing, Andre Bisasor and Natalie Anderson's Request for Continuance Due to Illness is DENIED, defendants failed to appear. Greystar Management Services, L.P.'s Motion to Amend Summary Process Summons and Complaint is ALLOWED. Jury trial scheduled for 05/28/2015 is CANCELLED.  (Honorable Robert P. Ziemian) | | |
| 05/27/2015 | Judgment Entered: Judgment for Plaintiff for Possession and Rent , after default Ziemian, Hon. Robert P Judgment For: Greystar Management Services, L.P. Judgment Against: Bisasor, Andre / Anderson, Natalie Terms of Judgment: Jdgmnt Date:  05/27/2015 Execution entered on 08/07/2015 | | |
| 05/27/2015 | Judgment Entered: Judgment for Plaintiff on Counterclaim , after defendant(s) failed to appear Ziemian, Hon. Robert P Judgment For: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. Judgment Against: Bisasor, Andre / Anderson, Natalie Terms of Judgment: Jdgmnt Date:  05/27/2015 | | |
| 06/08/2015 | Motion for attorney's fees filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 20 |
| 06/08/2015 | Motion for reconsideration of defendants' affidavit and request for continuance due to illness filed by Andre Bisasor, Natalie Anderson. | | 21 |
| 06/08/2015 | Emergency Motion to remove the default and vacate the default judgment; and or/motion for relief of judgment, pusuant to M.R.C.P. Rule 55,59, and/or 60 filed by Andre Bisasor, Natalie Anderson. | | |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. Rule 55,59 and /or 60 [Related to apartment conditions and violations] filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. rule 55,59 and/or 60 [Related to procedural case history and medical situation] filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Notice of Appeal filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Motion to waive appeal bond and other costs- Apartment 2216 filed by Andre Bisasor, Natalie Anderson. | | 22 |
| 06/08/2015 | Motion to set the appeal bond hearing filed by Andre Bisasor, Natalie Anderson. | | 23 |
| 06/08/2015 | Emergency Motion to stay issuance of execution pending the outcome of defendants motion to remove default and vacate judgment and/or motion for relief from judgment as well as pending outcome of defendants' appeal filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Emergency Motion to defer decision on appeal bond until after defendants motion to remove default and vacate judgment and/or motion for relief from judgment is heard filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Attachment 1: Summary of Non-Frivolous Defenses filed by Andre Bisasor and Natalie Anderson. Attachments Exhibit D- Dedham Board of health citation (Nov 2014) filed by Andre Bisasor and Natalie Anderson. | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Case Law and Authorities for motions to remove default judgment filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Motion package cover letter for unit 2216 filed by Andre Bisasor, Natalie Anderson. | | 24 |
| 06/08/2015 | Hospital documents filed by Andre Bisasor | | |
| 06/08/2015 | Motion to waive appeal bond and other costs- apartment 2216 denied. | | |
| 06/08/2015 | For the entry of a civil appeal in the appellate division of the district court department | $0.00 | |
| 06/08/2015 | Indigency affidavit and request for waiver, substitution or payment by the Commonwealth of fees/costs filed by Natalie Anderson, Andre Bisasor (G.L. c.261 §27B). | | 25 |
| 06/08/2015 | Indigency request for waiver, substitution or payment by the Commonwealth of fees/costs entered on 06/08/2015 allowed (G.L. c.261 §27B). | | |
| 06/08/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | | |
| 06/08/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section 4b | $0.00 | |
| 06/08/2015 | Event Resulted<br>The following event: Status Review scheduled for 06/08/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Appeared: | | |
| 06/10/2015 | Order; 06/08/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion to Waive Appeal Bond and Other Costs- Apartment 2216 is DENIED. Court finds that defendants have no reasonable chance of prevailing. 1) Defendants admit in open court they have NOT held "with held rent" in separate amounts. 2) failure to provide required discovery is an indication of their (failure) and have no reasonable chance of prevailing in this case. Appeal Bond is set at $32,000.00 for both cases 15-54-SU-026 and 15-54-SU-028. parties notified. | | |
| 06/10/2015 | CD copy made; requester notified (Dist Ct Special Rule 211(A)(5)). | | |
| 06/15/2015 | Certificate of service for plaintiffs motion for attorneys fees filed. | | |
| 06/15/2015 | Request for review of orders relating to the appeal bond- Apartments 2216 filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/15/2015 | Memoranda in support of request for review of orders relating to the appeal bond filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/19/2015 | Notice of Appeal - Reconsideration filed by Andre Bisasor and Natalie Anderson | | |
| 06/19/2015 | Notice of Appeal - Recusal filed by Andre Bisasor and Natalie Anderson | | |
| 06/24/2015 | ORDER CONCERNING THE FILING OF PAPERS<br>As of today's date, no other fillings are allowed in the above refrenced cases without express permission of the court. | | |
| 06/24/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson | | |
| 06/29/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 07/02/2015 Time: 10:00 AM<br>ALL PARTIES NOTIFIED BY A CALL FROM THE DEDHAM DISTRICT COURT<br>Result: Held | | |
| 06/29/2015 | SUMMARY PROCESS APPEAL BOND REVIEW sent to APPELLATE DIVISION | | |
| 07/02/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 07/02/2015 10:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | | |
| 07/02/2015 | | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Order; At the call of the list, Court declines to have hearing on pending motions as Defendants, Andre Bisasor and Natalie Anderson are not present and will rule on the papers. Plaintiff, Greystar Management Services, L.P. requests permission to file a Motion to Dismiss Defendants, Andre Bisasor and Natalie Anderson Appeal Notices filed on June 19, 2015 as Untimely. Request is Allowed. parties notified. | | |
| 07/02/2015 | Memorandum of Decision Concerning Entry of Default Judgment; parties notified | | |
| 07/06/2015 | Notice sent to parties.<br>A Notice to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson | | |
| 07/08/2015 | Notice of appeal to Appellate Division on record of proceedings filed by Andre Bisasor, Natalie Anderson (G.L. c.231 §108; Dist./Mun.Cts. R.A.D.A. 8C(b)).<br>HANDED TO COURTHOUSE EMPLOYEE OUTSIDE OF THE COURTHOUSE ON 07/08/2015 | | 26 |
| 07/23/2015 | Designation for Transcription filed by Andre Bisasor and Natalie Anderson | | |
| 07/23/2015 | Order of Designation for Transcription to Transcriber filed by Appellants | | |
| 07/29/2015 | 6 Transcript received from court reporter (Dist./Mun.Cts. R.A.D.A. 8C(d) or Mass. R.A.P. 8(b)(1)); parties notified.<br><br><br>May 4, 2015<br>May 13, 2015<br>May 14, 2015<br>May 21, 2015<br>May 26, 2015<br>June 8, 2015 | | 27 |
| 07/29/2015 | Appellate Division decision received; trial judge notified (Dist./Mun.Cts. R.A.D.A. 28).<br><br>Decision and Order<br>(1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during pendency of the appeal. | | 28 |
| 07/29/2015 | Return of service on notice to parties Natalie Anderson; First class mail returned UNDELIVERED:unabletoforw | | 29 |
| 08/04/2015 | Notice sent to parties.<br>A Notice to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson | | |
| 08/07/2015 | Execution Issued:<br>Execution on Possession of a Dwelling<br>Judgment Debtor: Bisasor, Andre / Anderson, Natalie<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date: 08/07/2015<br>Post Judgment Int. Rate: .12<br>Execution Total: .00 | | |
| 08/07/2015 | Emergency Motion to Stay the Levy of the Execution for Possession and Damages filed by Andre and Bisasor and Natalie Anderson. | | |
| 08/07/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 08/07/2015 04:25 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present. Plaintiff's counsel not present. Court did not contact the Plaintiff's Counsel in a timely matter prior to the Defendants Motion to Stay Execution as the | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Defendant arrived at 4:23 p.m for a hearing.<br>Appeared: ANDRE BISASOR ONLY<br><br>Applies To: Bisasor, Andre (Defendant) | | |
| 08/07/2015 | Notice of Appeal (made to the Appeals Court of the dismissal of Defendants Appeal in the District Court and the Denial of the Waiver of the Appeal Bond in the Appellate Division of the District Court filed by ANDRE BISASOR and NATALIE ANDERSON (4:22) | | |
| 08/10/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 08/07/2015  Time: 04:25 PM<br>Result: Held | | |
| 08/10/2015 | Opposition filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. to Motion to stay execution that was filed on 08/07/2015. WITH COURT'S PERSMISSION, PLAINITFF'S COUNSEL TO FAX OPPOSITION | 30 | |
| 08/10/2015 | Order; 08/10/2015(08/07/2015)- After motion hearing, Andre Bisasor and Natalie Anderson's Emergency Motion to Stay the Levy of the Execution for possession and damages (Mass.R.Civ.P. 62) is DENIED, defendant, Andre Bisasor appearing only and Greystar Management Services, L.P. and Natalie Anderson not appearing. parties notified. | | |
| 08/14/2015 | Appeals Court<br>No. 2015-J-0306<br><br>Notice of Docket Entry<br>ORDER: Levy on the Execution on the judgment for possession is hereby stayed pending further order of this Court or a single justice thereof. The Matter shall be heard on Friday, August 14, 2015 at 2P.M. in courtroom 4. (Katzman, J.)<br>*Notice/Attest/Ziemian, J. | | |
| 08/19/2015 | APPEALS COURT Single Justice<br>No. 2015-J-0306<br>Dated 08/17/2015<br>ORDER: The defendants filed a motion seeking to stay levy on the execution on the judgment for possession of two apartments in a building managed by the plaintiff. This Court briefly stayed levy on the execution and scheduled a hearing on the defendants' motion. After review of the parties' submissions and a hearing, the defendants' motion for a stay pending their appeal is DENIED. To obtain a stay pending resolution of their appeal, the defendants would have to demonstrate, inter alia, a likelihood of success on the merits of their appeal. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The defendants have failed to do so here. The defendants pending appeal is from the dismissal of their appeal occasioned by their failure to pay the required appeals bond. While such an appeal is properly brought before a panel of this Court, see Erickson v. Somers, 446 Mass. 1015 (2006), the defendants have not shown that their appeal, though procedurally correct, is likely to be successful. To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default. Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default. Accordingly, the motion is denied. The stay currently in place shall expire at the end of the day on August 27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.).<br>*Notice/Attest/Ziemian, J. Footnote 1. Natalie Anderson | | |
| 08/19/2015 | Return of service on NOTICE TO PARTIES 08/04/2015 Natalie Anderson; First class mail returned UNDELIVERED:unabletoforw | | 31 |
| 08/19/2015 | Return of service on NOTICE TO PARTIES 08/04/2015 Andre Bisasor; First class mail returned UNDELIVERED:unabletoforw | | 32 |
| 08/21/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson<br><br>Notice of the Assembly of the Record on Appeal for Summary Process Case Single Justice Appeal Re. Appeal Bond G.l.c. 239, Sec. 5. | | |
| 09/08/2015 | | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Appeals Court Clerk's Office<br>No. 2015-P-1194<br><br>Notice of Entry<br>In accordance with Massachusetts Rule of Appellate Procedure 10(a)(3), please note that the above-references case was entered in this Court on August 31, 2015.<br><br>Dated: September 2, 2015 | | |
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>In accordance with the Rules of Appellate Procedure, Nos.9(d) and (10(a) and (b), the enclosed copy of the Notice of Appeal and the Notice of Assembly of the Record on Appeal in the above-entitled case are hereby mailed to you. | | |
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>Notice of Entry Docket<br>You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case:<br><br>JUDGMENT:...."it is ORDERED that the emergency petition pursuant to G.L.c. 211§ 3, shall be, and hereby is, DENIED." (Duffly, J.)<br><br>Judgment is filed. | | |
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>Notice of Entry Docket<br>You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case:<br><br>MOTION To Stay Execution Pending Appeal To The Full Bench of The SJC filed by Andre Bisasor and Natalie Anderson. (8/27/2015: "Per the within, Motion is DENIED WITHOUT HEARING" (Duffly, J.)). | | |
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>NOTICE OF ASSEMBLY OF THE RECORD ON APPEAL<br><br>In accordance with the Rules of Appellate Procedure, Rule 9 (d), notice this day has been sent to the Clerk of the Supreme Judicial Court for the Commonwelath, along with two (2) certified copies of the docket entries. The record has been fully assembled in the office of the Clerk of the Supreme Judicial Court for Suffolk County.<br><br>COPY OF Notice of Appeal filed. | | |

## Case Disposition

| Disposition | Date |
|---|---|
| Pending | |

# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT CLERK'S OFFICE
John Adams Courthouse
One Pemberton Square, Suite 1200
Boston, Massachusetts 02108-1705
(617) 725-8106

August 17, 2015

Donna M. Ashton, Esquire
28 Church Street
Suite #10
Winchester, MA 01890

RE:   No. 2015-J-0306
      Lower Ct. No.: 1554SU000026 & 1554SU000028

      GREYSTAR MANAGEMENT SERVICE, LP
                    vs.
      ANDRE BISASOR & another [1]

                    NOTICE OF DOCKET ENTRY

      Please take note that on August 17, 2015, the following
entry was made on the docket of the above-referenced case:

ORDER: The defendants filed a motion seeking to stay levy on the
execution on the judgment for possession of two apartments in a
building managed by the plaintiff. This Court briefly stayed
levy on the execution and scheduled a hearing on the defendants'
motion. After review of the parties' submissions and a hearing,
the defendants' motion for a stay pending their appeal is DENIED.

To obtain a stay pending resolution of their appeal, the
defendants would have to demonstrate, inter alia, a likelihood
of success on the merits of their appeal. See Packaging
Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The
defendants have failed to do so here. The defendants pending
appeal is from the dismissal of their appeal occasioned by their
failure to pay the required appeals bond. While such an appeal
is properly brought before a panel of this Court, see Erickson
v. Somers, 446 Mass. 1015 (2006), the defendants have not shown
that their appeal, though procedurally correct, is likely to be
successful. To succeed the defendants would have to demonstrate,
at a minimum, that they have a nonfrivolous defense to the
default. Following review of the defendants' submission and the
District Court docket, the court cannot discern any indication
that the District Court judge abused his discretion when he
entered the default. Accordingly, the motion is denied. The stay
currently in place shall expire at the end of the day on August

27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.). *Notice/Attest/Ziemian, J.

Footnote

1. Natalie Anderson

Very truly yours,

The Clerk's Office

Dated: August 17, 2015

To: Donna M. Ashton, Esquire
Andre Bisasor
Natalie Anderson
Dedham District Court

.

# EXHIBIT D

404 B.R. 83
In re Beverly C. GRIGGSBY, Debtor.
No. 09-10796 (MG).
United States Bankruptcy Court, S.D. New York.
April 17, 2009.
Page 84
COPYRIGHT MATERIAL OMITTED
Page 85
Earl A. Rawlins, Esq., New York, NY, for Debtor.
Anthony J. Cornicello, Esq., Cornicello & Tendler, LLP, New York, NY, for 940 St. Nicholas, LLC.

MEMORANDUM OPINION SUSTAINING OBJECTION TO NOTICE OF COMPLIANCE AND GRANTING LIFT-STAY MOTION

MARTIN GLENN, Bankruptcy Judge.

940 St. Nicholas, LLC ("940 St. Nicholas" or "Landlord"), filed a Motion to Vacate the Automatic Stay in this case under chapter 13 ("Lift-Stay Motion") (ECF Doc. No. 13), to permit it to execute a warrant of eviction pursuant to a judgment of possession against the debtor, Beverly C. Griggsby ("Griggsby" or "Debtor"), in Civil Court on January 5, 2007, before this chapter 13 case was filed. The judgment of possession and warrant of eviction were based on so-called "Collyer Conditions" in Griggsby's residential apartment. The Landlord also filed an Objection to the Debtor's certification pursuant to 11 U.S.C. § 362(*l*)(1) ("Objection")(ECF Doc. No. 11). The Court heard argument on the Objection and the Lift Stay Motion on April 2, 2009. At the conclusion of the hearing, the Court ruled from the bench, sustaining the Objection and granting the Lift-Stay Motion. A written order was entered that same day lifting the automatic stay. (ECF Doc. No. 16.) In its bench ruling, the Court stated that because of the novel issues involved in this matter, a written Opinion would follow explaining the Court's reasoning. For the reasons explained below, the Court concludes that where a default giving rise to a prepetition judgment of possession could not be cured by the payment of money alone, the automatic stay under Bankruptcy Code § 362 does not operate as a stay of any eviction proceeding and the stay cannot be reinstated by the debtor under Bankruptcy Code § 362(*l*).

On April 10, 2009, Debtor filed an application by order to show cause seeking to reinstate the automatic stay. The supporting affidavits rehash the issues presented to the Court at the April 2, 2009 hearing. The application is really a request for reconsideration of the April 2, 2009 bench ruling and Order lifting the automatic stay entered on that day. However viewed, the application to reinstate the stay fails to advance grounds supporting any different result.

BACKGROUND

On February 21, 2009, Debtor filed a voluntary petition commencing a chapter

Page 86

13 bankruptcy case.[1] Prior to filing her bankruptcy case, Griggsby resided as a tenant in Apartment 51 in 940 St. Nicholas Avenue, New York, N.Y. (the "Apartment") pursuant to a rent-stabilized lease with the Landlord's predecessor. On or about June 22, 2006, 940 St. Nicholas served a notice of termination on Griggsby, alleging that she was responsible for excessive accumulated debris posing a health and fire risk ("Collyer Conditions").[2] The Landlord subsequently commenced a Collyer-type nuisance holdover proceeding in the Civil Court of the City of New York, County of New York ("Civil Court"), Index No. L & T 81890/06.

On January 5, 2007, after a hearing, the Civil Court entered an order (the "2007 Order") awarding a final judgment of possession to the



Landlord. The judgment rested upon the presence of the Collyer Conditions and arrears owed by Griggsby in the amount of $4,640.24 for use and occupancy through January 5, 2007. The Order indicated that the Civil Court would issue a warrant of eviction forthwith but stayed the warrant's execution to permit Griggsby to cure the defaults by a January 16, 2007 deadline. Griggsby's appeal of the final judgment was dismissed for failure to perfect. On October 17, 2008, after a multi-day hearing, the Civil Court entered an Order (the "2008 Order"), finding that Griggsby had failed to cure the Collyer Conditions and authorizing 940 St. Nicholas to execute the warrant of eviction. The court's written opinion did not indicate whether Griggsby had cured the outstanding money arrears, but it is clear from the opinion that the Collyer Conditions were the basis for the court permitting Griggsby's eviction to go forward.[3] Griggsby failed to timely appeal the 2008 Order. The court issued the warrant of eviction on December 10, 2008. An eviction

Page 87

scheduled for February 23, 2009 was stayed as a result of Debtor's bankruptcy case.

As explained below, pursuant to Bankruptcy Code § 362(b)(22), the automatic stay would not apply as a bar to the Landlord's efforts to evict the Debtor because the state court judgment of possession was obtained before the Debtor filed her chapter 13 petition, *unless* the Debtor was able successfully to invoke § 362(*l*) by depositing 30 days' post-petition rent with the Clerk of the Court and by filing a certification required by § 362(*l*)(1). The Debtor timely deposited the funds and also filed a certification. On February 23, 2009, the Clerk entered a notice of Debtor's compliance and intent to cure the prepetition judgment of possession ("Compliance Notice") (ECF Doc. No. 7). On March 6, 2009, 940 St. Nicholas filed an Objection to Debtor's certification and refused to accept a tender of the deposit.

The Landlord argues that § 362(*l*) does not apply in this case because the outstanding

judgment of possession rests upon Debtor's non-monetary default—failing to cure the Collyer Conditions. The Landlord maintains that § 362(*l*) applies by its terms only to a curable monetary default that is present at the commencement of a debtor's bankruptcy case. Because the judgment of possession and warrant of eviction were based on non-monetary obligations, the argument goes, § 362(*l*) is not available to the Debtor. The Landlord further urges that even if § 362(*l*) did apply in this case, the Debtor's right to cure the Collyer Conditions expired upon entry of the 2008 Order.

The motion to lift the stay claims that the Landlord lacks adequate protection under § 362(d)(1) because the Collyer Conditions remain in the Apartment. The Landlord also contends that the Debtor's estate lacks a property interest in the Apartment within the meaning of Bankruptcy Code § 541 because, pursuant to § 749 of the New York Real Property Actions and Proceedings Law ("RPAPL"), the issuance of the warrant of eviction cut-off the Debtor's interest in the Apartment.

## DISCUSSION

### A. BAPCPA Limits Application of the Automatic Stay in Eviction Proceedings

Section 362(b)(22), added to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that the automatic stay pursuant to § 362(a)(3) does not apply to the "continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor." 11 U.S.C. § 362(b)(22). Section 362(*l*) provides a limited exception to the strictures of § 362(b)(22). The automatic stay does apply for a 30-day period after the filing of the bankruptcy petition *if* the debtor files with the petition a certification under penalty of perjury that "under nonbankruptcy law

fastcase

- 2 -

Case 1:15-cv-03814-LTS Document 46-8 Filed 02/23/15 Page 70 of 291

In re Griggsby, 404 B.R. 95 (Bankr. S.D.N.Y. 2009)

applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment of possession after that judgment of possession was entered." 11 U.S.C. § 362(*l*)(1)(A). A debtor must also deposit with the clerk of the court with the bankruptcy petition any rent that would become due during the 30-day period after the filing of the bankruptcy petition. 11 U.S.C. § 362(*l*)(1)(B). In order to extend the stay beyond the initial 30-day period,

Page 88

within that period the debtor must cure, "under nonbankruptcy law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought. ..." 11 U.S.C. § 362(*l*)(2).

In this case, the Debtor filed a certification and tendered rent for the 30-day period with her bankruptcy petition. The Landlord objected to the certification arguing that the § 362(*l*) procedure cannot be used to reinstate the automatic stay where the judgment of possession and warrant of eviction were issued because of a non-monetary default.

## B. Landlord's Objection to Debtor's Certification

Section 362(*l*)(3) provides that "[i]f the lessor files an objection to any certification filed by the debtor ..., the court shall hold a hearing ... to determine if the certification filed by the debtor ... is true." 11 U.S.C. § 362(*l*)(3)(A). If the court sustains the objection, "subsection (b)(22) shall apply immediately and relief from the stay shall not be required to enable the lessor to complete the process to recover full possession of the property." 11 U.S.C. § 362(*l*)(3)(B)(i).

In this case, the Landlord not only filed its Objection but also filed the Lift-Stay Motion. Both the Objection and the Lift-Stay Motion were heard together on April 2, 2009. The Court entered an Order that day granting the Lift-Stay Motion. In light of that Order granting stay relief to the Landlord, it is unnecessary separately to

address whether the certification filed by the Debtor "is true." The outcome here depends upon an issue of law— whether complying with § 362(*l*) reinstates the automatic stay where the judgment of possession cannot be cured by payment of any monetary default—not upon a determination of "truth" of facts or conclusions set forth in a debtor's certification. The Landlord gets the same result—the ability to continue with eviction—whether the Objection is sustained or the Lift Stay Motion is granted.

## C. The Automatic Stay Could Not Be Reinstated Because of a Non-Monetary Default

The Court concludes that § 362(*l*) does not apply where, as here, the prepetition judgment of possession and warrant of eviction are based upon a non-monetary default that cannot be cured by payment of money. Section 362(b)(22) makes the automatic stay inapplicable to eviction proceedings whatever the basis for the judgment of possession if the judgment was obtained before the bankruptcy petition was filed. Section 362(*l*) provides a mechanism to reinstate the stay if "there are circumstances under applicable nonbankruptcy law under which the debtor would be permitted *to cure the entire monetary default that gave rise to the judgment of possession.* ..." 11 U.S.C. § 362(*l*)(1)(A) (emphasis added). *See In re Alberts,* 381 B.R. 171, 177 (Bankr.W.D.Pa.2008) ("Section 362(*l*) of the Code operates as a safe harbor precluding the termination of the stay in instances where ... the judgment for possession was obtained as a result of monetary defaults of the debtor. ..."); *In re Williams,* 371 B.R. 102, 105-09 (Bankr. E.D.Pa.2007) (analyzing the statute and legislative history).

At issue in this case is whether the § 362(*l*) safe harbor is triggered if a prepetition judgment of possession rests in whole or in part upon a non-monetary default. Caselaw is silent on this question.[4] Section 362(*l*)'s statutory language

Page 89

limits its applicability to cases in which state law would permit the debtor "to cure the entire monetary default that gave rise to the judgment for possession. ..." 11 U.S.C. § 362(*l*)(1)(A).

The legislative history does not specifically address the effect of the change made by BAPCPA in the event a judgment of possession was based solely on a non-monetary default, or where it was based on both monetary and non-monetary defaults. If the judgment of possession was based solely on a non-monetary default, there is no basis to argue from the language of the statute that the automatic stay can be reinstated under § 362(*l*). But what if the judgment of possession was based on mixed grounds, monetary and non-monetary? If nonbankruptcy law—in this case, New York law—would permit a debtor to cure monetary and non-monetary defaults, is the stay reinstated if the debtor takes the actions required to cure the monetary default only, or, for that matter, to cure all monetary and non-monetary defaults? The language of the Code does not provide clear answers to these questions. The legislative history also does not shed much light on the questions. As discussed in the next section of this Opinion, under New York law, there are circumstances under which a debtor would be permitted to cure both monetary and non-monetary defaults. But those are matters properly left for a state court to decide.

Section 311 of Public Law 109-8 added §§ 362(b)(22), 362(b)(23), 362(*l*) and 362(m) to the Bankruptcy Code. Sections 362(b)(22) and 362(*l*), as previously described, deal with the effect on the automatic stay of a judgment of possession obtained before a bankruptcy petition is filed. Sections 362(b)(23) and 362(m) deal with the effect on the stay of circumstances creating grounds for an eviction action to be filed or adjudicated that seeks possession of residential property "based on endangerment of such property or the illegal use of controlled substances on such property. ..." 11 U.S.C. § 362(b)(23); *see* 5 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 431.1 (3d ed.2006). The legislative history discusses these provisions together. House Report No. 109-31 describes these changes in BAPCPA as follows:

Sec. 311. Automatic Stay. Section 311 of the Act amends section 362(b) of the Bankruptcy Code to except from the automatic stay a judgment of eviction with respect to a residential leasehold under certain circumstances. It is the intent of this provision to create an exception to the automatic stay of section 362(a)(3) to permit the recovery of possession by rental housing providers of their property in certain circumstances where a judgment for possession has been obtained against a debtor/resident before the filing of the petition for bankruptcy. ... It is also the intent of this section to permit eviction actions based on illegal use of controlled substances or endangering property in certain circumstances.

Section 311 gives tenants a reasonable amount of time after filing the petition to cure the default giving rise to the judgment for possession as long as there are circumstances in which applicable nonbankruptcy law allows a default to be cured after a judgment has been obtained.

Page 90

Where nonbankruptcy law applicable in the jurisdiction does not permit a tenant to cure a monetary default after the judgment for possession has been obtained, the automatic stay of section 362(a)(3) does not operate to limit action by a rental housing provider to proceed with, or a marshal, sheriff, or similar local officer to execute, the judgment for possession. Where the debtor claims that applicable law permits a tenant to cure after the judgment for possession has been obtained, the automatic stay operates only where the debtor files a certification with the bankruptcy petition asserting that applicable law permits such action and that the debtor or an adult dependent of the debtor has paid to the court all rent that will come due during the 30 days following the filing of the petition. If, within thirty days following the filing of the petition, the debtor or an adult dependent of the debtor certifies that the entire monetary default that gave rise to the judgment for possession has been cured, the automatic stay remains in effect. If a lessor has filed or wishes to file an eviction action based on the use of illegal controlled substances

Case 1:15-cv-03685-LTS Document 18-5 Filed 09/23/15 Page 6 of 291

In re Grigsby, 404 B.R. 83 (Bankr. S.D.N.Y., 2009)

or property endangerment, the section allows the lessor in certain cases to file a certification of such circumstance with the court and obtain an exception to the stay.

. ... This section does not provide any new right to either landlords or tenants relating to evictions or defenses to eviction under otherwise applicable law.

H.R.REP. NO. 109-31, pt. 1, at 74-75(2005) (hereinafter, "House Report No. 109-31"), U.S.Code Cong. & Admin.News 2005, pp. 88, 142-43; *see also In re Williams,* 371 B.R. at 109.

Congress provided in § 362(b)(22) that a prepetition judgment of possession obtained by a lessor for any reason keeps the stay from automatically being triggered by the filing of a bankruptcy petition. With respect to § 362(*l*), Congress's focus is clearly upon allowing the stay to be reinstated if state law permits a cure of a monetary default; no mention is made of a non-monetary default. Sections 362(b)(23) and 362(m) provide a means for a lessor to terminate the automatic stay based upon alleged drug use or "property endangerment." Sections 362(b)(23) and 362(m) presuppose that a lessor did not obtain a prepetition judgment of possession. "Property endangerment," as used in the statute, is undefined, but the term would seem to fit with seeking eviction based on Collyer Conditions. While Congress established a procedure to terminate the stay based on alleged property endangerment, it is illogical to suppose that Congress would enable a debtor to stay the effect of a judgment of possession by curing a monetary default and leaving unresolved any material non-monetary default that may also form a basis for the prepetition judgment of possession. If alleged property endangerment is the basis for seeking to lift the stay and the tenant contests the existence of the "situation giving rise to the lessor's certification," 11 U.S.C. § 362(m)(2), the court is required to hold a hearing with the debtor having the burden of proof that the "situation giving rise to the lessor's certification ... did not exist or was remedied." 11 U.S.C. § 362(m)(2)(D).[5] But where a

Page 91

prepetition judgment of possession is based on circumstances that meet the test of "property endangerment," the bankruptcy court is precluded from relitigating these issues. *In re Éclair Bakery Ltd.,* 255 B.R. 121, 133 n. 23 (Bankr.S.D.N.Y. 2000) ("A state court judgment issued prior to the filing of a debtor's bankruptcy case is *res judicata* in the bankruptcy case, and the debtor may not relitigate issues already decided by the state court.") (citations omitted). Accordingly, the Court concludes that § 362(m) does not apply if the lessor obtained a prepetition judgment based upon "property endangerment"; and § 362(*l*) does not apply if the prepetition judgment of possession is based in whole or in part on a material default that cannot be cured by the payment of money.

In this case, the judgment of possession issued by the Civil Court on January 5, 2007 rested upon the Collyer Conditions and past-due use and occupancy payments alike. However, the 2008 Order authorizing the landlord to execute the warrant did not indicate the presence of an outstanding monetary default. The Landlord argues, and the Debtor fails to dispute, that the 2008 Order was based solely upon the Debtor's failure to cure the Collyer Conditions. Accordingly, Section 362(*l*) does not apply in this case.[6]

### D. New York Law Permits the State Court to Vacate a Warrant of Eviction and Reinstate the Landlord-Tenant Relationship

In New York, RPAPL § 749(3) governs the effect of a warrant issued pursuant to a judgment of possession. Section 749(3) provides as follows:

3. The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, *but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.* Petitioner may recover by action any sum of money which

Case 1:15-cv-03889-DLC Document 14-7 Filed 09/23/15 Page 219 of 291

In re Griggsby, 404 B.R. 83 (Bankr. S.D.N.Y. 2009)

was payable at the time when the special proceeding was commenced and the

Page 92

reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent.

N.Y. REAL PROP. ACT. & PROC. L. § 749(3)(McKinney 2008) (emphasis added).

The issuance of a warrant of eviction severs the landlord-tenant relationship. But bankruptcy courts have long recognized a debtor's possessory interest in property—assuming the warrant has not been executed and the debtor remains in possession—as an equitable interest under Bankruptcy Code § 541 eligible for protection under the automatic stay. *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse),* 835 F.2d 427, 430 (2d Cir.1987) ("Indeed, a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."). The automatic stay can protect this interest and prevent the execution of a warrant even after a warrant has been issued when state law may allow a debtor to cure the default before execution of the warrant. 11 U.S.C. § 362(*l*)(2). But the debtor must return to the state court for relief if the debtor wants the landlord-tenant relationship reinstated; the bankruptcy court cannot reinstate the landlord-tenant relationship. *See In re Marcano,* 288 B.R. 324, 338 (Bankr. S.D.N.Y.2003) ("Notwithstanding the issuance of a warrant, the tenant still retains 'an equitable interest in the property, and the potential to reinstate the landlord-tenant relationship.' The ... state court retains the ability to vacate the warrant and order a tenant reinstated at least until actual execution of the warrant. In appropriate cases, bankruptcy courts have continued the automatic stay of 362 in order to give the tenant an opportunity to seek an order from the state court vacating a warrant of eviction.") (citations omitted); *In re Éclair Bakery Ltd.,* 255 B.R. at 133 n. 23 ("The filing of a bankruptcy petition does not resurrect a lease,

and a bankruptcy court does not have the power to resurrect a lease which was terminated prior to the filing of a lessee's bankruptcy petition."); *332-4 West 47th Street Assoc., L.P. v. Muniz (In re Muniz),* 1999 WL 182588, at *2 (S.D.N.Y.1999). This equitable interest in the property is eligible for protection under the automatic stay as long as vacatur of the judgment of possession is possible. *Id.; see also In re W.A.S. Food Service Corp.,* 49 B.R. 969, 973 (Bankr. S.D.N.Y.1985) ("Because the debtor is currently in possession of the premises, the automatic stay prohibits an eviction. This court is empowered to continue that stay, if the circumstances so require, to give the debtor a reasonable opportunity to re-negotiate with the landlord or to seek a vacatur of the warrant of eviction.") (citation omitted). A debtor may retain an equitable interest consisting of a right to reinstate the landlord-tenant relationship. *See Éclair Bakery,* 255 B.R. at 133-34 (explaining that such an interest is comparable to a redemption right); *In re Reinhardt,* 209 B.R. 183, 186-87 (Bankr. S.D.N.Y.1997) (finding that option to redeem the tenancy by payment in full constituted an interest of the estate protectable under § 362(a)). Such an interest may arise if, for example, a court issues a warrant of eviction but stays its execution to permit the tenant to cure before eviction. *See Éclair Bakery,* 255 B.R. at 133-34. RPAPL Section 749(3), which permits a court to vacate a warrant for good cause shown, recognizes this right.[7]

Page 93

Nothing in the 2005 amendments in BAPCPA alters recognition of this equitable interest as long as the debtor remains in possession and state law permits the state court to reinstate the landlord-tenant relationship. As stated in House Report No. 109-31, the addition made by BAPCPA "does not provide any new right to either landlords or tenants relating to evictions or defenses to eviction under otherwise applicable law." H.R.REP. No. 109-31, at 75, U.S.Code Cong. & Admin.News 2005, p. 143. Sections §§ 362(b)(22) and 362(*l*), however, provide additional protection to the landlord's interests before a debtor can reinstate the automatic stay if the landlord obtained a prepetition judgment of

fastcase

possession. As explained above, a debtor can only reinstate the stay if the prepetition judgment of possession can be cured by the payment of money and the debtor strictly complies with § 362(*l*). That is not the case here. Therefore, the automatic stay cannot be reinstated in this case.[8]

### E. Even if the Automatic Stay Could Be Reinstated, The Landlord Has Established Cause to Lift the Automatic Stay

The Landlord argues that even if the automatic stay can be reinstated under Bankruptcy Code § 362(*l*), it should nevertheless be lifted for lack of adequate protection under § 362(d)(1). The prepetition issuance of a warrant may provide "cause" to terminate the automatic stay pursuant to § 362(d)(1). Section 362(d)(1) provides that a court may grant relief from the automatic stay for cause, including the lack of adequate protection of an interest in the property of the moving party. 11 U.S.C. § 362(d)(1).

*In re Éclair Bakery Ltd.*, 255 B.R. 121, is instructive. In *Éclair Bakery*, the landlord of the debtor, Éclair Bakery Ltd., had obtained three warrants of eviction against the bakery for rent nonpayment. In the course of three bankruptcy cases, the parties executed three stipulations to cure rent defaults. In each case, the bakery failed to cure and commenced a fresh chapter 11 case to prevent the landlord from executing the outstanding warrant. Interpreting RPAPL § 749(3), Judge Gerber found that the issuance of the warrants constituted cause to lift the stay. The key issue, Judge Gerber stated, was whether a good-faith basis to vacate a warrant was present. "Thus, where state court litigation under the escape valve provided under the second clause of RPAPL § 749(3) is pending, or the basis for good faith litigation is apparent ..., a continuation of stay protection, at least for a limited time, may be appropriate. By contrast, where state court litigation is not pending or in the cards, or where the debtor has failed to show any basis for a belief that

Page 94

the state court will grant relief, the prepetition termination of the landlord-tenant relationship will at least normally provide cause for relief from the stay." *Id.* at 136.

In this case, cause would exist to terminate the stay if it were reinstated under § 362(*l*)(1). Like the debtor bakery in *Éclair Bakery*, Debtor has failed to show grounds upon which the Civil Court would vacate the warrant of eviction. Debtor's appeal of the 2007 Order has been dismissed. (*See* Lift-Stay Motion, Exhibit F, ECF Doc. No. 13). Despite the passage of more than nine months from the original 2007 Order to the 2008 hearing regarding the continuation of the Collyer Conditions, the state court held that Griggsby failed to comply with the 2007 Order, resulting in the entry of the 2008 Order. Griggsby failed to timely appeal the Civil Court's 2008 Order permitting the landlord to execute the warrant based on Debtor's failure to cure the Collyer Conditions.[9] And rather than requesting the Civil Court to vacate the warrant before the scheduled February 23, 2009 eviction, Griggsby filed this chapter 13 case, with a bare-bones petition and no required schedules or supporting information. The Court is left with the firm conviction that this chapter 13 case was not filed in good faith, but rather for the purpose of thwarting the Landlord's efforts to evict her. The Debtor cannot collaterally attack the state court judgment in this court. *Éclair Bakery*, 255 B.R. at 133 n. 23. If Griggsby wants relief from the impending eviction, she will have to seek it from the state court. Therefore, cause would exist to lift the automatic stay under § 362(d)(1) if the Court had not otherwise concluded that the stay cannot be reinstated on the record here under § 362(*l*).

## CONCLUSION

For reasons explained above, § 362(*l*) does not apply in this case. In any event, cause exists to lift the automatic stay even if it were reinstated. Accordingly, at the hearing on April 2, 2009, the Landlord's Objection to Debtor's certification pursuant to § 362(*l*) was SUSTAINED and Landlord's motion to lift the stay was GRANTED to permit the landlord to execute the warrant of eviction. The application to reinstate the

fastcase

- 7 -

automatic stay, filed on April 10, 2009, is
DENIED.

---------------

Notes:

1. The Debtor filed a bare-bones bankruptcy petition
in this case. The Clerk's Office entered a Deficiency
Notice on February 23, 2009, setting a deadline for
filing missing schedules and information by March 9,
2009. (ECF Doc. No. 4.) None of the missing
schedules and information has been filed. The Chapter
13 Trustee has filed a motion to dismiss the chapter 13
case for failure to timely file schedules, a statement of
financial affairs, payment advices, and a plan. (ECF
Doc. No. 14.) The motion to dismiss is scheduled for
presentment on April 23, 2009.

2. Under New York law, the term "Collyer condition,"
alternately spelled "Collier condition," or "Collier-like
condition," refers to an excessive accumulation of
debris and clutter in a residential apartment that poses
a safety, health, or fire hazard. *See Zipper v. Haroldon
Court Condominium*, 39 A.D.3d 325, 835 N.Y.S.2d
43, 45 (1st Dep't 2007) (defining a Collyer condition
as a "dangerous clutter[ing] with furnishings, boxes,
and debris"); *Gazivoda v. Sherman*, 29 A.D.3d 458,
816 N.Y.S.2d 417, 418 (1st Dep't 2006) (agreeing that
a Collyer condition and nuisance existed in an
apartment "cluttered with papers, refuse and/or
rubbish"); *5th & 106th St. Associates LP v. Rodriguez*,
2008 WL 4952451 at * 6 (N.Y.City Civ.Ct. Nov.20,
2008) (finding that accumulated clutter constituted a
Collyer condition); *107-109 East 88th Street LLC v.
Nowillo*, 2005 WL 1668400 at *3 (N.Y.City Civ.Ct.
June 24, 2005) (finding that papers and wires left on a
stove created a fire-hazard Collyer condition). The
presence of a Collyer condition may constitute a
violation of the New York City Housing Maintenance
Code and may give rise to civil and criminal liability
if left uncured. *See* NEW YORK CITY, N.Y., CODE
§ 27-2011 (2008) (owner's duty to clean interior
shared space); § 27-2012 (owner's duty to clean
interior of dwelling units); § 27-2115 (civil penalties);
§ 27-2118 (criminal penalties).

3. The court's thorough opinion details "the extreme
and hazardous nuisance conditions pervading
respondent's apartment." (*See* 2008 Order, Exh. G,
Lift-Stay Motion, ECF Doc. No. 13.) Rejecting
Griggsby's contention that she complied with the
earlier order to clean up the apartment, the court "holds

to a moral certainty that petitioner [Landlord] proved
respondent's [Griggsby's] noncompliance." (*See id.*)

4. At least one commentator (and judge) has argued
that the statutory safe harbor should not be available to
permit cure of a prepetition non-monetary default. *See*
Alan M. Ahart, *The Inefficacy of the New Eviction
Exceptions to the Automatic Stay*, 30 AM. BANK. L.J.
125, 132 (Winter 2006) ("If the *only* default that led to
the prepetition judgment for possession was a
monetary default and the debtor timely cures this
default under applicable nonbankruptcy law, the
lessor cannot proceed with the eviction regardless
whether the debtor is protected by the bankruptcy
automatic stay.") (emphasis in original).

5. As one commentator has recognized, § 362(m) may
give rise to a contested matter regarding the extent of
the property endangerment. *See* 5 KEITH M.
LUNDIN, CHAPTER 13 BANKRUPTCY § 431.1, at
431-10 ("New § 362(b)(23) and (m) are likely to
produce some fascinating hearings in bankruptcy
courts. It is not uncommon for landlords to believe that
Chapter 13 debtors are not taking proper care of their
apartments or rental homes. ... [T]he debtor's denial
and evidence of 'remedial' action will not be dull.
Bankruptcy court findings that property is endangered
or that illegal drug activity is present could be
preclusive in subsequent state court litigation between
the landlord and debtor.").

6. It is clear from the record that the state court's order
authorizing execution of the warrant of eviction is
based on Griggsby's failure over a long period of time
to cure the very serious Collyer Conditions. While the
Court need not resolve the issue here, in a case in
which a judgment of possession appears to be based
on both monetary and non-monetary defaults but the
materiality of each default is not clear from the record,
or if the state court judgment was obtained by default,
the bankruptcy court may be empowered to enjoin
continuation of eviction proceedings under
Bankruptcy Code § 105 to permit the debtor
expeditiously to seek clarification from the state court
of the basis for the judgment, as this may clarify the
debtor's right to extend the stay under § 362(*l*), while
preserving property of the estate until the state court
rules. On the record here, no such clarification is
needed. Because of the tight deadlines under § 362(*l*),
the debtor must timely file the required certifications
and make all of the required cure payments to retain
the possibility of obtaining additional stay relief. As
explained in Section D *infra*, the bankruptcy court
cannot in any event reinstate the landlord-tenant

fastcase

relationship in New York once a warrant of eviction has issued—only the state court may do so. Thus, in cases in which the warrant of eviction has issued, stay relief from the bankruptcy court can only provide the debtor with a brief window to go back to state court, usually to request that the warrant of eviction be vacated. This Court's experience has shown that the Civil Court in New York City is willing to consider providing such relief on conditions for good cause shown.

7. As explained above, because the warrant of eviction has not been executed in this case, the Landlord's argument that the Debtor holds no property interest in the Apartment has no merit. At least as of the date of the hearing, the Debtor remained in possession of the Apartment, retaining an equitable interest and potentially being entitled to relief in state court under RPAPL § 749(3), even though she cannot reinstate the automatic stay under Bankruptcy Code § 362(l).

8. Often times, issues about curing monetary and non-monetary defaults, even if a prepetition judgment of possession has been obtained, are resolved by consent through conditional orders. But if a debtor is unable to

reach agreement with a landlord involving a non-monetary default, the debtor's remedy must be sought in the state court that entered the prepetition judgment of possession. If a warrant of eviction has not been executed, relief may be available from the state court for good cause shown under RPAPL § 749(3).

9. The New York City Civil Court Act governs appeals to the Appellate Terms of the Supreme Court. *See* N.Y.C.P.L.R. § 5702 (McKinney 2009). Section 1703 of the Act incorporates Article 55 of the New York Civil Practice Laws and Rules ("CPLR"). *See* N.Y. City Civ. Courts Act § 1703 (McKinney 2009). In turn, Section 5513 of the CPLR provides that an appeal as of right must be taken within thirty days after the appealing party receives service of a copy of the judgment or order and written notice of its entry. N.Y.C.P.L.R. § 5513. In this case, a Notice of Entry of the 2008 Order was apparently mailed to the Debtor on October 29, 2008, a little more than five months to date. (*See* Exh. G, Lift-Stay Motion, ECF Doc. No. 13.)

---------------

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE:
      Andre Bisasor

          Debtor,

Chapter 13
Case No.: 15-13369

## DEBTOR'S AFFIDAVIT AND CLARIFICATION STATEMENT IN SUPPORT OF DEBTOR'S REPLY MEMORANDUM TO GREYSTAR'S SUPPLEMENTAL MEMORANDUM FOR GREYSTAR'S OBJECTION TO CERTIFICATION AND GREYSTAR'S MOTION FOR RELIEF FROM STAY

I, Andre Bisasor, the debtor, hereby certify that the below is true and accurate to the best of my

knowledge. While I have tried to avoid legal argument, a proper explanation of my position

requires that I explain my understanding of the legal concepts since prior to this bankruptcy case,

I was representing myself. My bankruptcy attorney is not responsible for anything I say here.

## CORRECTED PROCEDURAL HISTORY

This procedural history corrects the errors, inaccuracies and misstatements made in Greystar's

procedural history.

### A. GREYSTAR'S PRIOR DISMISSED CASE

1) In January 2015, Greystar served a summons and complaint on me with a date of January

    12, 2015. Under the uniform rules of summary process, the entry date was automatically

    set for January 19, 2015, the answer date was automatically set for January 26, 2015 and

    the automatic trial date was set for January 29, 2015.

2) Greystar voluntarily dismissed that case on January 28, 2015.

3) This dismissal was due to the fact that there was a false return of service submitted to the district court and because me had evidence of the perjury on a home video camera system. [NB: This is operates as a res judicata defense because of the attempted fraud on the court and as a result, the case should be dismissed. This is only one example of why the debtor need a trial in district court and/or a full opportunity to present our defenses to the full bench of the Appeals Court in order to justice to be served here in this matter].

## B. GREYSTAR'S REFILED CASE

4) Greystar served another summons and complaint on me with a return date of February 2, 2015.

5) Under the Uniform Rules of Summary Process, the entry date was automatically set for February 9, 2015 and the trial date was automatically set for February 19, 2015 and the answer date was automatically set for February 17, 2015.

6) However Greystar filed the case in the district court on February 11, 2015 which was two days after it was due in district court [NB: This is also a defense as to why this case is procedurally defective and should have been dismissed and the Greystar should have been required to start over the process in proper manner].

## C. GREYSTAR'S PROPOSAL TO MEDIATE AND POSTPONE THE REFILED CASE

7) On February 16, 2015, Greystar's counsel approached me with a proposal to do mediation, given the number and type of counterclaims and defenses that we have. Greystar's counsel also proposed that we do a continuance in order to put everything on hold in order to see if the matter could be resolved outside of court.

2

224

8) Greystar's counsel represented to us and made promises to us that we would not be harmed or prejudiced in any way by agreeing to the mediation and to the continuance. This included the explicit promise and agreement that we would preserve all our rights to discovery and a jury trial as well as all rights pursuant to the uniform rules of summary process

9) Greystar's counsel drafted an agreement titled "JOINT AGREEMENT TO CONTINUE" and that stated as follows: "Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from February 19, 2015 to April 9, 2015 at 10:00 am. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than April 6, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial."

10) This agreement was signed and dated on February 17, 2015, the day that the Answer was due. It is evident that the joint motion was drafted by the Greystar's counsel and we were asked to sign on a line that said "assented to by me". This proves that we were not the ones asking for the continuance and that it was Greystar asking for this first continuance.

11) In addition, Greystar agreed in writing to the following reservation of rights by us as follows: "I reserve my rights not only for jury trial and for my Answer but I also reserve my rights regarding discovery or my doing any motions that I have a right to do, or regarding preserving my rights to my counterclaims including the 93A demand. By agreeing to this mediation and continuance, I do not relinquish or give up any rights or grounds whatsoever or concede anything that would put me at a disadvantage because I agreed to do this mediation or continuance."

3

225

12) Also, on February 19, 2015, Greystar's counsel wrote an email to us confirming acceptance of the agreement by the court as follows: **"I have contacted the court and they have accepted my office's representations that the case is continued by Agreement."**

13) All of these rights were reserved prior to their expiration date and representations were made to me by Greystar's counsel that all such rights were preserved and that the court agreed with this.

14) We later contacted the court clerk's office and they confirmed that the case was continued and the agreement was accepted and entered by the court.

15) On April 3, 2015, Greystar's attorney drafted another Joint Agreement To Continue and sent it for us to sign because the mediator had a scheduling issue that required the mediation to set a date of April 17, 2015, which was beyond the initial continuance date. This second Joint Agreement to Continue stated as follows:

**"Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from April 9, 2015 to May 7, 2015 at 10:00 a.m.. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than May 4, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial."**

16) This is the same agreement that was signed on February 17, 2015 with the same reservation of rights and with the same intent of the parties. It is evident that the joint motion was drafted by Greystar's counsel and we were asked to sign on a line that said

4

"assented to by me". This proves that we were not the ones asking for the continuance and that it was the Greystar asking for this second continuance.

17) After one-day mediation session on April 17, 2015 took place, the parties did not reach an agreement that day but agreed to continue the mediation because of the possibility of still being able to reach a resolution with the help of the mediator. This led to consideration of one last continuance. The Greystar's attorney drafted another Joint Agreement To Continue and sent it to us to sign on Monday May 4, 2015. It stated as follows: "**"Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from May 7, 2015 to May 14, 2015 at 10:00 a.m.. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than May 11, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial."**

18) It is evident that this third joint motion was drafted by the Greystar's counsel and we were asked to sign on a line that said "assented to by me". This proves that we were not the ones asking for this continuance and that it was the Greystar asking for this third continuance.


## D. MY EMERGENCY EX PARTE HEARING BEFORE JUDGE POMAROLE

19) Even though the parties agreed to at least a one week continuance, we still wanted to ask the court for at least a little more time because the mediator was going to be travelling for ten days and would be kept offline for the most during that time. This was what was we brought before the Court on Monday May 4th in a special emergency ex parte hearing.

5

227

20) After explaining this to the Judge Pomarole, the judge said that these joint agreements to continue have gone on long enough and he would allow this last motion but no further continuances would be allowed. This was said in the context of the parties asking for continuances for purposes like doing mediation etc. This was not stated in the context of the overturning the procedures of the uniform rules of summary process.

## E. MY SUBMISSION OF A TIMELY ANSWER AND REQUEST FOR DISCOVERY AND JURY TRIAL AND OBSTACLES WITH CIVIL CLERK OFFICE

21) On May 11, 2015, I submitted an Answer with Counterclaims, and Discovery and Request for Jury Trial in accordance with the uniform rules of summary process.

22) Under the uniform rules of summary process, the civil clerk court personnel is required to automatically enter a new rescheduled trial date of two weeks from the trial date upon submission of a request for discovery by me.

23) However, in this case, the civil clerk office indicated that they did not know whether the judge's note that said "no further continuances" was meant to deprive me of the right to a jury trial or the right to discovery, or whether the judge's note simply indicated that the allowance of these joint agreements to continue among the parties or other voluntary requests for such continuances would now come to an end.

24) We asked the civil clerk court personnel and the clerk to check with the judge but they declined and said that we had to do a motion for clarification.

25) We explained to the court personnel the context of the judge's statement i.e. it was in the context of an ex parte motion for continuance requesting more time than the joint agreement for continuance because the parties agreed to mediate further but could not agree on the exact date. It was in that context that the judge said "no further

6

continuances" and not in the context of denying our right to a jury trial or to discovery, which was explicitly preserved in the motion documents that were allowed on May 4 as well as in the prior joint motions to continue that have been previously submitted and accepted by the court.

26) We explained further that to force us to do a trial on May 14, 2015 would have created a substantial and irreparable prejudice to us. This is especially so because we were led to believe that we would have had the automatic rescheduling on May 11 of the trial date on May 14 to be two weeks out to May 28, 2015. This is what the uniform rules explicitly state. We would not have been able to arrange witnesses and evidence in time for a May 14 trial date since we only found on May 11, 2015 that the clerk was not sure what the Judge meant by his note.

27) We also explained that we were not requesting a continuance in the normal sense of the word. We were asserting our right to discovery under the uniform rules of summary process and to a jury trial.

28) If we were denied these rights, this would mean that the promises and representations by the Greystar counsel and by the court personnel were being undone.

29) We specifically were told that by agreeing to the continuance to do mediation, we would not be giving up any rights including the right to discovery, the right to a jury trial as well as all rights contained in the uniform rules of process.

30) To do this would only benefit Greystar and would harm us. This would have been particularly egregious because it is Greystar that asked us to do the continuances in the first place and made promises contained in the joint agreements to continue that was accepted by the court.

31) If we lost the rights to uniform rules of summary process then the case must be dismissed in order to preserve the equities and for the rightful and fair administration of justice.

32) If the court intended to not allow discovery and jury trial as requested by me, then this would have had serious consequences that could not be easily remedied when the case is over, even on appeal, and would therefore carry a substantial risk of miscarriage of justice and this will be extremely prejudicial to the us as me, especially where our right to live and have a home is being threatened.

33) This would be clearly biased in favor of Greystar and against us. The rules of summary process were relied upon by parties to know how to plan and how to interact or negotiate with each other.

34) Greystar should not be allowed to benefit from its representations and promises that benefit only them when we relied upon them to our detriment. We also called the court and spoke with the clerk's office and they told us that these joint continuances were allowed and accepted by the court and that all our rights would be preserved.

35) If we had known that there was a chance that we could lose our right to discovery or a jury trial, we would not have agreed to a continuance or to mediation. It would also require that instead of relying upon agreements among the parties or upon representations made by the court personnel, we would have to go before the judge every time to confirm any basic procedural rule that is guaranteed in the rules of process. This would be burdensome outcome to the court and to the parties.

36) On Monday May 11, 2015, Magistrate Beth Cook took our Answer and request for discovery but told us that this is not a guarantee that we don't have to appear for trial on Thursday May 14, 2015. She was rude and disrespectful to us. She refused to speak with

8

the judge about the matter though we asked her to do so. She told us we had to come in and go before the judge either on Tuesday May 12, 2015 or Wednesday May 13, 2015 to get clarification. We told her that we did not have time to come into court all the time. We are pro se, not lawyers, and that we have other obligations. She still refused to check with the judge and literally snapped at us and was antagonistic in her attitude towards us for no apparent reason. As we were leaving through the back door of the court, we immediately observed Beth Cook laughing and chuckling in an unprofessional and belittling manner as she spoke about us to other court staff behind our backs. It was evident that she did not realize we would exit through the back door of the court where we could observe and overhear her.

## F. MY MOTION FOR CLARIFICATION AND EMERGENCY EX PARTE HEARING BEFORE JUDGE MCGUINESS; MISTREATMENT BY JUDGE MCGUINESS

37) On Wednesday May 13, 2015, we submitted a motion for clarification to court staff Patty. She told us that this motion would be acted upon on the papers and that no hearing would be scheduled and that we would be notified by mail. We insisted that we needed to know the answer before Thursday May 14, 2015 and so we needed to get an answer today and that we would like to go before the judge today. Patty walked over to Beth Cook office. Beth Cook emerged from her office and walked right past us without acknowledging us or without being cordial. She exhibited a negative and dismissive attitude towards us as she ignored our presence.

38) About 10minutes later, a phone call was received by Patty from apparently Beth Cook. Patty then told us that a hearing had been scheduled right then in courtroom 3 upstairs.

9

231

39) We proceeded to courtroom 3. When we arrived at courtroom 3, it was empty with one court magistrate there who was editing or copying a court recording. After he was done, he left the room. Then Ms. Beth Cook appeared and took the place/seating of the motion hearing magistrate/clerk would normally sit. Shortly thereafter, two other court magistrates appeared but remained in the audience seating section of the courtroom as spectators only. There was no else in the room except for the bailiff. Then Judge McGuiness appeared.

40) Judge McGuiness denied our request to have the case automatically rescheduled for two weeks pursuant to the uniform rules of summary process.

41) He was rude, abrupt, and didn't allow us to finish speaking and walked-off the bench while we were in the middle of speaking. The bailiff escorted us out of the room, though no one was left in there and he followed us.

42) Afterwards, we made a complaint to th Magistrate that we feel as if we were mistreated by Judge McGuiness and by this court and that we feel as though we have been discriminated against because of race.

43) We asked the magistrate how to make a complaint because we wanted file a written one. He told us that he did not know how to do that

44) The magistrate told us that we should file a motion for reconsideration and come in the morning at the time for trial and see what happens.

# G. SHORT HEARING BEFORE JUDGE FINIGAN AND RESCHEDULING FOR THE PURPOSE OF TRANSFERRING THE CASE TO JUDGE ROBERT ZIEMIAN – THURSDAY MAY 14, 2015

45) On Thursday May 14, 2015, we (as well as Greystar) were present at court. Instead of Judge McGuiness presiding as was stated on the docket, a new Judge, Thomas Finigan appeared. This was the first official court hearing on this matter with both parties present. This was the date that trial had been set and that all pre-trial motions were to be heard including our motion to dismiss and motion to transfer.

46) I requested to have our Motion to Dismiss heard at that time.

47) However, Judge Finnigan preferred to have Judge Robert Ziemian hear the Motion to Dismiss as well as the other motions that were before the court, so we were unable to present our Motion to Dismiss at that time though we requested to do so several times. It is also worthy of note that Greystar at that time requested a continuance for two weeks because Greystar was not ready for trial or to argue against our Motion to Dismiss.

48) At a later time, we found out that the court clerk fabricated the court records by writing that the trial was automatically rescheduled due to discovery filed by me, which was false.

49) The only reason the trial dates was reset was because Greystar was not ready for trial and wanted a two-week continuance.

## H. SHORT HEARING BEFORE JUDGE ZIEMIAN THAT HAD TO BE RESCHEDULED DUE TO COURT SCHEDULING PROBLEMS – THURSDAY MAY 21, 2015

50) On Thursday May 21, 2015, we were present at a hearing with Judge Ziemian. However, Judge Ziemian did not have time to hear these motions (including our Motion to Dismiss)

11

233

because another criminal jury trial that scheduled that same day took longer than expected.

51) At that time Defendant Bisasor indicated to Judge Ziemian that he had begun to feel ill with a high fever, pain, weakness and light-headedness from earlier that morning/the night before and that though he struggled to still come to court at 2 pm, he had an appointment to see his doctor later that evening at 4:15pm to seek medical care for the onset of severe illness. [NB: Mr. Bisasor had called the court earlier in the morning to inform the court of his illness but was told that Judge Ziemian said that if he did not show up default would enter against him, so Mr. Bisasor sacrificed his health and well-being to force himself while in great pain and being severely ill to attend court in order to not suffer a default).

52) Judge Ziemian was unsympathetic to Mr. Bisasor's indications of being in pain and being severely ill. However, it is worthy of note that Judge Ziemian expressed sympathy for the illness of Greystar counsel's sick son which was offered by Greystar's counsel as a reason why she could not return to court on Friday morning of May 22, 2015 when Judge Ziemian attempted to reschedule the motion hearing for Friday morning.

53) Due to the unexpected delay in the criminal jury trial, Judge Zieman required that we stay present from 2pm until 4:30pm. Because of extra questions from the jury of that trial, Judge Ziemian had no time to get into the motions that were to be heard that afternoon from our case and he essentially ran out of time right before the close of the court at 4:30 pm. After an initial attempt to reset the motion hearing for Friday, he rescheduled the motion hearing to occur on Tuesday May 26, 2015 at 9 am with the pronouncement that it would go all day if needed.

12

234

54) As a result of this unexpected delay in the motion hearing and being kept by Judge Ziemian until 4:30pm, Mr. Bisasor missed his appointment with his doctor at 4:15 pm and was unable to receive medical care for another day.

## I. MEDICAL SITUATION OF MR. BISASOR

55) On May 22, 2015 Mr. Bisasor again sought medical care and was diagnosed as having a virulent viral infection. The doctor expressed concern that he might develop pneumonia. The Doctor ordered that Mr. Bisasor take the necessary recommended medication, keep hydrated and get plenty of rest but, when he learned that Mr. Bisasor had commitments regarding a court case, the Doctor also ordered that Mr. Bisasor should not be involved in preparation for court or in going to court on Tuesday May 26, 2015 as this would be potentially detrimental to his health and the Doctor provided medical documentation to that effect (See Exhibit A).

56) However, although Mr. Bisasor was tremendously ill, he still tried to do some preparation for the court case over the weekend, against his Doctor's advice.

57) Defendant Anderson, as caretaker for her husband Defendant Bisasor, also was exposed to infection and, over the weekend, also began to develop symptoms of a viral infection.

## J. WORSENED MEDICAL CONDITION OF DEFENDANT BISASOR AND HOSPITALIZATION

58) On the morning of May 26, 2015 as he attempted to get ready for court, Mr. Bisasor further developed symptoms of shortness of breath, chest pain, head pain and loss of consciousness, and he collapsed to ground and passed out. He was taken to the hospital

13

235

and admitted into Hospital ER at approximately 8:45am on the morning of May 26, 2015. (See Exhibit B).

59) On May 28, Defendant Bisasor was discharged.

60) Defendant Bisasor was instructed to get rest and not resume work until the following week Monday. I was also instructed to do follow-up in order to ensure all outstanding medical issues were addressed on an outpatient basis.

61) Hence, Defendant Bisasor was too ill to appear in court on May 26, 2015.

62) Even if he was able to show up to court on the morning of May 26, he would have been unable to stay for a long period of time as contemplated by Judge Ziemian (i.e. "..we will go all day until we get it done") given his medical condition without seriously jeopardizing his health and well-being.

63) Because Defendant Anderson was exposed to his viral illness she began to develop symptoms of a viral illness as well on Tuesday May 26, 2015. At a later point in time, she was admitted to the hospital on Wednesday May 27, 2015.

64) However, on the morning of May 26, Defendant Anderson drove Defendant Bisasor to the hospital on May 26. As a spouse, she was a witness and proxy for Defendant Bisasor as Defendant Bisasor would be put under medication and subjected to several procedures.

65) Given the serious of Defendant Bisasor's illness, Defendant Anderson was unable to attend court at 9 am on Tuesday morning.

66) She was however diligent to contact the court and fax information and a request for continuance to the court prior to the time of the hearing at 9 am.

67) If requested, I can provide medical records from the Norwood Hospital. They will verify the testimony of 3 doctors (under oath with notary) that Defendant Bisasor was hospitalized from May 26 to May 28.

68) This is veritable proof that Mr. Bisasor was in fact hospitalized on the date of the hearing and continued to be hospitalized for two more days thereafter.

69) Mr. Bisasor therefore had good cause for missing the hearing as he was hospitalized for 3 days, including the date of the hearing. His failure to attend is not the result of negligence, carelessness or any similar inexcusable ground, but rather a medical condition and emergency that landed him in the hospital. He should have another opportunity to have his day in court, to hear his motions and if needed, have a fair and proper trial by a jury of his peers as he has previously requested and which is his right.

70) Our conduct regarding our failure to appear for a motion hearing was aberrational and not consistent with our conduct relating to the case as we showed up for every hearing/court date that was previously set and had requested on more than one occasion that we be given an opportunity to argue our motion to dismiss which could have disposed of the case altogether previously.

71) We were concerned that because of this medical emergency situation, Judge Ziemian might still enter default against us, which he did.

72) We should not have had to choose between our home (i.e. having a place to live) and our health/well-being. This is an impossible position to be put in for us to sacrifice our health and possibly our lives in order to be present at court status hearing.

15

237

73) Therefore we requested a continuance of a minimum of ten (10) days to allow me to recover from my illness so that we could be fully fit and competent to present our motions and our case.

74) As further grounds for this request for continuance due to illness, I asked that Judge Ziemian take into consideration that:

1. I had come to court twice now (on Thursday May 14, 2015 and on Thursday May 21, 2015) to present our motions but due to no fault of their own, those motions were not heard either by Judge Finigan or Judge Ziemian.

2. We have shown that we are interested in presenting and vigorously defending our case. We filed a timely Answer and Counterclaims with discovery and a request for Jury Trial along with a Motion to Dismiss and a Motion to Transfer and Consolidate on May 11, 2015. We presented meritorious defenses and counterclaims in their Answer and in their Motion to Dismiss.

3. We have shown no interest in giving up our rights or in not presenting our case.

4. Clearly were it not for the health issues referenced herein, we would have been present on the morning of May 26, 2015 to argue the motions that we have been trying get heard for two weeks straight but to no avail.

5. After two reschedulings of this motion hearing by the court, the fact that we were unable to attend the third scheduled motion hearing should not be held against us to the point of default.

6. If the court had heard my motion previously when we were ready to present our motions, then an impromptu last minute scheduling (on Thursday May 21, 2015) of a new motion hearing for Tuesday May 26, 2015 (the day after Memorial Day

16

on Monday May 25, 2015) would have been unnecessary. Given the court's own delay and need to reschedule due to its scheduling problems, we should have been given some latitude in being unable to meet the court's changing need for scheduling the motion hearing.

7. We were prepared to argue our motion to dismiss on two occasions. The court did not facilitated our motion to be heard. Moreover, our motion to dismiss is based largely on a challenge to the court's subject matter jurisdiction (based not on amount in controversy but on the defective Notice to Quit) which is critical to a lawful final judgment.

8. We requested that the court preserve our right to have their motion to dismiss to be heard and not enter default or default judgment but grant a continuance as requested and as justice so requires.

9. However, Judgment by Default was entered on May 26, 2015 and was docketed on May 27, 2015 by the District Court.

## BEGINNING OF POST-JUDGMENT DISTRICT COURT PROCEEDINGS

10. Judgment by Default was entered on May 26, 2015 and was docketed on May 27, 2015 by the District Court.

11. There are five judgments that were entered:

    a. Judgment by default on possession for 3413.

    b. Judgment by default on possession for 2216;

    c. Judgment by default on money damages for 3413;

    d. Judgment by default on dismissal of defendant's counterclaims on 3413.

17

239

    e.  Judgment by default on dismissal of defendant's counterclaims on 2216.

12. A status hearing was scheduled for June 8, 2015. This was requested by Greystar's counsel so that she could ask for execution to issue on that day.

13. Greystar's counsel filed a motion for attorney's fees. This was essentially a request to amend the judgment, which removed the finality of the judgment. This meant that execution should not have issued until the judgment was final.

14. We filed a motion to remove default and for relief from judgment that same day on June 8, 2015.

15. We filed a notice of appeal (regarding the denial of the motion to continue due to ill-health, the entry of default and the dismissal of our counterclaims) also that day. This triggered the customary first stage of appellate review, which was to the Appellate Division of the District Court. This appeal also triggered the an automatic stay during pendency of an appeal as mandated by MRCP 62. [NB: At this stage, an appeal cannot properly lodge before the Appeals court because the summary process action took place in a district court and not a housing court or superior court. In order to properly lodge before the appeals court, the appellate division of the district court must have already ruled on the underlying appeal].

16. Because we filed a notice of appeal, then the appeal bond requirements kicked in. For possession only, the bond is only $100. For rent damages, the bond would be for the amount of the judgment for rent (i.e. back rent) plus periodic payments of future rent as they become normally due going forward. Both of these bond requirements for possession and rent are important to maintaining the prosecution of the underlying appeal

18

240

on the default issues. Please note that if there was no rent damages awarded and the judgment was for possession only, then the only requirement for the appeal bond is $100.

17. We also filed a motion to set the appeal bond hearing date and we also filed a motion to waive the bond that same day, which was denied by Judge Ziemian, along with an Affidavit of Indigency.

18. This triggered the provisions of GL 239 s. 5, which grants an automatic stay for 6 days allowing us the chance to file an appeal (on the denial of the waiver of the bond) to the appellate division of the district court. We also submitted a notice of appeal for the denial of the waiver of the bond within the 6 days in a timely manner and so the appeal on the denial of waiver of the bond properly lodged before the appellate division of the district court. Based on GL 239 s. 5, this continued the automatic stay provisions of MRCP 62 until the bond is either waived by the reviewing court or paid pursuant to any orders issued by the reviewing court [i.e. based on the review of the denial of the bond waiver by the appellate division of the district court].

## APPEAL PROCESS IN THE APPELLATE DIVISION OF THE DISTRICT COURT

19. Appellate division of the district court denied the waiver of the appeal bond.

20. They ordered that we pay the bond of $32,000 plus $4980 plus monthly rent of $2390.

21. This meant that if we could not or did not pay the bond within 5 days of receiving notice of the bond order from the appellate division of the district court, then the underlying appeal on the default issues would be dismissed for failure to pay the bond. It would not be dismissed because the underlying appeal was without merit or because the appellate division made an adverse ruling on the merits. All this would mean is that the bond surety

protections for Greystar (that goes along with the prosecution of an appeal by a defendant) was not met. Hence the dismissal of the underlying appeal of the default issues is based on a technicality related to the bond and the bond only (i.e. failure to pay the bond). The appeal process that started in the appellate division of the district court would thus be cut short before it had a chance to go forward any further. There were no briefs with records or hearings on/adjudication of the underlying appeal on the default issues.

22. So the 5 days passed and we did not pay the bond, thus triggering the dismissal of our underlying appeal on the default issues, as outlined above.

## EXECUTION ISSUED ON AUGUST 7, 2015 AND MOTION TO STAY IN DISTRICT COURT DENIED

23. Consequently, execution issued on August 7, 2015.

24. That same day we filed a notice of appeal (to the appeals court) in the district court on the denial of the waiver of the appeal bond. This is the proper procedure to further challenge the bond order pursuant to the rulings by the Supreme Judicial Court.

25. We also submitted a motion to stay the levy on the execution in the district court in accordance with Massachusetts Appellate Procedure Rule 6.

26. The district court denied the motion to stay the levy on the execution on August 10, 2015.

## MOTION TO STAY IN THE APPEALS COURT

27. We therefore under MRAP 6 filed a motion to stay the levy on the execution in the Appeals Court on August 11, 2015 and thus matter properly lodged before the single

20

242

justice of the appeals court on the matter of the granting of a stay during the pendency of the appeal to the full bench of the appeals court.

28. The Motion to Stay is regarding the limited appeal bond issue. The stay is not regarding the underlying appeal on the default issues.

29. Therefore the standard of review should not be whether the district court judge abused his discretion in denying the motion to continue or to enter default. The standard of review is whether the district court judge abused his discretion in denying the waiver of the appeal bond and whether the appellate division of the district court erred as well in affirming the denial of the waiver of the appeal bond. This standard of review is tied directly to the criteria for the waiver of the appeal bond, namely whether we are indigent and have at least one non-frivolous defense. GL 239 makes absolutely clear that if the court finds that we are both indigent and have at least one non-frivolous defense, then the appeal bond must be waived. There is no discretion on the matter. Since both the district court and appellate division of the district court found that we are indigent, then the only matter left to review is whether we have at least one non-frivolous defense.

30. Given the volumes of documentation of evidence of our defenses, particularly the breach of warranty of habitability, and given the admissions of Greystar regarding the problems with the elevator resulting in our apartment becoming uninhabitable and the need to displace us from our main apartment for 9 months due to the elevator problem alone, it is without a shadow of a doubt that we have at least a non-frivolous defense of breach of warranty of habitability and breach of quiet enjoyment.

31. We therefore sought a stay from a single justice of the SJC based on the fact that the single justice of the appeals court applied the incorrect standard of review based on the

21

243

entry of default/denial of the motion to continue due to ill-health, and not based on whether the appeal bond should have been waived in the lower court.

32. If the court is basing its review on the entry of default/denial of the motion to continue due to ill-health, then (though we believe this not correct) then we still believe we would prevail on that issue as well (see attached memorandum on the errors of law by judge ziemian)

33. Furthermore, prior to the August 14, 2015 hearing, we asked the appeals court staff (i.e. Clerk Paul Tuttle) what the hearing was about, and we were told that it was about the appeal bond waiver and whether the stay should be maintained based on that issue. Thus, during the hearing on Friday August 14, 2015, we were thus taken by surprise by the indications by Judge Katzmann that this court was going to base its review of the motion to stay on the entry of default/denial of the motion to continue due to ill-health.

34. Also to the extent that the opposition motion by Greystar misdirected this court to believe that the underlying appeal issue was already adjudicated when it was not, then this is also a potential source of confusion and misdirection in this matter (i.e. Greystar's counsel opposition motion may have wrongly given this court the impression that the issue on appeal relates to Judge Ziemian's entry of default when it is in fact based on the denial of bond waiver. We believe that Greystar's counsel did this intentionally in an attempt to misdirect this court).

## MOTION TO STAY EXECUTION TO THE SINGLE JUSTICE OF THE SJC

35. On August 27, 2015, we filed a motion with a single justice of the Supreme Judicial Court seeking a stay from the Greystar levying on its execution for possession and rent.

22

244

The motion was denied by the same day by Justice Duffly without any explanation other than we were found not to have shown that we were entitled to relief under GL 211 s. 3.

## MOTION TO STAY EXECUTION TO THE FULL BENCH OF THE SJC

36. On August 27, 2015, we filed a motion to the full bench of the Supreme Judicial Court seeking a stay from the Greystar levying on its execution for possession and rent. The motion is still pending and is expected to be fully briefed and heard in about 30 days. The full bench of the SJC has the power to overrule the single justice of the SJC and provide relief under Gl. 211 s. 3 allowing a stay of execution during the pendency of the appeal to the full bench of the appeals court.

## APPEAL TAKEN BY THE FULL BENCH OF THE APPEALS COURT ON THE DISMISSAL OF THE UNDERLYING APPEAL IN THE APPELLATE DIVISION OF THE DISTRICT COURT DUE TO THE DENIAL OF THE WAIVER OF THE APPEAL BOND

37. If the appeals court finds in my favor, then the bond waiver will be allowed and the dismissal of my underlying appeal in the appellate division of the district court will be reversed. Once that occurs, my underlying appeal will resume and the appellate division of the district court will then rule on the merits of the underlying appeal for the first time.

38. The appellate division could then find in my favor on the issue of the denial of the continuance, the entry of default, the dismissal of my counterclaims and the reconsideration of the continuance and recusal of Judge Ziemian

## FACTS RELATED TO DEBTOR'S LEGAL ISSUES IN THE STATE COURTS

In further support of, and supplement to, the legal arguments made by my attorney, I would ask the court to take notice of the following points.

THE PENDING APPEALS

39. **Summary of the Process For Appeal of the Entry of Default and denial of continuance due to ill-health That occurred in the State Courts**

    f. Motion For Continuance → Motion for Continuance Denied→ Notice of appeal on the denial of the continuance → Appeal transferred to and entered in the Appellate Division of the District Court to be heard by three judge panel → Appeal never heard or briefed because of the below waiver of the bond issue interrupted the appeal process.

40. **Process Related To Appeal Bond Waiver.**

    g. Motion For Waiver Of The bond→Motion for waiver of bond denied on June 8, 2015 → tenants have 6 days in which to appeal the denial ( GL 239 s. 5) with accompanying automatic stay (pursuant to MRCP Rule 62 and MAP Rule 4)→ notice of appeal on the denial of the waiver of the bond entered on June 14, 2015→ appeal transferred to and entered in the Appellate Division of the District Court →bond hearing set to be heard by two judge panel only on the waiver of the bond issue (July 8, 2015)→ bond waiver was denied on July 27, 2015 → tenants have 5 days after

41. **Process Related To Stay of Execution.**

h. Entry of Notice of Appeal triggered stay pursuant to Rule 62→Request to
review bond order triggered automatic stay until appeal bond is either waived
or paid→ If appeal on bond waiver is not paid or waived, then tenant has 5
days to bond, if not paid then appeal of the default and continuance is
dismissed→Motion To Stay→

## MOTION TO REMOVE DEFAULT WAS BROUGHT UNDER RULE 55 AND 59 AND/OR 60, WHICH TOLLS FINALITY OF JUDGMENT. THIS MOTION IS STILL PENDING.

42. On June 8, 2015, I filed a motion to vacate the rulings made on May 26, 2015 and entered
on May 27, 2015. This motion was based on Rule 55, 59 and/or 60. Pursuant to
Mass.R.App.P. 4, the filing of this post-trial motion operated to suspend the finality of
the judgments. [NB: **Rule 59(e) Motion to Alter or Amend a Judgment.** "Notes to Rule
59(e) - as amended (1994) (third paragraph from end) A motion under Rule 59(e) (taken
with only slight changes from Federal Rule 59(e)), authorizes the court to alter or amend
a judgment provided the motion is served within 10 days of entry of judgment. Since
such a motion affects **the finality of the judgment**, it tolls the time for taking an appeal
from the judgment; the time does not begin to run again until after disposition of the
motion…"

## JUDGMENT WAS NOT ENTERED PROPERLY AND IS VOID

43. Rule 54 (iii) "The clerk shall review the documents filed with the court. No judgment by
default shall enter against any defendant where it appears from such review that the

25

247

summons was not properly completed, served or returned, that the complaint was not properly completed or served, or that the other documents required to be filed with the court pursuant to Rule 2(d) have not been filed." The judgment is not final because the judgment should not have been entered without the filing of a proper notice to quit. Greystar filed a 30 day notice to quit with the court for 3413 which is defective as a 14 day notice to quit should have been filed with the court.

## APPEAL IS STILL PENDING IN THE DISTRICT COURT.

44. **Appellate Procedure Rule 6: Stay or Injunction Pending Appeal (a) Civil Cases. (1) Stay Must Ordinarily be Sought in the First Instance in Lower Court; Motion for Stay in Appellate Court.** In civil cases, an application for a stay of the judgment or order of a lower court pending appeal, or for approval of a bond under subsection (a) (2) of this rule, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal must ordinarily be made in the first instance in the lower court. A motion for such relief may be made to the appellate court or to a single justice, but the motion shall show that application to the lower court for the relief sought is not practicable, or that the lower court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the lower court for its action. The motion shall also show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the motion shall be supported by affidavits or other statements signed under the penalties of perjury or copies thereof. With the motion shall be filed such parts of the record as are relevant. Reasonable notice of the motion shall be given to all parties. The motion shall be filed with the clerk of the appellate court

to which the appeal is being taken (provided that if the court be the Supreme Judicial

Court, the motion shall be filed with the clerk of the Supreme Judicial Court for Suffolk

County).

45. **An Appeal under Appellate Procedure Rule 4: Appeal - When Taken. (a) Appeals in**
**Civil Cases was timely filed.** According to MAP Rule 4, the notice of appeal can only be

taken after the motion for relief from judgment is heard. If the court finds that the time

for appeal has not yet begun because the motion for relief from judgment has not yet been

acted upon, then it means that the notice of appeal was filed prematurely. If the notice of

appeal was filed prematurely, then the appeal is still pending until the motion for relief

from judgment has been ruled upon.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURIDICTION AND
## VOID JUDGMENT TOLLS THE FINALITY OF JUDGMENT AND IS PENDING

46. The pending motion to dismiss (based on the defective Notice to Quit) leaves the

judgment rendered susceptible to being overturned.

## MOTION FOR ATTORNEY FEES TOLLS THE FINALITY OF JUDGMENT
## PENDING APPEAL TO FULL BENCH OF THE APPEALS COURT TOLLS

47. Greystar's motion for reimbursement of attorney fees is based on a contract, not a statute.

As a separate claim, independent of the underlying claim or claims that comprise the

merits of the action, the judgment was not final.

## THE EXECUTION IS NOT VALID BECAUSE THE APPEAL WAS NOT PROPERLY
## DISMISSED IN THE DEDHAM DISTRICT COURT

48. Appeals were not dismissed on August 7, 2015 but execution was still issued on August
7, 2015, because Ms. Ashton went to court and in haste tried to get the clerk to issue
execution without first following the correct procedures to have the appeal dismissed.
The District Court docket that Greystar attached to its filings reveals that there was no
entry of a dismissal of my appeal on the docket.

## DEBTOR HAS NOT EXHAUSTED HIS APPELLATE RRIGHTS

49. Debtor has not exhausted his claims and appellate rights.

50. The judgments for possession are not valid final judgments because of pending appeals
and pending motions.

51. Cases that involve approval or denial of the waiver of an appeal bond must be approved if
the tenant is indigent and has at least non-frivolous defense.

52. Tenant has been found to be indigent by at least 4 courts. The court dockets show this
approval on several occasions. See attached docket and court approval forms.

53. Tenant has at least the one non-frivolous defense of a breach of warranty of habitability
defense.

54. The breach of warranty of habitability defense is proven if there exists a Board of Health
citation for violations of the sanitation code. This standard of proof is articulated in MGL.
27. Tenant possesses two board of health citations showing that there are violations of the
state sanitation code and therefore violations of the minimum standards for human
habitability.

55. Therefore, since tenant possesses two board of health citations, and since MGL 27 states that existence of such board of health citations constitutes prima facie proof of a breach of warranty of habitability, then I have proven that I have a valid and legitimate breach of warranty of habitability defense, which therefore proves that the bond waiver should have been allowed in my case by the district court and the appellate division of the district court.

56. Therefore, this also means that because these courts did not approve the bond waiver and I had to go the appeals court to review the bond issue, then there is a substantial likelihood that I will prevail in my appeal to the court on the issue of whether my request to waive the appeal bond should have been allowed.

57. If it turns out that the full bench of the SJC later finds, after a full briefing/hearing, that I should have been granted a stay of execution for possession, then it would be a travesty if I was already evicted thereby making the issue of possession moot. A stay is needed to maintain the status quo so that I do not suffer irreparable harm in the meantime. The landlord will not suffer any harm in the meantime because I have already paid this month's rent and I am prepared to do so if the court requires it (please note that the rent for 3413 covers both that unit and the temporary unit 2216 while 3413 continues to be in a state of being uninhabitable).

58. If the appeal was dismissed, then it means that the dismissal of the appeal can be reversed upon the taking of a full appeal to the full bench of the appeals court. If the full bench reverses the dismissal of the full appeal, then the entire matter goes back to the appellate division of the district court where the normal process of the appeal of the denial of the continuance and the entry of default and dismissal of the counterclaim will pick up back

29

251

where it left off. According to the district court docket that process was at the point of a transfer of the record of the appeal and the formalizing the court transcripts. This was interrupted by the bond waiver parallel process when my waiver was denied. If the full bench denies relief, then my entire case is at an end and I will not be able to elect to post bond. By going this route, a tenant takes a big gamble that he will win, instead of simply paying the bond after a negative ruling by the appellate division of the district court.

59. This is where the confusion lies. The underlying summary process, defenses and counterclaims was never dismissed on the merits. It was dismissed on a technicality, that technicality was a default judgment. The underlying summary process appeal was never dismissed on the merits. It was dismissed because I did not and was not able to post the appeal bond at that time. So Greystar tries to make it sound as if the merits have been heard, and they have not been heard or addressed.

60. Now while the above process was going on, I requested a stay pending appeal which is provided for by M.A.P. Rule 6. I first sought a stay in the state district court and, then took an appeal to a single justice of the appeals court.

61. Ms. Ashton has been notified by the SJC that there is an appeal pending.

62. So this is a factual circumstance by which the default judgment could be overturned. If a stay is entered by the SJC, then the issue of possession would be held in status quo so that it does not become moot once it gets to the full bench of the appeals court.

63. Once the full bench of the appeals court hears the case, if they rule in my favor then the denial of the appeal bond will be reversed, which would cause the stay allowed under GL 239 s. 5 to kick back in and hold the status quo on possession, while the underlying summary process appeal (of the denial of the continuance, the entry of default and the

dismissal of the counterclaims) resumes back in the appellate division of the district
(three judge panel).

64. Once the underlying summary process appeal is heard by the appellate division of the
district court, if they rule that the motion for continuance should have been allowed and
therefore that the subsequent entry of default should not have taken place, then the
default judgment would be reversed and the matter remanded back to trial in the district
court.

65. Under this scenario, the judgment would not be final.

66. On several occasions, Greystar has inadvertently admitted that they want to act quickly,
not because they would be harmed, but because they want to short circuit my appellate
rights so that the issue becomes moot.

## NON-FRIVOLOUS DEFENSE

67. Greystar has admitted that I have a non-frivolous defense. They should be asked in open
court, do they believe that I have any non-frivolous defense They conceded that they
owed me money for the security deposit violation. They conceded that I am owed an
abatement of rent for the time the elevator was down.

68. They conceded that there was overcharging for the water

69. There is proof that they interrupted my utilities by negligently or otherwise failing to pay
for it at least three times.

70. Greystar offer me $80,000 to settle the case. Not only were they a month ago willing to
pay me money to move. Why because I have significant defenses but they are afraid that
I will teach other tenants how to organize and stand up to a big landlord.

31

71. I give and serve the community. I am an upstanding citizen in the community. I give of myself and my time to help and serve others.

72. All appeals have not been exhausted.

73. The appeal has not been dismissed and therefore the state law stay is still in effect.

74. This landlord does not want to fix the apartment, they don't want me to move back to the original unit, they don't want to accept rent, they want to cooperate, they just want me out, they have said in this court that they will refuse to accept rent. This shows that there is a retaliatory motive involved here because the behavior of the landlord makes no rational sense. If you claim you are owed rent, and the tenant offers to pay it back, then the landlord should gladly accept it unless there is another unspoken reason that the landlord is trying to evict the tenants. Tenants can't be evicted for secret reasons.

75. For 2216, they admitted that I did not wrong to warrant eviction. The lease simply expired. This is a no-fault eviction.

76. They should have had me pay rent on the smaller unit but they charged me rent on the unit I was not living in.

---

## FACTS RELATED TO THE CHAPTER 13 BANKRUPTCY

---

### Facts related To Greystar's objection to certification

77. Regardless of the issue of possession, Greystar is not entitled to relief from stay on the money judgment for rent owed. Greystar's objection to certification has no bearing on the automatic stay that pertains to the execution for the money judgment for rent owed.

78. There are circumstances, detailed herein, under which I could cure the default that gives rise to the Judgment for Possession and Greystar admitted that at the hearing.

79. MGL 239 s 3 is one statute under non-bankruptcy law that would allow for a cure of the monetary default even after judgment for possession has entered. The statutory provision for the recall of a summary process execution for possession is G.L. c. 239, § 3, which provides for "motions to supersede or recall the execution" only where "the underlying money judgment has been fully satisfied and use and occupancy fully paid."

80. Greystar admitted in open court that there exists circumstances where the debtor-tenant could cure a monetary default under non-bankruptcy state law.

81. Moreover, the landlord can be compelled to accept a monetary cure as follows:

    i.  For 2216, it can be cured by winning my appeal or my motion to remove default or my motion to dismiss.

    j.  Landlord can be compelled to accept cure under MGL 239 8A. So MGL 239 8A is another statute in addition to MGL 239 s 3.

82. If I win my appeal in the SJC, there will be an opportunity for the state law stay to remain in effect. This bars Greystar from possession until the full bench of the Appeals Court rules on the bond issue.

83. If I win my appeal in the Appeals Court, there will be an opportunity to reverse the denial of the bond waiver, the matter will be remanded for trial, a trial will likely find 8A violations which will entitle me to either a complete reversal of the money judgment or the ability to pay the difference between what the landlord owes me versus what I owe them, which will cure any remaining monetary default, and this provision of a cure under GL 239 8A is mandatory in that the Landlord has no discretion to refuse payment.

33

255

84. My counterclaims could wipe out the entire monetary default plus I could have additional monies that could also go towards funding my chapter 13 plan. Greystar valued my claims to be worth at least $80,000.

## The Refusal of Rent Payment From Debtor By Greystar Does Not Invalidate The Certification as True

85. In terms of whether Greystar would accept the cure, it remains to be seen. Greystar is not the owner of the property. Greystar is simply the property management agent. Ultimately, the final decision is not up to Laura Donahue, the local Greystar manager. It is up to the corporate leadership at Deutsche Bank. Previously, there were certain decisions that Laura Donahue made that were overturned by Deutsche Bank. Therefore, the only way to know for sure is to allow me to tender payment and for Deutsche Bank to refuse it. The rent check is not to be made out to Greystar but to the owner, and so Greystar is not in a position to refuse it. Greystar is not a position to reject or accept the cure of the default. If Greystar's counsel would like to provide an affidavit from the actual owner who will be receiving the monetary payment, then that would be better than the current affidavit by a local property manager.

86. Because Greystar is merely the agent, we do not know if when I tender payment within the 30 days that the owner would accept it, or even if Greystar would change their mind once they see the hard cash.

87. I have recently sent an email to Laura Donahue's superiors in an attempt to settle this dispute. If her bosses overrule her, then her opinion is of none-effect. 2 months ago her superiors were willing to pay me $80,000 to settle and to drop my counter claims against Greystar as well as the parent company Deutsche Bank.

34

88. If they do insist on refusing the payment, then my understanding is that, under state law, they would forfeit the money and I would no longer owe the debt.

89. Greystar may not be required to accept full satisfaction of the monetary default under MGL 239 s. 3, but it does not change the fact that the circumstance to cure the default does exist under state law.

90. Whether Greystar is required or not is immaterial to the threshold issue of whether nonbankruptcy law provides circumstances under which the default could be cured. If they refuse, then they forfeit the money judgment against me owed on the apartment.

91. If Greystar refuses to accept use and occupancy and the cure of the monetary default, then this creates a major legal problem because they then forfeit the money owed. They can't have it both ways. They don't want to accept rent but then they want to evict me for non-payment of rent. This is not fair.

92. I have previously offered to pay rent but they have chosen not to accept rent. This affidavit proves that point definitively.

## DEBTOR WILLING TO CURE THE ENTIRE MONETARY DEFAULT UNDER A CHAPTER 13 PLAN

93. I would like the opportunity to cure the default under a Chapter 13 plan. A plan to pay the monetary default would be simple enough at around $500 or $600 a month for 60 months. However, the fact that Greystar has refused to accept payment of the default, this will trigger a forfeiture of the default.

35

## DEBTOR IS WILLING TO CURE THE ENTIRE MONETARY DEFAULT WITHIN 30 DAYS IF THE CHAPTER 13 PLAN IS REJECTED BY THE COURT

94. I would like the opportunity to have the 30 days to cure the default if my chapter 13 plan is not approved by the court in this matter. However, the fact that Greystar has refused to accept payment of the default, this will trigger a forfeiture of the default.

## JUDGMENT FOR POSSESSION FOR 3413 AND 2216 ARISE FROM THE SAME MONETARY DEFAULT/SPECIAL CONSIDERATION FOR APARTMENT 2216 CERTIFICATION

95. Both judgments were included. I did not pay rent because they said no rent is due on temporary unit 2216. The rent for the main unit 3413 covers the rent for both unit 3413 and unit 2216. The reason they charged us $0 rent on unit 2216 was because they intended the rent for unit 3413 to cover the use of unit 2216. Otherwise why not charge us rent for the use of unit 2216? There is a reason why Greystar did not charge us rent on unit 2216 and it is not because they were feeling "philanthropic" by any means.

96. Therefore the rent paid to the bankruptcy court on August 27, 2015 covered both units. Unit 2216 is an extension of unit 3413 for purposes of rent. Greystar wants it both ways. If the units are not covered by one rent and they are separate for purposes of rent, then Greystar should not benefit from any argument or position or action that ties both units together as one. Therefore, Greystar should benefit from the application of the $32,000 bond applied to unit 2216 if no rent is owed on 2216 and since the rent for 3413 does not cover the use of 2216. Therefore, there should have been no bond required on unit 2216.

97. Pertaining to unit 2216, there is no "non-monetary default". I never defaulted on anything. A default means I did something wrong. By Greystar's own testimony at the hearing, they stated that I did nothing wrong and that lease simply expired. So it is a no-fault eviction. I did not do anything wrong to merit eviction. They just simply wanted me out for no reason other asking me to vacate. I had a lease. I did not breach the terms of the lease. Therefore, In re Griggsby doesn't apply because that case pertains to a situation where a tenant does something wrong outside of a non-payment of rent scenario, and hence Greystar's objection fails on those grounds.

98. To the extent that 2216 is an extension of 3413, then both properties should be treated as one with the issues surrounding unit 3413 being determinative. On that basis, the judgment for possession for 2216 resulted from not paying rent on 3413. The state courts treated it as one and so should this court for purposes of certification.

99. Contrary to Greystar's assertions, with my chapter 13 petition I did include the judgment for possession for unit 2216 which listed the address and location of the apartment 2216. I did not list it on the petition because the court would be confused as to where to send me mail and Greystar has refused to give me a mailbox key for unit 2216, forcing me to rely on the mailbox for 3413 to get any mail, even though I was displaced from the unit. Without a key to the mailbox, mail would either bounce-back (as it has on the district docket for mail sent to the address) or it would accumulate without any ability to retrieve it.

100.   Moreover, I did pay the rent that covers both units as determined by the Dedham district court and the appellate division of the district court.

37

101.    Both courts said I could maintain possession of both units if I paid the rent for
3413. That is the determination of the state courts and this court should likewise follow
that grouping of the rent payment issue because this is what has allowed the eviction to
move forward. In other words, the state courts could have stated that I had to move out of
2216 for non-monetary reasons, but it did not because it treated 2216 as an extension of
3413. For example, the rent for 3413 includes the use and lease of two separate storage
units. $2390 covers both the actual apartment and the two storage units.

102.    It would be ludicrous to require that I vacate the storage units because I did not
list that on the certification specifically (since they are an extension of the 3413 unit). In
the same way, 2216 is like an additional storage unit that is attached to the 3413 unit.
This is also laid out on the lease signed for 2216 where I wrote on the last page that both
leases were not connected and that 2216 lease did not replace or supersede 3413 lease,
which was signed and agreed to by Greystar. See 2216 lease.

103.    But if the court finds that it is separate then this would lead to an illogical result.
If the 2216 unit is separate and not attached or an extension of 3413, then the state court
should have not required that I pay a $32,000 bond on that unit in order for my appeal to
continue in the appellate division of the district court. If I were not required to pay the
$32,000 bond on 2216, then I would not have been subjected to eviction from 2216. By
requiring a $32,000 bond on 2216, it meant that the state court was treating 2216 as an
extension of 3413 and treating 2216 as if the rent for 3413 covered the rent for 2216.

104.    In its motion for relief from stay, the landlord uses language that admits this
attachment when it says "the accompanying temporary unit". This language is a tacit
admission to the inextricable link between the two apartments.

38

105.    Because the requirements of an appeal bond are not applicable to the apartment

2216 because it does not involve the non-payment of rent, then it means that the entire

edifice of the proceedings and rulings in the lower court regarding 2216 would be at once

destroyed by an irreconcilable contradiction because 2216 has been treated as if it were a

non-payment of rent case. This can only be true if it is treated as an extension of 3413. It

would a complete and utter logical contradiction for the 2216 case to be given an appeal

bond of $32,000 and then turn around and argue that no rent was due on 2216 and is

therefore not applicable to automatic stay or a curing of the monetary default that gave

rise to the judgment for possession on unit 2216.

106.    Therefore to summarize:

    k.  Both apartments are inextricably intertwined

    l.  Both apartments had the same bond amount covering them at $32,000.

    m.  The district court judge applied the monetary default to both apartments.

    n.  The appellate division of the district court applied the monetary default to

       both apartments.

    o.  If 2216 was based on a non-monetary default, then there would be no bond

       required

107.    There is no question that the property is in violation of the state building and state

sanitary code as shown by the Dedham Board of Health citations.

108.    From the inception of our tenancies to the present, our original unit has

continuously been below the minimum standards for human habitation, in violation of the

State Sanitary Code as found by the Dedham Board of Health with more than one citation

in a two year span of time (2012 and 2014).

109. We ask the court to also take judicial note that we not only live at the premises but we also maintain home-based professional services businesses there as well. We were assured by the landlord that we could both live and work at the premises.

110. We are faced with threat of immediate eviction from the building where we work and live and have worked and lived for the past 8 years.

111. We have paid over $140,000 in rent to the Landlord and though we had experienced a number of defective conditions since we moved-in around July 2008, we never withheld rent until May 2014 when the elevator were condemned by the State and the apartment became uninhabitable, so much so that we had to be displaced. Therefore the landlord owes us a rebate on rent due to the diminution of value of the premises, not only for the time we have been displaced i.e. from April 2014 until present but also for the entire time that we have had to live with the defective conditions since 2008. A mere 10% in the reduction of the value of the premises would result in approx. $14,000 owed to us, which is almost half the amount of the 32,000 judgment.

112. If Greystar is permitted to carry out their threat of evicting us, we will be deprived of our home and place of business in a single stroke. We will be physically removed from the building to face the substantial likelihood that they will be unable to find other legal live/work space in the tight Boston market. Eviction would cause a serious disruption in our personal and professional lives; our ability to live and work in peace would be irretrievably lost while our legal right to remain in the property is being adjudicated. The harm would be irreparable.

113. The court should also take judicial note that we are African-American tenants and evicted African-American face a substantially harder time finding a place to live after

40

262

eviction. Also we, as tenants with certain disabilities, require elevator access (for any multi-floor situation) and hypo-allergenic conditions due to our disabilities which make it harder to find suitable residence. Our ability to conduct our work will also be affected.

114.    My outstanding motions including the **motion to remove default judgment and/or relief from judgment** and the **motion to stay eviction pending the motion to remove default judgment** submitted on June 8, 2015 and the **motion to dismiss** submitted on May 11, 2015.

## THE PROPERTY IS NECESSARY TO DEBTOR'S REORGANIZATION

115.    In this case, I filed a Chapter 13 case instead of a Chapter 7, which indicates an intention to address any obligations that I have through a reorganization plan.

116.    I have indicated that I will continue to pay monthly rent under a chapter 13 plan, which will provide adequate protection by the periodic payments provided for it under the Chapter 13 Plan.

117.    It would be illogical to argue that my residence is not "necessary to an effective reorganization." I am married and have my personal services businesses that I operate from my home and I definitely need my home to complete my chapter 13 plan.

## GREYSTAR HAS ADEQUATE PROTECTION/ GREYSTAR WILL NOT BE HARMED OR PREJUDICED BY THE AUTOMATIC STAY BUT DEBTOR WILL SUFFER IRREPARABLE HARM

118.    Greystar will not be prejudiced by the continuation of the Automatic Stay with respect to the eviction.

41

119.     Greystar asserts claims for monetary damages arising from the debtor's non-
payment of rent. These are claims subject to treatment through the Chapter 13 plan
process in this case. Accordingly, the imposition of the fundamental protections offered
by the Automatic Stay expose Greystar to no particularized harm. By contrast, requiring
that I be evicted would distract me from my efforts to restructure and further divert my
scant resources

120.     More fundamentally, absent exceptional circumstances that do not exist here,
preventing me from curing the default and allowing an eviction will undermine the
protections of the Automatic Stay and jeopardize my efforts to reorganize. It will also
undermine the intent of Congress in allowing one last chance to pay the monetary default
by getting caught up within 30 days in order to maintain possession and prevent eviction.
Congress also intended to provide such relief under chapter 13 in part to allow debtors
obtain the "breathing spell" afforded by the Automatic Stay and the consequent
protection from its creditors while it reorganizes its affairs and prepares a Chapter 13
plan.

121.     My finances would be further depleted and my attention distracted from
reorganizing my affairs if I were denied this basic protection of chapter 13.

## NO CAUSE EXISTS TO LIFT THE STAY

122.     There is no good cause to lift stay. If the issue is payment of rent, and I will pay
rent and cure default, then why lift the stay. I have not endangered the property, I have
not used illegal drugs, I have done nothing for a "for fault" eviction. Other than stop
paying rent to force the landlord to fix repairs which I'm authorized to do by statute, I

42

have done nothing wrong. And if I am paying rent now and will cure the default, then the landlord wants me out for reasons that have not been presented to any court or this court. It is hiding its reasons including retaliation, discrimination reasons. I paid rent for 7 years almost $140,000 in rent. I stopped paying rent only after the state condemned the elevator and flooding apartment, insisting that the problems be fixed. Why are they refusing the accept rent? Then, there is no good cause.

## DEBTOR HAS FILED THIS CASE FOR LEGITIMATE PURPOSES

123.     The automatic stay of §362 was intended, among other things, to stop landlords from evicting tenants who still had a legitimate interest in the property. There is a no abuse here. The code contemplates situations where a judgment for possession has occurred but intends to give a chance for the tenant to get caught up and rectify the situation before 30 days. If halting an eviction was not legitimate under the code then why did Congress put this exception in the code? Greystar would like to argue that any and every tenant or homeowner who files a chapter 13 bankruptcy to save their home and/or prevent eviction is abusing the code. This is clearly a ridiculous conclusion.

124.     I have not filed it to delay the inevitable eviction. I filed so that I can have an opportunity to have a breathing spell so that I can reorganize my affairs and interests and so that I can litigate the eviction issue in state court to permanently prevent eviction and establish my right to possession in state court. I also filed because I would like the opportunity to cure the default through the bankruptcy process.

43

## DEBTOR HAS A VALID LEASE AND TENANCY/DEBTOR WILL ASSUME THE LEASE

125. Under mass statutory law, a residential tenant has a myriad of ways in which to restore that tenancy or at least prevent one's dispossession if the tenancy is not revived, and under equity procedures, a tenant may assert equitable defenses to prevent the forfeiture of a lease.

126. An equitable interest is a right fashioned by federal law in the bankruptcy court.

127. Massachusetts law grants tenants certain rights or abilities to cure the termination and reinstate the tenancy prior to and even after judgment for possession.

128. The cure permitted by statute is treated as an interest in the property estate, thereby subjecting the lease provisions to the automatic stay.

129. The tenancy was revived by agreement from Laura Donahue, which was agreed upon as a way to address the flooding that took place in February/March 2015. This is an evidentiary issue that requires a follow-up hearing where evidence can be presented.

130. Moreover, Greystar stated in its motion that the premises are "leased premises". This is an admission that the premises are subject to a continuing lease. Therefore the lease is not terminated.

131. A notice to quit does not terminate all rights. Neither does a judgment. I still have the right to appeal. I still have the right to a dwelling that meets the sanitation code. I still have the right to a covenant of quiet enjoyment and the warranty of habitability. I still have the right to have my security deposit returned to me. I still have the right not to be discriminated against or retaliated against. I still have the right to not be harassed or

44

intimidated. I still have the right to not be evicted in an unlawful manner. I have the right to cure even after judgment for possession, which is like a redemption right.

132.     I live with my wife Natalie Anderson, the co-debtor in this case, in an apartment (the "Apartment") owned by RAR2 (Deutsche Bank) and operated/managed by Greystar Management Services. The lease on the Apartment (the "Lease") requires me to pay $2,390 per month in rent on or before the first day of each month. In addition, the lease provides, in relevant part, that the term of the lease shall be renewed automatically for successive terms.

133.     In my bankruptcy plan, I will propose, among other things, to cure the default on my Lease by paying all back rent over a 60-month period, and then to assume the Lease.

134.     Therefore my Chapter 13 reorganization plan will include an assumption of the Lease.

135.     Ms. Anderson, the codebtor, has not filed for bankruptcy protection under the Bankruptcy Code. However, because she is a resident at the Apartment, the automatic stay of §1301 created by Bisasor's Chapter 13 petition protects her as well.

## DEBTOR HAS COLORABLE CLAIM TO POSSESSION OF THE PREMISES

136.     Moreover, I as the debtor have a colorable claim to possession of the premises to invoke the automatic stay.

137.     Contrary to Greystar, this filing was not for the sole purpose of preventing an improper or unlawful eviction. This case was filed to allow me an opportunity to cure alleged breaches with Greystar contingent on the outcome of my pending State Court litigation filed before the filing of my bankruptcy.

45

267

138. Also, the lease was not "terminated", but was "unexpired". I possess an unexpired leasehold interest and properly retain possession of the premises in Chapter 13 because of that interest. Therefore, since my lease was not validly "terminated" pre-petition, I seek to cure and assume my lease. My ability to cure and require Greystar to accept my lease was admittedly contingent upon my success in the litigation pending in the District Court at the time I filed bankruptcy.

139. At the time of this bankruptcy filing, my state Court action was pending. The successful completion of that action would require Greystar to accept my tenancy and grant me damages in excess of any back rent claim ultimately allowed to Greystar.

Respectfully Submitted under pains and penalties of perjury,

Andre Bisasor

Andre Bisasor
3000 Presidents Way #3413
Dedham, MA 02026
781-492-5675

Dated: September 21, 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| In re: | |
|---|---|
| Andre Bisasor      Debtor | Chapter 13 Case No.   15-13369 |

DEBTOR'S *SUPPLEMENTAL* MEMORANDUM
(CORRECTED[1])

In support of his response and objection, debtor Andre Bisasor incorporates herein by reference all of his prior *pro se* statements filed in this case, his statements at the recent hearing, his affidavit filed separately together with the exhibits attached, and further states as follows:

ARGUMENT

*Finality*

As argued before, bankruptcy courts have held that §362(l) does not apply until the judgment is "final".  *See* In re Alberts, 381 BR 171 (Bankr.W.D.Pa., 2008) (holding that §362(b)(22) does not apply until a judgment is final); In re Nitzsky, 516 BR 846 (Bankr. W.D.N.C., 2014) (discussing Alberts).  It is true that the word "final" does not appear in the federal statute.  It is also true that courts should enforce statutes as written unless the "disposition required by the test is not absurd" or ambiguous; for the same reason, the court should not read an "absent word" into the statute.  *See, e.g.,* Lamie v. US Trustee, 540 US 526, 534 (2004).  On the other hand, "When Congress fails to define potentially ambiguous statutory terms, it effectively delegates to federal judges the task of filling gaps in a statute."  US v. Santos, 128 S.Ct. 2020, 2031 (2008) (Stevens, J., concurring).  It is also true that "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme … because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."  United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd., 484 US 365, 371 (1988).

An example of this is where in chapter 11, plans were required to pay the "present value" of tax claims, §1129(a)(9)(C), even though the statute did not include the word "present".  In Matter of Fi-Hi Pizza, 40 BR 258 (Bankr.D.Mass., 1984), Judge Lavien analyzed the statute and concluded that "value" meant "present value", which requires payment of interest[2], thus "filling

---

[1] In reviewing the Memorandum as filed, counsel realized that what was filed was not the final version, and some points needed clarification.  Counsel regrets any inconvenience to the court.
[2] In 2005, BAPCPA substantively amended the statute, and the requirement now is "total value", not "present value".

[a] gap" in the statute.  The same concept applies here.

"Congress has not defined the term 'judgment' anywhere in the Code, let alone within 11 USC §362(b)(22))."  In re Alberts, 381 BR 171, 177 (Bankr.W.D.Pa. 2008).  The debtor believes, therefore, that the word "judgment", in this context, is ambiguous.  In Alberts, the Housing Authority of Beaver County filed a motion not unlike the present motion, combining a request that the court determine the automatic stay be not applicable, or in the alternative, for relief from the automatic stay.  Recognizing the "fundamental protection afforded by the Code [in] the automatic stay", *see also* In re Soares, 107 F.3d 969 (1st Cir. 1997), the court analyzed the statute and the facts of the case before him, and held that because a timely appeal had been filed, there was no "'judgment' *per se* for purposes of 11 USC §362(b)(22)" until the state court appellate process had run its course.  Id., at 180.  The same is true here.

Although Greystar says, on page 5 of its memorandum, that the state District Court judge "implicitly acted upon the Motion" to remove default, that is an absurd assertion since the decision (document 13-1 in this court) made no mention of the debtor's motion, and neither allowed nor denied any pending motions.  Greystar's argument implicitly recognizes that the judgment would not be "final" if the motion were pending, which it is; nowhere on the docket of either case is there an entry disposing of that motion; i.e., there is no "separate document" within the meaning of Mass.R.Civ.P. 58(a).  In the absence of statutory authority or exceptional circumstances, Massachusetts appellate courts, like federal appellate courts, will not entertain interlocutory appeals.  Pollack v. Kelly, 372 Mass. 469, 471 (1977).  What constitutes a "*final* judgment" depends not on the nomenclature used by the judge, but the fact that the judgment disposes of all matters in the case.  Jones v. Boykin, 74 Mass.App.Ct. 213 (2009) (finding that a judge's decretal statement in a memorandum of decision was not a "judgment").  If nothing else does, the debtor's motion to remove default makes all judgments in both cases non-final, if not precisely interlocutory.  There are other motions pending, however, as the dockets show.

In Massachusetts, "judgment" and "final judgment" mean the same thing.  Mass. R. Civ. P. 54(a).  The rule is clear:  "The terms 'judgment' and 'final judgment' include a decree and mean the act of the trial court finally adjudicating the rights of the parties affected by the judgment, including: …"  Thus "judgment" in §362(l) must mean "final judgment", and until the state court's decision had the requisite finality, it is not a "judgment" for purposes of §362(l).

Furthermore, a judge cannot simply enter default judgment in the amount demanded by a plaintiff; except in the rare case where the plaintiff's claims are for a "sum certain or susceptible of mathematical calculation, there must be a hearing and factual findings concerning the basis of damages or other relief included within the default judgment."  Jones v. Boykin, 464 Mass. 285 (2013).  Even then, the plaintiff is limited to the damages requested in the complaint.  The debtor never had an evidentiary hearing on damages; this is reversible error.  *See also* Hermanson v. Szafarowicz, 457 Mass. 39 (2010).

ROPT Limited Partnership v. Katin, 431 Mass. 601 (2000)[3], makes the same point in summary process cases. In that case, the court noted that Uniform Summary Process Rule 11(a), as it existed at the time, did not apply. The court noted, also, that "The indorsement the judge made on the plaintiff's motion to dismiss and the subsequent entry on the docket sheet are not sufficient to satisfy the requirements for final judgment under Mass. R. Civ. P. 54(b)." Appeals in summary process cases are now governed by Mass. Gen. Laws ch. 239 §§3 and 5. The applicable rule is Summary Process Rule 12. However, the rule indicates that a default judgment may not be appealed. This would seem to be incorrect, or improper, because neither statute says anything about default judgments. The right to appeal is a substantive right, and should be neither enlarged nor abridged by a Rule. *See, e.g.,* 28 USC 2072(b). The state District Court's judgment was not final, and §362(l) does not control.

*Other issues*

Greystar cites In the Matter of an Appeal Bond, 428 Mass 1013 (1998). That decision is quoted here in its entirety:

> The petitioner appeals from a judgment of a single justice of this court denying her petition under G. L. c. 211, s. 3. We affirm.
> The petition requests that the single justice grant relief from a decision of a single justice of the Appeals Court, pursuant to G. L. c. 239, s. 5, declining to waive an appeal bond in an underlying summary process action that originated in the Housing Court. The single justice of this court correctly denied the c. 211, s. 3, petition because the petitioner had an alternative remedy. The proper course for her to have followed, if she wished further to challenge the bond, was to refuse to pay the bond, suffer the dismissal of her summary process appeal, and then appeal to the Appeals Court (on the limited bond issue) from the order of dismissal. *Ford v. Braman*, 30 Mass. App. Ct. 968, 970 (1991). See *PGR Mgt. Co. v. Credle*, 427 Mass. 636 , 638-639 (1998); *Tamber v. Desrochers*, 45 Mass. App. Ct. 234 (1998); *Home Sav. Bank v. Camillo*, 45 Mass. App. Ct. 910 (1998). We do not decide various claims raised by the appellant that were not raised before the single justice. Nor do we express any view on the merits of her claims concerning the bond.
> Judgment affirmed.

As is apparent, the decision has nothing to do with the merits of the debtor's appeal, but rather the procedure. This is all that the Supreme Judicial Court said in the present debtor's appeal. With the motion to remove default (among others) outstanding, there simply is no final,

---

[3] The case was cited for what it says about "finality", rather than amount in controversy subject matter jurisdiction. The debtor did present his argument for lack of subject matter jurisdiction in his motion to dismiss based on the amount in controversy in the state District Court, but even though his motion to dismiss was not heard, that point would not avail him anything since the statute has been amended subsequent to ROPT. His motion to dismiss was also based on other arguments including a defective notice to quit and defective summons, among other things, which were never heard.

appealable judgment on the merits, and the debtor's *pro se* attempts to protect his rights should
not prejudice him. As noted above, the debtor incorporates herein all of his prior submissions
and statements, both in writing and in open court, and the exhibits attached to his affidavit. The
court should keep in mind that his plan (which will be filed by September 23, the date ordered by
the court) will provide for curing the default through his plan.

In addition, Greystar has not moved for relief from the co-debtor stay of §1301, and that
section has no provision remotely resembling §362(l). They are separate stays, and the elements
of relief from §1301 are different from §362. Furthermore, the present motion was not served on
Mr. Bisasor's wife. moot. Thus Greystar's objection and motion should be moot.

WHEREFORE the debtor requests that the court overrule Greystar's objection because,
inter alia, the "judgment" is not final, and deny its motion for relief from stay.

September 22, 2015

Respectfully submitted,
Andre Bisasor, debtor
By his attorney,


/s/  *David G. Baker*
David G. Baker, Esq.
236 Huntington Avenue, Ste. 306
Boston, MA   02115
(617) 367-4260
BBO# 634889


Certificate of Service

The undersigned states upon information and belief that the within Corrected
Memorandum will be served on the persons named below by the Court's CM/ECF system on the
date set forth above.


/s/  *David G. Baker*
David G. Baker, Esq.


- Donna Ashton on behalf of Creditor Greystar Management Services LP as agent for
  owner RAR2-Jefferson at Dedham Station MA Inc.  - dma@ashton-law.com
- Carolyn Bankowski-13 - 13trustee@ch13boston.com
- John Fitzgerald - USTPRegion01.BO.ECF@USDOJ.GOV

# Supreme Judicial Court

## Public Case Information

Case Search
  - **Involved Party**
  Docket Number
  Attorney Appearance
  Lower Court
  Lower Court Judge
Court Calendars
  SJC Full Court
  SJC Single Justice
  AC Full Court
  AC Single Justice
More Information
  Contact Us
  Comments
  Helpful Links

Displaying matches 1 through 5 of 5 total matches.

Bottom >

**Bisasor, Andre** - Defendant/Appellant     2015-P-1194
Case status: No briefs yet
GREYSTAR MANAGEMENT SERVICES, LP vs. NATALIE ANDERSON & another

**Bisasor, Andre** - Defendant/Appellant     2015-P-1193
Case status: No briefs yet
GREYSTAR MANAGEMENT SERVICES, LP vs. NATALIE ANDERSON & another

**Bisasor, Andre** - Defendant/Petitioner     2015-J-0306
Case status: Disposed: Case Closed
GREYSTAR MANAGEMENT SERVICE, LP vs. ANDRE BISASOR & another

**Bisasor, Andre** - Defendant/Appellant     SJC-11942
Case status: No briefs yet filed
GREYSTAR MANAGEMENT SERVICE, L.P. vs. ANDRE BISASOR & another

**Bisasor, Andre** - Defendant/Petitioner     SJ-2015-0347
Case status: Disposed: Appeal by defendant pending
GREYSTAR MANAGEMENT, AS AGENT FOR OWNER, RAR2 JEFFERSON AT
DEDHAM STATION v. ANDRE BISASOR AND NATALIE ANDERSON

< Top

New Search    Modify Search

© 2001 RSI

(2015-09-23 00:17:16)

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| In re: | |
|--------|--------------------------------|
| Andre Bisasor, | Case No. 15-13369-JNF |
| | Chapter 13 |
| Debtor | |

## <u>REQUEST FOR EVIDENTIARY HEARING</u>

**TO THE EXTENT** that the Court finds that there are genuine issues of material facts with respect to the objection of Greystar Realty to his certification, and its motion for relief from stay, the debtor respectfully requests an evidentiary hearing. *See* In re <u>Calore Express Co., Inc.</u>, 288 F.3d 22 (1st Cir. 2002) (further expounding on <u>Grella v. Salem Five Cent Sav.</u>, 442 F. 3D 26 (1st Cir., 1994).

September 21, 2015

Respectfully Submitted,
Andre Bisasor, debtor
By his attorney,

/s/ *David G. Baker*
David G. Baker, Esq. (BBO# 634889)
236 Huntington Avenue, Ste. 306
Boston, MA 02115
617-367-4260

## <u>Certificate of Service</u>

The undersigned states upon information and belief that the within Request was served upon the undersigned by the court's CM/ECF system on September 25, 2015.

/s/ *David G. Baker*
David G. Baker, Esq.

- Donna Ashton on behalf of Creditor Greystar Management Services LP as agent for owner RAR2- Jefferson at Dedham Station MA Inc. - dma@ashton-law.com
- Carolyn Bankowski-13 - 13trustee@ch13boston.com
- John Fitzgerald - USTPRegion01.BO.ECF@USDOJ.GOV

# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**ANDRE BISASOR**,                                          Chapter 13
                                                           Case No. 15-13369-JNF

      Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## ORDER

## I.      PROCEDURAL BACKGROUND

      The matters before the Court are the Objection to Debtor's Certification Pursuant to 11 U.S.C. Sec. 362(l)(1)(A), or in the Alternative, Request for Relief from the Automatic Stay Regarding Apartment #3413 filed by Greystar Management Services LP, as agent for Owner RAR2 Jefferson at Dedham Station MA Inc. ("Greystar") on September 2, 2015 and an identically captioned pleading filed by Greystar on the same date with respect to "temporary" Apartment #2216 (jointly, the "Motions"). Apartment #2216 is currently occupied by the Chapter 13 debtor, Andre Bisasor (the "Debtor"). Both apartments are located in the same residential complex in Dedham, Massachusetts. Greystar supported both Motions with the Affidavit of Laura Donahue, Greystar's Regional Property Manager. The Debtor opposes both Motions and seeks an evidentiary hearing. Through the Motions, Greystar challenges the "Certification by a Debtor Who Resides as a Tenant of Residential Property" (the "Certification") signed by the Debtor pursuant to 11 U.S.C. § 362(l) and set forth in his Chapter 13 petition which

1

Case 4:15-cv-03369 Document 71 Filed 01/02/18 in TXSD Page 130 of 145
Case 4:15-cv-03369 Document 58-1 Filed 11/29/15 Page 276 of 291 Main
Document Page 276 of 291

he filed, *pro se*, on August 27, 2015. Greystar also requests that the Court determine that

the provisions of 11 U.S.C. § 362(b)(22)[1] apply immediately, or, in the alternative, that

---

[1] The filing of a petition under the Bankruptcy Code generally triggers the application of the automatic stay which enjoins actions by creditors, including "the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case. . . ; "and "any act to obtain possession of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(1) and (3). Exceptions to the automatic stay are set forth in 11 U.S.C. § 362(b) and include § 362(b)(22), which provides that, subject to § 362(l), the filing of a bankruptcy petition does not trigger the protection of the stay with respect to:

> [T]he continuation of any eviction . . . , or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor;

11 U.S.C. § 362(b)(22).

Section 362(l), in turn, establishes certain requirements which, if performed, will allow a debtor to avoid the immediate loss of the stay imposed by § 362(b)(22). Section 362(l)(1) provides:

> (1) Except as otherwise provided in this subsection, subsection (b)(22) shall apply on the date that is 30 days after the date on which the bankruptcy petition is filed, if the debtor files with the petition and serves upon the lessor a certification under penalty of perjury that—
>
> (A) under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and
>
> (B) the debtor (or an adult dependent of the debtor) has deposited with the clerk of the court, any rent that would become due during the 30–day period after the filing of the bankruptcy petition.

11 U.S.C. § 362(l)(1)(A) and (B).

2

the Court grant Greystar relief from the automatic stay to allow it to exercise its remedies under state law, including, but not limited to, taking possession of Apartments #3413 and #2216.

In determining the Motions, the Court has considered the following:

1.      The Debtor's petition on which he listed his address as 3000 President's Way, #3413, Dedham, Massachusetts;

2.      The Certification, which provides, in relevant part, the following: "Landlord has a judgment against the debtor for possession of debtor's residence[,]" the "Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered[,]" and that the Debtor "has included with his petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition[;]"

3.      The Debtor's tender on the petition date of money orders totalling $2,390 and the Court's "Notice Releasing Rental Deposit," dated August 28, 2015, which provides, in part: "the Debtor has deposited with the Clerk the rent payment in the amount of $2,390 that would come due during the 30 day period after the filing of the Debtor's bankruptcy petition," and that "NOTICE IS HEREBY GIVEN that within 30 days of filing the voluntary petition, the debtor must file with the Court and serve upon the landlord, *a second certification that the entire monetary default giving rise to the judgment has been paid to the landlord*." (emphasis added);

4.      The Debtor's Objection to the Motions and the Verified Memorandum filed in support of the Objection by Attorney David Baker, who filed a notice of appearance on behalf of the Debtor on September 16, 2015, and all exhibits attached to the Objection and the Verified Memorandum;

5.      The Apartment Lease Contract for Apartment #3413 executed by the Debtor and Natalie Anderson,[2] as tenants, with RAR2 Jefferson at Dedham Station Ma. Inc., as owner (the "Owner"), dated August 22, 2013, which provided an initial term from September 26, 2013 through September 14, 2014 and a monthly rental payment of $2,390 and the Apartment Lease Contract for Apartment #2216 executed by the Debtor and Ms. Anderson with the Owner, dated May 16, 2014, which provided for a two week term from May 16, 2014 through May 31, 2014 and rental charges of zero;

---

[2] Ms. Anderson is the nondebtor spouse of the Debtor.

3

6.     Greystar's statements in the Motions, which the Debtor admitted in his Objection, that it terminated the lease for Apartment #3413 by a Notice to Quit on December 23, 2014 and terminated the lease for Apartment #2216 by a Notice to Quit dated December 29, 2014;

7.     The Summary Process Summonses and Complaints filed by Greystar on February 9, 2015, in separate summary process actions commenced in the Trial Court of Massachusetts, District Court Department, Summary Process Session (the "District Court"), Docket No. 1554SU000026 (Apartment #3413) and Docket No. 1554SU000028 (Apartment #2216), through which Greystar sought eviction of the Debtor and Ms. Anderson[3] from Apartment #2216 for "Failure to vacate pursuant to a lawful notice terminating tenancy" and from Apartment #3413 for "Non-payment of rent;"[4]

8.     The Debtor's 58 page Answer, Counterclaim and Jury Demand filed on May 11, 2015 in both summary process actions[5] which contains numerous counterclaims, some of which relate to the habitability of Apartment #3413, from which the Debtor maintains he was displaced (the "Counterclaims");[6]

9.     The "Judgment for Plaintiff(s) for Possession and Rent,"[7] dated May 27, 2015, issued by the District Court, Docket No. 1554SU000026, against the Debtor and Ms. Anderson in favor of Greystar with respect to Apartment #3413, following the entry

---

[3] Although the Debtor and Ms. Anderson were both defendants in these summary process actions, the Court will refer herein to the Debtor only unless the context indicates otherwise. According to Greystar's counsel at a hearing held in this Court on September 17, 2015, both summary process matters were always heard together in the District Court, although not formally consolidated.

[4] The Summons and Complaint for Apartment #3413 reflects rent owed in the amount of $24,650.78.

[5] This pleading, which is attached to the Debtor's Verified Memorandum, bears only Docket No. 1554SU000026 (Apartment #3413), however, the docket for Docket No. 1554SU000028 (Apartment #2216) reflects that an Answer and Counterclaim was filed by the Debtor in that action on the same date.

[6] The Debtor also attached to one of his pleadings an Inspection Form issued by the Dedham Board of Health on November 20, 2014, regarding Apartment #3413, which reflects violations relating to floor and ceiling cracks, locks, and dishwasher installation.

[7] All State Court pleadings, dockets, orders and memoranda referred to herein were attached by the parties to their respective pleadings filed in this Court.

4

default against the Debtor and Ms. Anderson, which contained a judgment amount of $32,423.31[8] and the "Judgment for Plaintiff(s) for Possession and Rent," dated May 27, 2015, issued by the District Court, Docket No. 1554SU000028, against the Debtor and Ms. Anderson in favor of Greystar with respect to Apartment #2216, following the entry of default against the Debtor and Ms. Anderson, which contained a judgment amount of zero (jointly, the "Judgments for Possession");

10.    The entry by the District Court on May 27, 2015 of judgments in favor of Greystar with respect to the Debtor's Counterclaims in both summary process actions "after defendant(s) failed to appear;"

11.    The filing by the Debtor of numerous pleadings in both summary process actions on June 8, 2015, including Motions to "Remove the Default and Vacate Default Judgment; and/or Motion for Relief from Judgment, Pursuant to M.R.C.P. 55, 59 and/or 60" (the "Motions to Reconsider"), which the Debtor maintains have never been determined by the District Court, thus precluding the finality of the Judgments for Possession;

12.    The "Memorandum of Decision Concerning Entry of Default Judgment," dated July 2, 2015, issued by the District Court (Ziemian, J.) in both summary process actions, in which the court recounted the extensive procedural history of both summary process actions, noted the numerous continuances, the issuance of the Judgments for Possession following the entry of defaults against the Debtor in both summary process actions for his failure to appear at a final pretrial hearing scheduled for May 26, 2015 and found that "the failure of both defendants to appear on 26 May 2015 was a deliberate attempt to further continue the trial of this matter because of the court's earlier order that there be no further continuances of the trial;"

13.    The "Execution on Money Judgment," in the amount of $33,191.35, and the "Execution for Possession of Leased or Rented Dwelling," both dated August 7, 2015, issued by the District Court, against the Debtor in favor of Greystar with respect to Apartment #3413, and the "Execution for Possession of Leased or Rented Dwelling," dated the same date, issued by the District Court against the Debtor in favor of Greystar with respect to Apartment #2216 (collectively, the "Executions");

14.    Copies of orders issued by the Appellate Division of the District Court, the Massachusetts Appeals Court and the Massachusetts Supreme Judicial Court ("SJC"), all of which denied the Debtor's request to review or waive appeal bonds and/or to stay levy on the Executions;

---

[8] This amount reflects the unpaid rent set forth in the Summons and Complaint, plus approximately three additional months of unpaid rent, interest and costs.

15.     The Order of the Massachusetts Appeals Court, dated August 17, 2015 (Katzmann, J.), denying the Debtor's motions to stay levy on the Executions with respect to both Apartments which, in pertinent part, provided:

> [T]he defendants have not shown that their appeal, though procedurally correct, is likely to be successful.  To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default.  Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default.  Accordingly, the Motion is denied. The stay currently in place shall expire at the end of the day on August 27, 2015.  The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants.

16.     The hearing held in this Court on September 17, 2015 with respect to the Motions,[9] and the arguments of the parties, including the representations of the Debtor that he intended to cure rental arrears over the term of his Chapter 13 plan;[10]

17.     The Supplemental Brief filed by Greystar on September 18, 2015, and the exhibits attached thereto, including the dockets of both District Court summary process actions, which reflect extensive litigation between the parties;

18.     The Supplemental Corrected Memorandum filed by the Debtor on September 23, 2015, and the exhibits attached thereto, including the dockets of appeals the Debtor commenced postpetition in the Massachusetts Appeals Court and the SJC;

19.     The Debtor's Affidavit filed on September 21, 2015, a 46-page document in which he recounts the history of the parties' relationship and their litigation in various courts, his legal theories concerning the finality of the Judgments for Possession, and the

---

[9] Section 362(l)(3)(A) provides: "If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true."  11 U.S.C. § 362(l)(3)(A).

[10] The Debtor also asserted in his Verified Memorandum and Supplemental Brief that he plans to cure the rental default during the term of a plan, that his "counterclaim and his damages for breach of the warranty of habitability are likely to be far in excess of any rent that would be due" and that ultimately he "should not be required to pay *any* rent due to the breach of the warranty of habitability."

6

resulting effect on his bankruptcy case, and in which he stated that "My bankruptcy attorney is not responsible for anything I say here;"

20.    The failure of the Debtor to file any further certification or tender any amounts pursuant to 11 U.S.C. § 362(l)(2) with respect to Apartment #3413 within 30 days of the petition date;

21.    The Debtor's Request for Evidentiary Hearing filed on September 25, 2015;

22.    The Debtor's Chapter 13 plan filed on October 6, 2015, which provides for the assumption of executory contracts with Greystar and the Owner and for payment of $32,423.31 to the Owner and $90,000 to Greystar, over the 60 month term of the plan;

23. The Debtor's Schedules and Statements filed on October 6, 2015, including his Schedule B – Personal Property, in which he listed "Claims and counterclaims; too speculative to value;" and

24.    The entire record of proceedings in this Court.

## II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

Upon consideration of the foregoing, the Court concludes that the material facts necessary to determine the Motions are not in dispute, and the Court may rule on the merits of the controversy between the parties.  For the reasons stated below, the Court finds that the Debtor's interest in the leases of Apartments #2216 and #3413 terminated prior to the commencement of this case by virtue of the final Judgments for Possession issued by the District Court.  Accordingly, the Debtor has no property interest in either premises.  He does not have the ability to assume the leases as executory contracts nor cure the prepetition defaults through his Chapter 13 plan or through the procedures set forth in 11 U.S.C. § 362(l).

7

A. <u>Apartment #2216</u>

The Debtor's petition for relief under Chapter 13 listed his address as Apartment #3413. He did not reference Apartment #2216 in his petition, nor did he deposit any "rent" with the Clerk of this Court for that unit pursuant to § 362(l)(1)(B). Simply stated, there is no § 362(l) certification in the Debtor's petition related to Apartment #2216. To the extent the Debtor seeks to extend the Certification to Apartment #2216 because it is a replacement unit for the allegedly uninhabitable Apartment #3413 and, therefore "inextricably linked" to Apartment #3413, the Court rejects such a request for the following reasons. First, the Debtor's tenancies with respect to the two apartments were the subject of separate lease agreements with differing provisions. The leases were terminated on different grounds and were the subject of separate Judgments for Possession and Executions issued in separate summary process actions in the District Court. Second, the provisions of § 362(l), which can shield a debtor from the immediate effect of § 362(b)(22), cannot be invoked where, as here, the underlying Judgment for Possession was based on a non-monetary termination of the tenancy. There simply is no "monetary default" to cure and no "rent that would have become due during the 30-day period after the filing of the bankruptcy petition." *See* 11 U.S.C. § 362(l)(1)(A) and (B). *See also* <u>In re Griggsby</u>, 404 B.R. 83, 88 (Bankr. S.D. N.Y. 2009)(Section 362(l) does not apply where prepetition judgment of possession and warrant of eviction are based upon a non-monetary default that cannot be cured by payment of money.); <u>In re Harris</u>, 424 B.R. 44, 54 (Bankr. E.D. N.Y. 2010)("Section 362(l) does not protect a debtor from the

8

operation of Section 362(b)(22) when a landlord's underlying judgment of possession is based on a non-monetary default.").

Greystar's objection to the Certification for Apartment #2216, to the extent it exists at all, is sustained. Pursuant to § 362(l)(3)(B)(i), in the event a court upholds the objection of a lessor filed under § 362(l)(3)(A), "subsection (b)(22) shall apply immediately and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property."[11] In the alternative, the Court also denies the Debtor's request for an evidentiary hearing and grants Greystar's request for relief from the automatic stay as it has established "cause" pursuant to § 362(d)(1) and a "colorable" right to possession of Apartment #2216 in this summary proceeding. *See* <u>Grella v. Salem Five Cent Savings Bank</u>, 42 F.3d 26, 33 (1st Cir. 1994). Accordingly, Greystar may proceed with its rights against the Debtor under state law with respect to Apartment #2216, subject to rights of Ms. Anderson as a codebtor under 11 U.S.C. § 1301.

   B. <u>Apartment #3413</u>

The Judgment for Possession of Apartment #3413 arose as a result of a monetary default, i.e., nonpayment of rent. The Debtor seeks to cast doubt on the finality of that judgment, and presumably Greystar's ability to rely on the exception to the automatic

---

[11] To the extent the Debtor maintains that § 362(b)(22) requires the Judgment for Possession of Apartment #2216 to be final, the Court finds that such judgment is final, as discussed in further detail below.

9

stay set forth in § 362(b)(22), due to the pendency of the Motions to Reconsider and because the Debtor has "not exhausted all of his State Appellate rights."

It is unclear why the Debtor filed the Certification under § 362(l), which can serve to delay the immediate effect of § 362(b)(22), when he is seeking a determination that there is no recognizable "judgment" for purposes of § 362(b)(22). It is also unclear why the Debtor maintains that "absent a final judgment, the terms of § 362(l)(3) should not control," as he asserted in his Verified Memorandum. Although the Debtor originally commenced his bankruptcy case *pro se*, his counsel has never sought to withdraw the Certification or otherwise amend the Debtor's petition.[12]

Despite the Debtor's argument about the applicability of § 362(b)(22) and the absence of the modifier "final" before the phrase "judgment for possession" in either § 362(b)(22) or § 362(l), the Court will address his contention that the Judgments for Possession are not final. The Court finds that both Judgments for Possession are final.

The Motions to Reconsider were filed on June 8, 2015 and through them the Debtor sought to vacate the default judgments entered against him in both summary process actions on May 27, 2015. The "Memorandum of Decision *Concerning Entry of Default Judgment*" (emphasis added) was issued by the District Court *after* the filing of the Motions to Reconsider, on July, 2, 2015. It explicitly referred to the "numerous motions" filed by the Debtor on June 8, 2015, and specifically dealt with and provided

---

[12] The Debtor cites In re Weinraub, 361 B.R. 586 (Bankr. S.D. Fla. 2007), a case involving vastly different facts than those involved here. In that case, the court allowed the debtors' motion to waive the requirements of § 362(l). The Debtor has filed no such motion here.

the rationale for the entry of the default judgments, i.e., the deliberate attempt of the

defendants to further continue a trial by failing to appear on May 26, 2015. While there

may be no separate docket entries on the District Court dockets denying the Motions to

Reconsider, this Court has no doubt that the District Court considered them and denied

them as set forth in the Memorandum dated July 2, 2015. Further, the Massachusetts

Appeals Court also addressed the propriety of the entry of the default judgments in its

August 17, 2015 Order: "Following review of the defendants' submission and the

District Court docket, the court cannot discern any indication that the District Court

judge abused his discretion when he entered the default." Lastly, even if the Motions to

Reconsider were still pending in the District Court, such fact would not affect the

finality of the Judgments for Possession or the judgment with respect to the

Counterclaims under the applicable Massachusetts rules of summary process and civil

procedure. Mass. Uniform Summary Process Rule 11, entitled "Relief from Judgment"

provides:

> (a) **District and Boston Municipal Departments.** In the District Court . . . ,
> Rules 60 and 62(b) and (d) of the Massachusetts Rules of Civil Procedure,
> which deal with relief from judgment and stay of execution, respectively,
> shall apply to summary process actions; *provided that relief under Rule 60(b)
> shall be available only in cases where the judgment has been entered on default or
> dismissal*. In cases that have been heard on the merits, relief under Rule 60(b)
> shall not be available.

Mass. Uniform Summary Process Rule 11(a) (emphasis added). That Rule directly refers

to Mass R. Civ. P. 60(b), which provides, in part: "A motion under this subdivision (b)

does not affect the finality of a judgment or suspend its operation." Mass R. Civ. P. 60(b).

While the Debtor may complain that he has not been heard in the state courts on the merits of his Counterclaims, the Court finds that result to be of the Debtor's own making, and one which does not affect the finality of the default judgments. *See* D'Amour v. Birchall (In re Birchall), 501 B.R. 142, 149 (Bankr. D. Mass. 2013)("Default judgments generally do not have preclusive effect, because the issues therein were not actually litigated. Nevertheless, courts have recognized an exception to this rule when the party against whom the default judgment was entered 'substantially participated' in the action.")(footnotes omitted). The procedural history of the summary process actions, recounted above, leaves no doubt that the Debtor substantially participated in those actions and was not simply defaulted for failing to answer.

The Debtor's contention that he has not exhausted all of his appellate rights with respect to the Judgments for Possession is belied by the record and is insufficient to preclude the finality of the Judgments for Possession. Greystar obtained more than Judgments for Possession, it obtained Executions on August 7, 2015, following the July 2, 2015 ruling of Judge Ziemian with respect to the entry of the default judgments. Both the Massachusetts Appeals Court and the SJC denied the Debtor's motions to stay levy on the Executions, on August 17 and 27, 2015, respectively. It is unclear what, if any, further appellate rights the Debtor can legitimately pursue with respect to the merits of the summary process actions. *See* Mass. Uniform Summary Process Rule 12, entitled "Appeals" ("Any judgment in a summary process action, *except a default judgment*, may

12

be appealed by an aggrieved party in accordance with the provisions of law.")(emphasis added). Although the Debtor continues to prosecute postpetition appeals, that does not alter the preclusive effect of the Judgments for Possession. *See* Taatjes v. Maggio (In re Maggio), 518 B.R. 179, 189 (Bankr. D. Mass. 2014)(holding that the pendency of an appeal does not preclude the Court from determining whether collateral estoppel may apply).[13]

The Court finds that the Judgments for Possession are final and that the safe harbor provisions set forth in § 362(l), with which the Debtor failed to fully comply, do not preclude the application of the exception to the automatic stay set forth in § 362(b)(22). There are no "circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession" of Apartment #3413 under § 362(l). Greystar terminated the leases and obtained the Judgments for Possession and the Executions in the summary process actions all before the petition date of August 27, 2015. The Debtor has no interest in the leases and no right to cure the defaults or revive his tenancies pursuant to Mass. Gen. Laws ch 186, § 11. Section 11 provides, in relevant part, the following:

> Upon the neglect or refusal to pay the rent due under a written lease, fourteen days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease, unless the tenant, on or before the day the answer is due, in an action by the landlord to recover possession of the premises, pays or tenders to the landlord or to his attorney all rent then due, with interest and costs of suit. . . .

---

[13] In Maggio, this Court relied on O'Brien v. Hanover Ins. Co., 427 Mass. 194, 200, 692 N.E.2d 39 (1998)("The Federal rule, followed by a majority of the States, is that a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal. . . . We are persuaded by the majority rule.").

Mass. Gen. Laws ch 186, § 11. *See also* Mass. Gen. Laws ch. 239, § 3 (". . . the plaintiff shall not be required to accept full satisfaction of the money judgment. Any refusal by the plaintiff to accept full satisfaction of the money judgment under this paragraph shall not be a bar to the enforcement of said judgment in any lawful manner."). In this case, there is no dispute that the Debtor did not tender rent due with respect to Apartment #3413 by the time he filed his Answers in the summary process actions, and there is no dispute that Greystar refuses to accept full satisfaction of its monetary judgment, as attested to in the Affidavit of Laura Donahue.

The Debtor seeks to avoid application of Mass. Gen. Laws ch. 239, § 3 due to the alleged absence of final judgments, relying on Ropt Limited P'ship v. Katin, 431 Mass. 601, 729 N.E.2d 282 (2000)(Holding that under Rule 11(a) of the Uniform Summary Process Rules, a defendant in a summary process action cannot raise lack of subject matter jurisdiction pursuant to Rule 60(b)(4) once there is a final judgment on the merits, but that such bar did not apply as the lower court did not issue a final judgment on defendant's counterclaim which was disposed of through a plaintiff's motion to dismiss). That case is factually and legally distinguishable from this case and is inapposite here. The Debtor has not provided any controlling authority under Massachusetts law pursuant to which the Debtor is permitted, at this juncture, to cure the default that gave rise to the Judgment for Possession of Apartment #3413.

14

The Debtor's reliance on his Counterclaims as a means for curing or offsetting the rent he owes is misplaced.[14]  The District Court entered judgments for Greystar on the Counterclaims following the Debtor's default on May 27, 2015.  The Debtor is free to pursue those Counterclaims, to the extent permitted by applicable law in the appropriate forum, but they do not provide a means for satisfying the requirements of § 362(l).  The Debtor failed to file a further certification within 30 days of the petition date pursuant to § 362(l)(2), certifying that he has cured "the entire monetary default that gave rise to the judgment."  If the debtor fails to perform either the initial or further certification, "subsection (b)(22) shall apply immediately" upon such failure and "relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property." 11 U.S.C. § 362(l)(4)(A).  Additionally, the Debtor's proposal to cure the rental arrears through his assumption of executory contracts as provided in his plan would circumvent the purpose of § 362(l).  *See* In re Williams, 371 B.R. 102, 108 (Bankr. E.D. Pa. 2007)(Section 362(l) requires cure of the default in 30 days, not under a Chapter 13 plan as the debtors proposed.).  The Debtor's proposed assumption of the leases through his plan is also not permitted under the circumstances of this case.  *See* Pyramid Operating Authority, Inc. v. City of Memphis (In re Pyramid Operating Authority, Inc.), 144 B.R. 795, 808 (Bankr. W.D. Tenn. 1992)(stating that "[i]t is well established that an agreement or contract which is validly terminated prepetition under applicable state law is not

---

[14]  At the September 17, 2015 hearing in this Court, the Debtor represented that "it may turn out that, in fact, the landlord owes him more money than the rent he owes."

15

assumable under section 365(a)"). In other words, the leases are no longer executory contracts.

Lastly, the Rooker–Feldman doctrine bars this Court from acting as an appellate tribunal with respect to the Judgments for Possession and the judgments on the Counterclaims as it " 'strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions.' " In re Sanders, 408 B.R. 25, 33 (Bankr. E.D. N.Y. 2009) (quoting Book v. Mortg. Elec. Registration Sys., 608 F.Supp.2d 277, 288 (D. Conn. 2009)(citing Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005)).

For all of the above reasons, the Court sustains Greystar's Objection to the Certification with respect to Apartment #3413. Pursuant to the above quoted provisions of § 362(l), the provisions of § 362(b)(22) shall apply immediately with respect to Greystar. In the alternative, the Court also denies the Debtor's request for an evidentiary hearing and grants Greystar's request for relief from the automatic stay as it has established "cause" pursuant to § 362(d)(1) and a "colorable" right to possession of Apartment #3413 in this summary proceeding. See Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 33 (1st Cir. 1994). Accordingly, Greystar may proceed with its rights against the Debtor under state law with respect to Apartment #3413, subject to rights of Ms. Anderson as a codebtor under 11 U.S.C. § 1301.

## III.    CONCLUSION

The Objections to the Certification are sustained, and the Motions are allowed. The Court denies the Debtor's request for an evidentiary hearing, and it will not

16

consider the lengthy arguments set forth in his Affidavit as he is represented in this matter by counsel. *See* <u>Grella</u>, 42 F.3d at 33 (a hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims but is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim to a debtor's property).

By the Court,

Dated: October 19, 2015
Joan N. Feeney
United States Bankruptcy Judge

17